Yosina M. Lissebeck (State Bar No. 201654)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone: 619.400.0500
Facsimile:  619.400.0501
yosina.lissebeck@dinsmore.com

Sarah S. Mattingly (Ky. Bar 94257 – Admitted pro hac vice)
**DINSMORE & SHOHL LLP**
101 S. Fifth Street, Suite 2500
Louisville, KY 40202
Telephone: 859-425-1096
Facsimile: 502-585-2207
Sarah.mattingly@dinsmore.com

*Special Counsel to Richard A. Marshack,
Chapter 11 Trustee, for the Bankruptcy
Estate of the Litigation Practice Group
P.C. and Liquidating Trustee of the
LPG Liquidation Trust*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>Debtor.<br>_____<br><br>RICHARD A. MARSHACK, Chapter 11 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>JGW SOLUTIONS LLC,<br><br>Defendant. | Case No. 8:23-bk-10571-SC<br><br>Chapter 11<br><br>Adv. Proc. No. 8:23-ap-01148-SC<br><br>**PLAINTIFF RICHARD A. MARSHACK, CHAPTER 11 TRUSTEE'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Rule 7056-1(b)(2) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("Local Rules"), Plaintiff Richard A. Marshack, the Chapter 11 Trustee, for the Bankruptcy Estate of

1

the Litigation Practice Group P.C. and Liquidating Trustee of the LPG Liquidation Trust ("Trustee" and/or "Plaintiff") for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group PC ("Debtor" or "LPG") in the above captioned bankruptcy hereby submits the following Proposed Statement of Uncontroverted Facts and Conclusions of Law in support of *Plaintiff's Motion for Summary Judgment on Trustee's Complaint*. As demonstrated below and in the moving papers, these uncontroverted facts establish that there is no triable issue of material fact as to the summary adjudication sought and, therefore, Plaintiff is entitled to judgment as a matter of law on all counts of *Trustee's Complaint for: (1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Construction Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Preferential Transfer Made Within Ninety Days of the Petition Date; and (6) Turnover* . [Dk. 1] ("Complaint").

# UNCONTROVERTED MATERIAL FACTS SUPPORTING SUMMARY ADJUDICATION OF THE COMPLAINT

| **Trustee's Uncontroverted Material Facts** | **Supporting Evidence** |
|---|---|
| **Fact 1:** Defendant JGW Solutions, LLC ("JGW"), LPG, and PurchaseCo80, LLC entered into the Asset Purchase Agreement on September 22, 2022. | Declaration of Sarah S. Mattingly ("Mattingly Decl."), ¶ 3 and Exhibit A. Mattingly Decl. ¶ 4 and Exhibit B; specifically, JGW's Response to Trustee's Requests for Admissions, No. 31. |
| **Fact 2:** JGW and LPG entered into the Accounts Receivable Purchase Agreement ("ARPA") on November 7, 2022. | Mattingly Decl. ¶ 5 and Exhibit C. Mattingly Decl. ¶ 4 and Exhibit B; specifically, JGW's Responses to Trustee's Requests for Admissions, No. 36. |
| **Fact 3:** JGW and LPG entered into the ARPA on November 17, 2022. | Mattingly Decl. ¶ 6 and Exhibit D. Mattingly Decl. ¶ 4 and Exhibit B specifically, JGW's Responses to Trustee's Requests for Admissions, No. 41. |
| **Fact 4:** JGW and LPG entered into the ARPA on January 23, 2023. | Mattingly Decl. ¶ 7 and Exhibit E. Mattingly Decl. ¶ 4 and Exhibit B specifically, JGW's Responses to Trustee's Requests for Admissions, No. 46. |
| **Fact 5:** JGW and LPG entered into the ARPA on January 28, 2023. | Mattingly Decl. ¶ 8 and Exhibit F. Mattingly Decl. ¶ 4 and Exhibit B specifically, JGW's Responses to |

| **Trustee's Uncontroverted Material Facts** | **Supporting Evidence** |
|---|---|
| | Trustee's Requests for Admissions, No. 51. |
| **Fact 6:** JGW and LPG entered into the ARPA on March 31, 2023. | Mattingly Decl. ¶ 8 and Exhibit G. Mattingly Decl. ¶ 4 and Exhibit B specifically, JGW's Responses to Trustee's Requests for Admissions, No. 56. |
| **Fact 7:** LPG contracted to pay JGW $805,245.12 pursuant to the ARPAs. | Mattingly Decl. ¶ 11. |
| **Fact 8:** LPG paid JGW $73,553.39 pursuant to the Affiliate Agreement. | Mattingly Decl. ¶ 12. |
| **Fact 9:** Between August 19, 2022 and February 7, 2023, LPG paid JGW $441,861.09. | Mattingly Decl. ¶ 4 and Exhibit B, specifically, JGW's Responses to Trustee's Requests for Admissions, Nos. 1-29; Declaration of Joshua R. Teeple in Support of Plaintiff's Motion for Summary Judgment ("Teeple Decl.") ¶ 5. Mattingly Decl. ¶ 3 and Exhibit A. |
| **Fact 10:** On March 17, 2023, Maverick Management Group LLC paid JGW $179,229.82. | Mattingly Decl. ¶ 4 and Exhibit B, specifically, JGW's Responses to Trustee's Requests for Admissions, |

| Trustee's Uncontroverted Material Facts | Supporting Evidence |
|---|---|
| | No. 30; Teeple Decl., ¶ 5; Mattingly Decl. ¶ 3 and Exhibit A. |
| **Fact 11:** Maverick Management Group, LLC is an affiliate of LPG. The transfer made on March 17, 2023 of $179,229.82 was made using LPG's funds going through Maverick Management Group, LLC. | Mattingly Decl. ¶ 13 and Exhibit H, specifically, Trustee's Responses to JGW's Requests for Admissions, No. 7; Mattingly Decl. ¶ 14 and Exhibit I, specifically, Trustee's Responses to JGW's Special Interrogatory, No. 7. |
| **Fact 12:** Between August 19, 2022 through March 17, 2023, LPG transferred $621,090.91 to JGW pursuant to the ARPA Agreements. | Mattingly Decl. ¶ 13 and Exhibit H, specifically, JGW's Responses to Trustee's Requests for Admissions, Nos. 1-30; Teeple Decl. ¶ 5; Mattingly Decl. ¶ 4 and Exhibit B, specifically, Trustee's Responses to JGW's Requests for Admissions, No. 7; Mattingly Decl. ¶ 14 and Exhibit I, specifically, Trustee's Responses to JGW's Special Interrogatory, No. 7. |
| **Fact 13:** LPG made transfers totaling $417,329.34 in the 90 days preceding the bankruptcy. | Mattingly Decl. ¶ 13 and Exhibit H, specifically, JGW's Responses to Trustee's Requests for Admissions, Nos. 1-29; Teeple Declaration, ¶ 5. |
| **Fact 14:** LPG entered into a legal services agreement with its consumers by which the consumers would pay LPG for all legal services provided to the | Declaration of Nancy Rapoport in Support of Plaintiff's Motion for Summary Judgment ("Rapoport Decl.") ¶ 4. |

| **Trustee's Uncontroverted Material Facts** | **Supporting Evidence** |
|---|---|
| consumers via monthly debits from their bank accounts. | |
| **Fact 15:** Based on the transactions between LPG and JGW, LPG and JGW entered into an Affiliate Agreement. | Rapoport Decl. ¶ 3. |
| **Fact 16:** LPG's Affiliate Agreement entered into between LPG and JGW were illegal capping agreements in violation of Section 6151 of the California Business and Professional Code. | Rapoport Decl. ¶ 11-12. |
| **Fact 17:** Lawyer referral services must be registered with the State Bar of California. | Rapoport Decl. ¶ 13. |
| **Fact 18:** The ARPAs entered into between LPG and JGW do not indicate that JGW operated as a legitimate lawyer referral service. | Rapoport Decl. ¶ 13. |
| **Fact 19:** JGW has not registered with the State Bar of California as a Lawyer Referral Service as articulated and defined under Cal. Bus. & Prof. Code § 6155. | Mattingly Decl. ¶ 13 and Exhibit H, specifically, JGW's Responses to Trustee's Requests for Admissions, No. 61; Rapoport Decl. ¶ 13. |

| **Trustee's Uncontroverted Material Facts** | **Supporting Evidence** |
| --- | --- |
| **Fact 20:** LPG legal services agreements state that its clients were entitled to a refund if an account was fully validated by a creditor and thus not subject to dispute. Thus, LPG had an obligation to refund the money to the clients if an account was fully validated. | Rapoport Decl. ¶ 9. |
| **Fact 21:** LPG violated Rule 1.15(a) of the California Rules of Professional Conduct to the extent it moved into its operating account any client trust funds before LPG had "earned" the relevant fees. | Rapoport Decl. ¶ 10. |
| **Fact 22:** All of the Transfers occurred within four years prior to the Petition Date. | Teeple Decl., ¶ 5; Mattingly Decl. ¶ 13 and Exhibit H, specifically, JGW's Responses to Trustee's Requests for Admissions Nos. 1-29. |
| **Fact 23:** LPG was insolvent at the time of the time of the transfers to JGW. | Teeple Decl. ¶ 6-11. |
| **Fact 24:** There are over 5000 claims filed in this case, totaling approximately $500,000,000.00. | Teeple Decl. ¶ 8. |

7

| **Trustee's Uncontroverted Material Facts** | **Supporting Evidence** |
|---|---|
| **Fact 25:** When the transfers were made from LPG to JGW, the following UCC-1 statements allegedly secured the repayment of the following claimed amounts that are currently known to Plaintiff and are allegedly owed by Debtor: (i) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (ii) approximately $15 million dollars owed to MNS Funding, LLC as evidence by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (iii) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 secured by a UCC statement filed on or about May 28, 2021; and (iv) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021. These statements remained unreleased as of the | Teeple Decl. ¶ 7. |

| **Trustee's Uncontroverted Material Facts** | **Supporting Evidence** |
|---|---|
| Petition Date and either reflect secured liens against LPG's assets then owned or thereafter acquired, or provided evidence of the assignment or sale of substantial portions of LPG's future income. | |
| **Fact 26:** Debtor's profit and loss statements reflect approximately $115,000,000 of "Total Income" for the three-year period ending December 31, 2021. | Teeple Decl. ¶ 9 |
| **Fact 27:** A substantial portion of Debtor's "Total Income" as listed on its profit and loss statements had not yet been earned by Debtor but was apparently spent upon receipt. | Teeple Decl. ¶ 9 |
| **Fact 28:** Proper accounting treatment of this unearned "income" would have been to record the unearned portion as cash received in a client trust or IOLTA bank account with an offsetting client retainer liability account in the same amount. Thus, the unearned portion of the income would be present only on the balance | Teeple Decl. ¶ 9 |

| **Trustee's Uncontroverted Material Facts** | **Supporting Evidence** |
|---|---|
| sheet and not on Debtor's profit and loss statement. | |
| **Fact 29:** Debtor's balance sheets reflect two trust accounts, the highest balance of which was approximately $346,000 in November 2021. | Teeple Decl. ¶ 9 |
| **Fact 30:** Debtor's balance sheets for the 36 months ending December 31, 2021 show only approximately $17,900,000 in total assets (primarily comprised of accounts receivable and merchant loans receivable) at its highest point in November 2021. | Teeple Decl. ¶ 11. |
| **Fact 31:** The balance sheets do not reflect a client retainer liability account. | Teeple Decl. ¶ 9 |
| **Fact 32:** Under some of its Legal Services Agreements, the Debtor had obligations to refund or return fees to its clients. One of these obligations arose if a debt that the consumer was disputing was fully validated. | Rapoport Decl. ¶ 7. |

10

| Trustee's Uncontroverted Material Facts | Supporting Evidence |
|---|---|
| **Fact 33:** If the Debtor used or deposited funds that should have been held in trust into its operating account, it violated Rule 1.15(a) of the California Rules of Professional Conduct. | Rapoport Decl. ¶ 10. |

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this adversary proceeding and over each of the parties pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (E), (F), and (H); 1334(b); and General Order No. 13-05 of United States District Court for the Central District of California because this adversary proceeding is a core proceeding arising in and/or related to the bankruptcy case, which is a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division. Venue lies properly with this Court. 28 U.S.C. § 1409(a).

2. Counts One through Six of the Complaint states a claim upon which relief may be granted against JGW Solutions, LLC ("JGW").

3. There are no genuine issues of material fact as to Counts One through Six of the Complaint, and Trustee is entitled to judgment as a matter of law against JGW pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Rule 7056 of the Federal Rules of Bankruptcy Procedure, and Local Rule 7056-1.

4. Rule 1.15(a) of the California Rules of Professional Conduct, formerly Rule 8-101 and 4-100, requires the deposit of funds received "for the benefit of a

1 client or other person to whom the lawyer owes a contractual, statutory, or other legal 2 duty, including advances for fees, costs, and expenses" into a trust account.

5. For a legal services agreement to comply with the California Rules of Professional Conduct, in retainer-type agreements, the money given as a retainer is not considered to be a present payment for future services. Rather, that money, which should be deposited into a trust account, remains property of the client until the attorney applies it to charges for services actually rendered. Any unearned funds must be returned to the client.

6. Rule 1.15(c) requires a lawyer to exercise control over the client trust account. Rule 1.15(c) ("Funds belonging to the lawyer or the law firm* shall not be deposited or otherwise commingled with funds held in a trust account except: (1) funds reasonably* sufficient to pay bank charges; and (2) funds belonging in part to a client or other person* and in part presently or potentially to the lawyer or the law firm,* in which case the portion belonging to the lawyer or law firm* must be withdrawn at the earliest reasonable* time after the lawyer or law firm's interest in that portion becomes fixed. However, if a client or other person* disputes the lawyer or law firm's right to receive a portion of trust funds, the disputed portion shall not be withdrawn until the dispute is finally resolved.") After funds in the trust account have been legitimately earned, in order to avoid commingling client funds and the lawyer's own funds, the lawyer must withdraw the earned fees from the trust account and transfer those earned fees to the lawyer's operating account.

7. To the extent that the Debtor moved into its operating account any client trust funds before the Debtor had "earned" the relevant fees, the Debtor violated Rule 1.15(a) of the California Rules of Professional Conduct.

8. The Affiliate Agreement is a "capping" agreement.

9. Section 6151 of the California Business and Professional Code defines a "runner" or "capper" as "any person, firm, association or corporation acting for consideration in any manner or in any capacity as an agent for an attorney at law or

law firm, … in the solicitation or procurement of business for the attorney at law or law firm as provided in this article." That same provision defines an "agent" as "one who represents another in dealings with one or more third persons."

10. Lawyer referral services must be registered with the California State Bar and must comply with ethical standards.

11. Plaintiff has proven the following by a preponderance of the evidence such that the Affiliate Agreement, ARPA Agreements, and Transfers are avoidable as fraudulent under 11 U.S.C §548(a)(1)(A), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate under 11 U.S.C. §§ 550 and 551:

    a. LPG made intentional fraudulent transfers to JGW when entering into the Affiliate Agreement and the ARPA Agreements and making the Transfers pursuant thereto.

    The following findings support this conclusion:

        i. On or after the date that the Affiliate Agreement and ARPA Agreements were executed and the Transfers made, LPG was or became indebted to the Prepetition Creditors, but LPG continued to sell or transfer portions of its accounts receivable to JGW using agreements that are illegal and void, with any purported consideration constituting unlawful consideration, which cannot constitute reasonably equivalent value.

        ii. LPG retained control of the property after the transfer and the consideration received as inadequate because the Affiliate Agreement gave rise to "account receivables," which JGW sold back to LPG under the ARPA Agreements

    b. LPG made constructive fraudulent transfers to JGW when entering into the Affiliate Agreement and ARPA Agreements.

    The following findings support this conclusion:

13

       i.      On or after the date that the Affiliate Agreement and ARPA Agreements were executed and the Transfers made, LPG was or became indebted to the Prepetition Creditors.

       ii.      LPG received less than reasonably equivalent value in exchange for the transfers because the Affiliate Agreement and ARPA Agreements are illegal based on their effect being to accomplish an unlawful purpose, and LPG was insolvent at the time of the transfers made pursuant to the Affiliate Agreement and ARPA Agreements.

    c.    LPG made preference transfers to JGW during the 90-day preference period for, or on account of, an antecedent debt or debts owed by LPG to JGW.

    The following findings support this conclusion:

       i.      LPG transferred an interest in property pursuant to the Affiliate Agreement and ARPA Agreements when it made the Transfers to JGW.

       ii.      LPG made the Transfers from December 27, 2022 through March 17, 2023, which occurred within 90 days before LPG's Petition Date of March 20, 2023 ("Preference Transfers").

       iii.      The Preference Transfers were made for, or on account of, an antecedent debt or debts owed by Debtor to Defendant.

       iv.      LPG made the Preference Transfers while insolvent.

       v.      As a result of the Preference Transfers, JGW recovered more than it would have received if: (i) Debtor's case was under Chapter 7 of the Bankruptcy Code, (ii) the Preference Transfers had not been made; and (iii) JGW received payments of its debts under the provisions of the Bankruptcy Code.

12.    JGW has not proven that any of the defenses set forth in 11 U.S.C. §548(a)(1)(A) or any other defense at law or equity prevent the Trustee from avoiding the Transfers.

13.    The Transfers are preserved for the benefit of the Estate.

|   |   |   |
|---|---|---|
| Dated: October 14, 2024 | | DINSMORE & SHOHL LLP |

By: /s/ Sarah S. Mattingly
    Yosina M. Lissebeck
    Sarah S. Mattingly (pro hac vice)

*Special Counsel to Richard A. Marshack,
Chapter 11 Trustee, for the Bankruptcy Estate of the Litigation Practice Group P.C. and Liquidating Trustee of the LPG Liquidation Trust*

15

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
101 S. Fifth Street, Suite 2500, Louisville, Kentucky 40202

A true and correct copy of the foregoing document entitled (*specify*): **PLAINTIFF RICHARD A. MARSHACK, CHAPTER 11 TRUSTEE FOR THE BANKRUPTCY ESTATE OF THE LITIGATION PRACTICE GROUP P.C. AND LIQUIDATING TRUSTEE OF THE LPG LIQUIDATION TRUST'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT FOR SUMMARY JUDGMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/14/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Marc Lieberman – marc.lieberman@flpllp.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 10/14/2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Marc Lieberman, Esq.
Alan W. Forsley, Esq.
FLP Law Group LLP
1875 Century Park East, Suite 2230
Los Angeles, California 90067

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 10/14/2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**JUDGE'S COPY – VIA FEDEX**
The Honorable Scott C. Clarkson
U.S. Bankruptcy Court – Central District of California
Ronald Regan Federal Building and Courthouse
411 West Fourth Street, Suite 5130, Courtroom 5C
Santa Ana, California 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/14/2024 | Jamie Herald | /s/ Jamie Herald |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**