1  Yosina M. Lissebeck (State Bar No. 201654)
   **DINSMORE & SHOHL LLP**
2  655 West Broadway, Suite 800
   San Diego, CA 92101
3  Telephone: 619.400.0500
   Facsimile: 619.400.0501
4  yosina.lissebeck@dinsmore.com

5  Sarah S. Mattingly (Ky. Bar 94257 – Admitted pro hac vice)
   **DINSMORE & SHOHL LLP**
6  101 S. Fifth Street, Suite 2500
   Louisville, KY 40202
7  Telephone: 859-425-1096
   Facsimile: 502-585-2207
8  Sarah.mattingly@dinsmore.com

9  *Special Counsel to Plaintiff Richard A. Marshack, the Chapter 11 Trustee for the*
   *bankruptcy estate of debtor The Litigation Practice Group PC and Liquidating Trustee of*
10 *the LPG Liquidation Trust*

11              **UNITED STATES BANKRUPTCY COURT**

12       **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

13 | In re:                                  | Case No. 8:23-bk-10571-SC |

14 | THE LITIGATION PRACTICE GROUP P.C.,     | Chapter 11 |

15 |                    Debtor.              | Adv. Proc. No. 8:23-ap-01148-SC |

16 |                                         | **PLAINTIFF RICHARD A. MARSHACK, CHAPTER 11 TRUSTEE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

17 | RICHARD A. MARSHACK, |
18 | Chapter 11 Trustee, |
   |                    Plaintiff, |
19 |                          |  [Filed concurrently With Statement of Uncontroverted Facts and Conclusion of Law, and Declarations of Joshua R. Teeple, Nancy Rapoport, and Sarah Mattingly] |
20 |        v.                |
   | JGW SOLUTIONS LLC,       |
21 |                    Defendant. |
22 |
23 |                          | Date:    November 26, 2024 |
   |                          | Time:    11:00 a.m. |
24 |                          | Judge:   Hon. Scott C. Clarkson |
   |                          | Place:   Courtroom 5C |
25 |                          |          411 West Fourth Street |
   |                          |          Santa Ana, California 92701 |
26

27

28

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, AND DEFENDANT JGW SOLUTIONS LLC, AND ITS COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, on November 26, 2024, at 11:00 a.m. in the Courtroom 5C of the above-entitled court, Plaintiff Richard A. Marshack, the Chapter 11 Trustee ("Trustee" and/or "Plaintiff") for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group PC ("Debtor" or "LPG") and liquidating trustee of the LPG Liquidation Trust, will and hereby does move ("Motion"), pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rules"), applicable to this adversary proceeding under Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and Rule 7056-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("Local Rules"), for summary adjudication against Defendant JGW Solutions LLC ("Defendant") on  All Counts of the Complaint.

Specifically, Plaintiff seeks an order that finds and directs as follows:

1. The Motion is granted;

2. Adequate notice of the Motion was given;

3. Judgment is entered in favor of Plaintiff and against Defendant on all Counts of the Complaint;

4. The Affiliate Agreement, ARPA Agreement, and Transfers are avoided as fraudulent under 11 U.S.C. § 548(a)(1)(A), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate  pursuant to 11 U.S.C. §§ 550 and 551;

5. The Affiliate Agreement, ARPA Agreements, and the Transfers are avoided as fraudulent under 11 U.S.C. § 548(a)(1)(B), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551;

6. The Affiliate Agreement, the ARPA Agreements, and the Transfers are avoided as fraudulent under 11 U.S.C. §§ 544(b) and Cal. Civ. Code §§ 3439.04(a) and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and Cal. Civ. Code § 3439.07;

7.     The Affiliate Agreement, the ARPA Agreements, and the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and Cal. Civ. Code §§ 3439.05 and 3439.07, and such transferred property, or the value thereof,  should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and Cal. Civ. Code § 3439.07;

8.     The Preference Transfers are avoidable pursuant to 11 U.S.C. § 547(b), and may be recovered and preserved for the benefit of the estate pursuant to 11 U.S.C. §§ 550 and 551;

9.     Trustee is entitled to a judgment for turnover of the  Transfers  pursuant  to  11 U.S.C. § 542;

10.    Defendant has no defense to the Trustee's claims under applicable law; and

11.    For such other and further relief as the Court deems just and proper.

**NOTICE IS FURTHER GIVEN** that the Motion is made pursuant to Rule 56, applicable to this adversary proceeding under Bankruptcy Rule, and Local Rule 7056-1 on the grounds that the Transfers  should  be  avoided  under 11 U.S.C. § 548(a)(1)(A),  548(a)(1)(B), 544(b), 547(b), and Cal. Civ. Code §§ 3439.04(a), and 3439.07, recovered  and preserved for the benefit of the Estate under  11  U.S.C.  §§  550, 551 and Cal. Civ. Code § 3439.07.

**NOTICE IS FURTHER GIVEN** that the Motion is supported by (a) this Notice of Motion and Motion, (b) the attached Memorandum of Points and Authorities, (c) the concurrently filed and lodged Statement of Uncontroverted Facts and Conclusions of Law in Support of Plaintiff's Motion for Summary Judgment, (d) the arguments of counsel, if any, in support of the Motion at the hearing thereon, (e) the entire record in Debtor's bankruptcy case and this adversary proceeding, (f) any other matters of which the Court may take judicial notice, and (g)  any other evidence properly presented to the Court in support of the Motion.

**NOTICE IS FURTHER GIVEN** that, pursuant to Local Rule 7056-1(c)(1) and (2), any party who opposes the Motion must, no later than 21 days before the date of the hearing on the Motion, file and serve a response and a separate "concise statement of genuine issues" identifying each material fact that is disputed and citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other document relied on to establish the dispute and the existence of a genuine issue precluding summary judgment.

**NOTICE IS FURTHER GIVEN** that, pursuant to Local Rule 7056-1(c)(3), the opposing party is responsible for filing with the Court all necessary evidentiary documents cited in the responding papers according to Local Rule 9013-1(i).

**NOTICE IS FURTHER GIVEN** that, pursuant to Local Rule 7056-1(c)(1) and (2), any party who opposes the Motion must, no later than 21 days before the date of the hearing on the Motion, file and serve a response and a separate "concise statement of genuine issues" identifying each material fact that is disputed and citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other document relied on to establish the dispute and the existence of a genuine issue precluding summary judgment.

**NOTICE IS FURTHER GIVEN** that, pursuant to Local Rule 7056-1(c)(3), the opposing party is responsible for filing with the Court all necessary evidentiary documents cited in the responding papers according to Local Rule 9013-1(i).

Dated: November 20, 2024

DINSMORE & SHOHL LLP

By: */s/ Sarah S. Mattingly*
       Yosina M. Lissebeck
       Sarah S. Mattingly (pro hac vice*)*
       *Special Counsel to Plaintiff Richard A.*
       *Marshack, the Chapter 11 Trustee for*
       *the bankruptcy estate of debtor The*
       *Litigation Practice Group PC and*
       *Liquidating Trustee of the LPG*
       *Liquidation Trust*

# **TABLE OF CONTENTS**

BACKGROUND ON DEBTOR AND CONTRACTS ................................................. 1

LEGAL STANDARD ............................................................................................ 2

ARGUMENT ...................................................................................................... 3

a.    Affiliate Agreement and ARPA Agreements are Illegal Under California Law ............ 3

    i.    California Law on Recruitment of Clients and Handling of Fees ....................... 3

    ii.    Affiliate Agreement and ARPA Agreements are Illegal and Void ..................... 5

b.    Claims ........................................................................................................ 9

    i.    Fraudulent Transfers ............................................................................ 9

    ii.    Constructive Fraudulent Transfer ........................................................... 10

    iii.    Preference Transfers ........................................................................... 14

    1.    The Preference Transfers were a Transfer of Interest of Debtor in Property ..... 14

    2.    The Preference Transfers Were For the Benefit of Defendant Done on ........
    .................................. Account  of an Antecedent Debt Owed to Defendant.
    14

    3.    The Preference Transfers Occurred While Debtor as Insolvent ................. 14

    4.    The Preference Transfers Occurred Within 90 Days of the Petition Date .. 16

    5.    The Preference Transfers Would Permit Defendant to receive More Than It
    ....................................... Would in a Hypothetical Chapter 7 Case.
    16

    6.    The Preference Transfers Were Preferential Transfers....................................... 17

c.    Debtor Entitled to Relief on Fraudulent Conveyance Causes of Action ........................ 17

    i.    Plaintiff's First Claim for Relief for Avoidance, Recovery, and Preservation of
    Actual Fraudulent Transfers ................................................................. 18

    ii.    Plaintiff's Second Claim for Relief for Avoidance, Recovery, and Preservation
    of Constructive Fraudulent Transfers ..................................................... 19

    iii.    Plaintiff's Third Claim for Relief for Avoidance, Recovery, and Actual
    Fraudulent Transfers ........................................................................... 20

    iv.    Plaintiff's Fourth Claim for Relief for Avoidance, Recovery, and Constructive
    Fraudulent Transfers ........................................................................... 20

    v.    Plaintiff's Fifth Claim for Relief for Avoidance, Recovery, and Preservation of
    Preferential Transfer ........................................................................... 21

vi.    Plaintiff's Sixth Claim for Relief Turnover of Estate Property ......................... 22

CONCLUSION ............................................................................................................. 26

# TABLE OF AUTHORITIES

**Cases**

*Alpers v. Hunt*
  86 Cal. 78, 24 P. 846 (1890)..............................................................................................6

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) ...........................................................................................................3

*Armstrong v. Collins*
  2010 U.S. Dist. LEXIS 28075 (S.D.N.Y. Mar. 24, 2010) ........................................17

*Bay Plastics, Inc. v. BT Commercial Corp. (In re Bay Plastics, Inc.)*
  187 B.R. 315 (Bankr. C.D. Cal. 1995) ...........................................................19, 11, 12

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986).............................................................................................................2

*Fewel & Dawes, Inc. v. Pratt*
  17 Cal.2d 85 [109 P.2d 650].............................................................................................11

*Firpo v. Murphy*
  72 Cal. App. 249 (1925) ....................................................................................................7

*Hansen v. MacDonald Meat Co. (In re Kemp Pac. Fisheries)*
  16 F.3d 313 (9th Cir. 1994) ............................................................................................14

*HBE Leasing Corp. v. Frank*
  48 F.3d 623 (2d Cir. 1995) ..............................................................................................10

*In re Montgomery Drilling Co.,*
  121 Bankr. 32 (Bankr. E.D.Cal. 1990) ........................................................................4

*IRFM, INC. v. EVER-FRESH FOOD Co.*
  52 F.3d 228 (9th Cir. 1995) ............................................................................................14

*Jackson v. LegalMatch.com*
  42 Cal. App. 5th 760, 255 Cal. Rptr. 3d 741 (2019) ..................................................6

*Kasolas v. Nicholson (In re Fox Ortega Enters.)*
  631 B.R. 425 (Bankr. N.D. Cal. 2021) ................................................................9, 10, 11

*Lovering Tubbs Tr. v. Hoffman (In re O'Gorman)*
  No. NC-22-1062-BFT, 2022 Bankr. LEXIS 3627 (B.A.P. 9th Cir. Dec. 21, 2022) ....................9

*Moody v. Security Pacific Business Credit, Inc.*
  971 F.2d 1056 (3rd Cir. 1992).........................................................................................12

*Origen Capital Invs. II, LLC v. DeMattos*
  No. CV 20-2384-MWF (SK), 2020 U.S. Dist. LEXIS 196364 (C.D. Cal. July 29, 2020) ..........9

*Severance v. Knight-Counihan Co.*
  29 Cal. 2d 561, 177 P.2d 4 (1947)..................................................................................17

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*
  403 F.3d 43 (2nd Cir. 2005)....................................................................................................... 9

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*
  337 B.R. 791 (Bankr. S.D.N.Y. 2005).................................................................................... 9

*Sol. Tr. v. 2100 Grand LLC (In re AWTR Liquidation Inc)*.
  548 B.R. 300 (Bankr. C.D. Cal. 2016).................................................................................. 12

*Speier v. Argent Mgmt., LLC (In re Palmdale Hills Prop.)*
  2017 Bankr. LEXIS 2163 (Cal. C.D. Bankr. Aug. 2, 2017)................................................ 2

*Stevens v. Boyes Hot Springs Co.*
  113 Cal. App. 479 (1931) ..................................................................................................... 6

*Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*
  112 Cal. App. 2d 684 (1952) .......................................................................................... 6, 11

*T & R Foods, Inc. v. Rose*
  47 Cal. App. 4th Supp. 1, 56 Cal. Rptr. 2d 41 (1996) ....................................................... 4

*Tufeld Corp. v. Beverly Hills Gateway, L.P.*
  86 Cal. App. 5th 12, 302 Cal. Rptr. 3d 203 (2022) ........................................................... 7

*Valente v. Nowland (In re Valente)*
  No. SC-22-1182-SGB, 2023 Bankr. LEXIS 1206 (B.A.P. 9th Cir. May 5, 2023)........................ 9

*Wolkowitz v. Soll, Rowe, Price, Raffel & Browne (In Fink)*
  217 B.R. 614 (Bankr. C.D. Cal. 1997) ........................................................................ 11, 17-79

*Yvanova v. New Century Mortg. Corp.*
  62 Cal. 4th 919, 199 Cal. Rptr. 3d 66,  365 P.3d 845 (2016) .................................... 7, 8

**Statutes**

Cal. Civ. Code § 6155 ............................................................................................................ 2, 6

11 U.S.C. § 542 ......................................................................................................................... 22

11 U.S.C. § 544 ......................................................................................................................... 22

11 U.S.C. § 547 ...................................................................................................................14-17, 21-22

11 U.S.C. § 548 ............................................................................................................ 9, 11, 12, 19

11 U.S.C. § 558 ......................................................................................................................... 11

11 U.S.C. § 550  ....................................................................................................... 13, 17, 19-22

11 U.S.C. § 551 ......................................................................................................... 13, 17, 19-22

Cal. Civ. Code § 3439.04  ................................................................................................... 9, 20

Cal Civ. Code § 3439.07 ................................................................................................ 9, 13, 20, 21

Cal. Civ. Code § 1608 ....................................................................................................... 6, 11, 18, 19

Cal. Civ. Code § 1667 ..................................................................... 6, 11, 18, 19

Cal. Civ. Code § 3439.03 ........................................................................... 11

Cal. Civ. Code § 3439.02 ........................................................................... 11

Civ. Code § 3439.05............................................................................... 13, 21

**<u>Miscellaneous</u>**

Securities Exchange Act of 1934 Act Section 10(b) and Rule 10b-5 ........................... 17

Cal. Bus. & Prof. Code Section 6151..................................................... 1, 2, 5

Cal. Bus. & Prof. Code Section 6154(a) ....................................................... 6

**<u>Rules</u>**

Cal. R. Prof. Conduct 1.15 ..................................................................... 3, 5

Cal. R. Prof. Conduct 1.15(a).................................................................... 3

Cal. R. Prof. Conduct 1.15(c).................................................................... 9

Cal. R. Prof. Conduct  1.15(c)(2) ................................................................ 4

Cal. R. Prof. Conduct  1.15(d)(7) ................................................................ 4

### BACKGROUND ON DEBTOR AND CONTRACTS[1]

LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify. [Bankr. Dk. 1545, ¶ 4; 3-5]. Consumers would pay LPG via monthly debits from their bank accounts to cover all legal services LPG provided to the consumers. [Bankr. Dk. 1545, ¶ 5; 6-10].   To obtain consumer clients, LPG contracted with marketing companies, including Defendant, who would obtain clients for LPG via telemarketing services, and in exchange, LPG agreed to pay the marketing affiliates a percentage of the monthly payments collected by LPG from the consumers. [Adv. 24-01011, Dk. 104-1, Declaration of Nancy Rapoport ("Rapoport Decl."), ¶ 7]. Based on the banking transactions between Defendant and Debtor, Debtor entered into an "Affiliate Agreement" arrangement with Defendant, which provides Defendant owns and operates a system of generating leads consisting of consumers interested in the legal services offered by LPG. Trustee's Statement of Uncontroverted Facts in Support of Motion for Summary Judgment ("SUF") ¶ 15; Rapoport Decl. ¶ 3. Thus, LPG agreed to pay, and in fact paid, Defendant a portion of the monthly payments received from consumers referred by Defendant. [Dk. 1, Exhibit 1.] As discussed below, the Affiliate Agreement violates Sections 6151 and 6155 of the California Business Professional Code, which prohibit referrals of potential clients to attorneys unless registered with the State Bar of California. The effect is that the Affiliate Agreement lacks consideration and is void as a matter of law.

LPG and Defendant also entered into five Accounts Receivable Purchase Agreements ("ARPA Agreements"), including on or about November 7, 2022, November 17, 2022, January 23, 2023, January 28, 2023, and March 31, 2023. SUF  ¶¶ 2-6; Declaration of Sarah S. Mattingly ("Mattingly Decl.") ¶¶ 3-8.[2] Pursuant to the ARPA Agreements, Defendant purported to sell

---

[1] Courts make take judicial notice of the dockets for bankruptcy proceedings and filings made in the bankruptcy proceedings, as judicial notice may be taken of court records. *Ng v. US Bank, NA*, 2016 U.S. Dist. LEXIS 166054 at *3 (N.D. Cal. Nov. 30, 2016) (citations omitted), *aff'd*, 712 F. App'x 665 (9th Cir. 2018).

[2] The terms of each ARPA Agreement speak for themselves, but a summary of these agreements is as follows: (1) Pursuant to the terms of the November 7, 2022 ARPA, LPG agreed to pay Defendant $118,794.96 to purchase accounts from Defendant. SUF ¶ 1; Mattingly Decl. ¶¶ 3-4; (2) Pursuant to the terms of the November 17, 2022 ARPA, LPG agreed to pay Defendant $41,438.96 to purchase accounts from Defendant. SUF ¶ 2; Mattingly Decl. ¶¶ 5-4; (3) Pursuant to the terms of the January

accounts receivable generated by the Affiliate Agreement back to LPG. SUF ¶¶ 2-6; Mattingly Decl. ¶¶ 3-8. LPG agreed to pay, and in fact paid, Defendant the purchase price outlined in each ARPA Agreements. SUF ¶¶ 2-6; Mattingly Decl. ¶¶ 3-8. As discussed below, the ARPA Agreements violate Sections 6151 and 6155 of the California Business Professional Code, which prohibit referrals of potential clients to attorneys unless registered with the State Bar of California. SUF ¶¶ 17-19; Mattingly Decl. ¶ 13; Rapoport Decl. ¶ 13. The effect is that the Affiliate Agreement lacks consideration and is void as a matter of law. Further, by entering into the ARPA Agreements, LPG and Defendant violated federal and state laws be selling unearned legal fees or funds that were supposed to be held in trust or used for the benefit of consumers. SUF ¶ 21; Rapaport Decl. ¶¶ 6-10.

Because the Affiliate Agreement and ARPA Agreements violate federal and state laws, they are void, unenforceable, and subject to avoidance as fraudulent. Plaintiff therefore filed suit against Defendant to recover the payments made pursuant to the Affiliate Agreement and ARPA Agreements as fraudulent conveyances pursuant to the Bankruptcy Code and applicable state law. [Dk. 1].  Plaintiff included preference claims as an additional form of relief to the fraudulent conveyance counts, as well a turnover. [*Id.*]

## **LEGAL STANDARD**

Bankruptcy Rule 7056 provides that Federal Rule of Civil Procedure 56 applies in adversary proceedings. Summary judgment is appropriate if the party moving for summary judgment shows that there is no dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that affect the outcome of the proceedings. *Speier v. Argent Mgmt., LLC (In re Palmdale Hills Prop.)*, 2017 Bankr. LEXIS 2163, at * 30 (Cal. C.D. Bankr. Aug. 2, 2017) (citing

---

23, 2023 ARPA, LPG agreed to pay Defendant $211,073.78 to purchase accounts from Defendant. SUF ¶ 3; Mattingly Decl. ¶¶ 4, 6; (4) Pursuant to the terms of the January 28, 2023 ARPA, LPG agreed to pay Defendant $179,229.82 to purchase accounts from Defendant. SUF, ¶ 4; Mattingly Decl. ¶¶ 4, 7; (5) Pursuant to the terms of the March 31, 2023 ARPA, LPG agreed to pay Defendant $248,754.80 to purchase accounts from Defendant. SUF, ¶ 5; Mattingly Decl. ¶¶ 4, 8. Defendant has admitted to entering into each of these ARPA Agreements. SUF ¶ 6; Mattingly Decl. ¶¶ 4, 8.

1   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is genuine where the

2   evidence is such that a reasonable jury could return a verdict for the non-moving party.

3                                              **ARGUMENT**

4         Summary judgment is proper because: (1) the Affiliate Agreement and ARPA Agreements

5   are illegal under California law; (2) Debtor did not receive reasonably equivalent value; and (3)

6   because Debtor was insolvent at the time of the Transfers.

7         **a.**      **Affiliate Agreement and ARPA Agreements are Illegal Under California Law**

8                  **i.**      **California Law on Recruitment of Clients and Handling of Fees**

9         Debtor entered into a legal services agreement with its consumers whereby consumers would

10  make monthly payments to Debtor for all legal services to be provided to the consumers via monthly

11  debits from their bank accounts. *See* SUF ¶¶ 8, 14, 15; Mattingly Decl. ¶ 12; Rapaport Decl. ¶ 3-4.

12  Rule 1.15(a) of the California Rules of Professional Conduct, formerly Rule 8-101 and 4-100,

13  requires the deposit of funds received "for the benefit of a client or other person to whom the lawyer

14  owes a contractual, statutory, or other legal duty, including advances for fees, costs, and expenses"

15  into a trust account. *See* Conclusion of Law ("COL") ¶ 4.

16        In addition, Rule 1.15 governs when trust funds are earned. In California,

17

18              Essentially, three types of retainers exist, being (1) Classic or True
                Retainers, (2) Security Retainers, and (3) Advance Payment

19              Retainers. [Citation.] Classic Retainers refer to the payment of a sum
                of money to secure availability over a period of time. Entitlement to

20              the fee exists whether or not services are ever rendered. . . . [P] . . .
                The Security Retainer is typified by the fact that the retainer will be

21              held by the attorneys to secure payment of fees for future services that
                the attorneys are expected to render. In such an agreement, the money

22              given as a retainer is not present payment for future services. Rather,
                it remains property of the [client] until the attorney applies it to

23              charges for services actually rendered, and any unearned funds are
                returned to the [client]. [P] The third type of retainer, the Advance

24              Payment Retainer, is an agreement whereby the [client] pays, in
                advance, for some or all of the services that the attorney is expected

25              to perform on the [client]'s behalf. … In reviewing former California
                Rules of Professional Conduct 8-101, this Court views the language

26              contained therein as indicating an intent by the State Bar that funds
                retain an ownership identity with the client until earned.

27

28

1   *T & R Foods, Inc. v. Rose*, 47 Cal. App. 4th Supp. 1, 7, 56 Cal. Rptr. 2d 41, 44 (1996) (quoting *In*

2   *re Montgomery Drilling Co.*, 121 Bankr. 32 (Bankr. E.D.Cal. 1990)).

3         Further, Rule 1.15(c) provides that a lawyer is obligated to exercise control over client trust

4   accounts. COL ¶ 6. In particular, if there are funds belonging to the lawyer in the client trust account,

5   that portion belonging to the lawyer or law firm must be withdrawn at the earliest reasonable time

6   after the lawyer or law firm's interest in that portion becomes fixed. Rule 1.15(c)(2); COL ¶ 6. A

7   lawyer must also promptly distribute, as requested by the client or other person, any undisputed

8   funds or property in the possession of the lawyer or law firm that the client or other person is entitled

9   to receive. Rule 1.15(d)(7); *see also* COL ¶ 6.

10         Here, the payments made by the consumers were either Security Retainers or Advance

11   Payment Retainers (collectively "Retainers") until earned. Once earned, they should have been

12   withdrawn and placed in Debtor's operating accounts. SUF ¶¶ 21, 28, 33; Rapaport Decl. ¶¶ 9, 10.

13   But, instead, prior to being "earned", payments were paid to Defendant, an illegal marketer, totaling

14   $621,090.91 ("Monthly Payments"). SUF ¶¶ 8-10, Mattingly Decl. ¶¶ 3, 4, 12; Declaration of Joshua

15   Teeple ("Teeple Decl.") ¶ 5.

16         Each ARPA Agreement sets forth the terms under which Debtor paid Defendant to

17   repurchase Monthly Payments. SUF ¶¶ 2-6; Mattingly Decl. ¶¶ 3-8. Each ARPA Agreement

18   contains a section that sets forth the purchase price for the "Purchased Accounts" and indicates that

19   Defendant shall pay that price via wire transfer. *Id.* Defendant has admitted in their Responses to

20   Trustee's Requests for Admissions that it entered into these ARPA Agreements with Debtor on

21   November 7, 2022, November 17, 2022, January 23, 2023, January 28, 2023, and March 31, 2023.

22   *Id.* The Transaction History Report, attached as Exhibit 1 to the Complaint and highlighted in Joshua

23   Teeple's Declaration, and Defendant's own admissions establishes that each of the payments

24   anticipated in the ARPA Agreements between Defendant and Debtor were, in fact, made. SUF ¶¶

25   2-8; Mattingly Decl. ¶¶ 3-8, 11, 12.

26         Specifically, the ARPA Agreement that Defendant and Debtor entered into on November 7,

27   2022, sets forth a purchase price of $118,794.96. *See* SUF ¶ 2; Mattingly Decl. ¶¶ 4-5. Defendants

28   admits that Debtor paid it $118,794.96 on November 15, 2022. *Id.* The ARPA Agreement that

Defendant and Debtor entered into on November 16, 2022, sets forth a purchase price of $41,438.96. *See* SUF ¶ 3; Mattingly Decl. ¶¶ 4, 6. Defendants admits that Debtor paid it $41,438.96 on December 5, 2022. *Id.* The ARPA Agreement that Defendant and Debtor entered into on January 23, 2023, sets forth a purchase price of $211,073.78. *See* SUF ¶ 4; Mattingly Decl. ¶¶ 4, 7. Defendants admits that Debtor paid it $211,073.78 on February 1, 2023. *Id.* The ARPA Agreement that Defendant and Debtor entered into on January 28, 2023, sets forth a purchase price of $179,229.82. *See* SUF ¶ 5; Mattingly Decl. ¶¶ 4, 8. Defendant admits that Maverick Management Group LLC[3] paid it $179,229.82 on March 17, 2023. *Id.* Between August 19, 2022 through March 17, 2023, LPG transferred $621,090.91 to JGW pursuant to the ARPA Agreements. SUF ¶ 12; Mattingly Decl. ¶¶ 4, 13-14; Teeple Decl. ¶ 5. These sums were clearly not withdrawn and placed in Debtor's operating accounts, but rather paid to Defendant, who was not operating a legitimate lawyer referral service or registered with the State Bar of California. SUF ¶¶ 17-19; Mattingly Decl. ¶ 13; Rapaport Decl. ¶ 13.

Based on the provisions of Rule 1.15, the Affiliate Agreement and ARPA Agreements, which called for immediate payment of a percentage of client payment upon receipt, violate the Rules of Professional Responsibly and applicable California statutes. SUF ¶ 19; Mattingly Decl. ¶ 13; Rapaport Decl. ¶ 13; COL ¶ 7.

### ii.    Affiliate Agreement and ARPA Agreements are Illegal and Void

In addition to violating the Rules of Professional Responsibility and related statutes, the Affiliate Agreement and ARPA Agreements that channeled clients to Debtor in exchange for a percentage of the fees paid also violate other provisions of the California Business and Professional Code. SUF ¶ 14; Rapaport Decl. ¶ 4. Section 6151 of the California Business and Professional Code, defines a "runner," "capper," and "agent" as "any person, firm, association or corporation acting for consideration in any manner or in any capacity as an agent for an attorney at law or law firm, … in the solicitation or procurement of business for the attorney at law or law firm as provided in this

---

[3] Maverick Management Group, LLC is an affiliate of LPG. The transfer made on March 17, 2023 of $179,229.82 was made using LPG's funds going through Maverick Management Group, LLC. SUF ¶ 11; Mattingly Decl. ¶¶ 13-14.

article," and "one who represents another in dealings with one or more third persons." COL ¶ 9.

Pursuant to Section 6154(a) of the California Business and Professional Code, an agreement for

legal professional services secured through

a runner or capper is void. The Supreme Court of California has stated that this section also voids

the corresponding agreement between the attorney and the runner/capper.

See *Alpers v. Hunt*, 86 Cal. 78, 90, 24 P. 846, 850 (1890) ("It is clear that the right of the

plaintiff to recover herein is the same as that of his assignor, Bolte. If the latter cannot recover,

neither can the plaintiff, his assignee.").

"The Legislature has created an exception to the prohibition on client solicitation through

runners and cappers by allowing lawyer referral services to operate as long as they are registered

with the State Bar and comply with standards set by the State Bar or Supreme Court." *Jackson v.

LegalMatch.com*, 42 Cal. App. 5th 760, 773, 255 Cal. Rptr. 3d 741, 750 (2019) (citing § 6155(a)).

Here, Defendant was and is not registered with the California State Bar. SUF ¶ 17; Rapaport Decl.

¶ 13. Thus, based on California law, the Affiliate and ARPA Agreements, remain void as a matter

of law.

Other provisions of California law support Plaintiff's position that the Affiliate Agreement

and ARPA Agreements are void as a matter of law. In particular, Section 1667, California Civil

Code, provides that unlawful consideration is that which is "(1) [c]ontrary to an express provision

of law; (2) [c]ontrary to the policy of express law, though not expressly prohibited; or, (3)

[o]therwise contrary to good morals." Furthermore, Section 1608, California Civil Code, states that

"[i]f any part of a single consideration for one or more objects, or of several considerations for a

single object, is unlawful, the entire contract is void." There are also numerous decisions finding

that an entire agreement may be declared illegal if part of the effect of the agreement is to accomplish

an illegal purpose. *See Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d

684, 690 (1952); *see also Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479, 483 (1931) (holding

that a contract by a corporation to purchase its own stock has the effect of illegally withdrawing and

paying to a stockholder a part of the capital stock of the corporation and is illegal and void,

regardless of the fact that the contract is fully performed by the sellers and partially performed by

the corporation); *Firpo v. Murphy*, 72 Cal. App. 249, 252 (1925) (holding that a contract to pay commissions to a real estate broker is illegal and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business).

As the Second Division Court of Appeals recently reviewed California law on void and voidable contracts stating:

> A void contract is without legal effect. (Rest.2d Contracts, § 7, com. a, p. 20.) 'It binds no one and is a mere nullity.'" (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 929 [199 Cal. Rptr. 3d 66, 365 P.3d 845] (Yvanova).) "A voidable transaction, in contrast, 'is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance.' (Rest.2d Contracts, § 7, p. 20.)" (*Yvanova*, at p. 930.) Thus, if a contract is void and not merely voidable, the equitable defenses of estoppel, laches, and waiver do not apply. (*Colby v. Title Ins. and Trust Co.* (1911) 160 Cal. 632, 644 [117 P. 913] (*Colby*); *Tatterson v. Kehrlein* (1927) 88 Cal.App. 34, 49 [263 P. 285] (*Tatterson*).)
>
> The law regarding the illegality of contracts is sometimes confusing and difficult to understand. (*McIntosh v. Mills* (2004) 121 Cal.App.4th 333, 344 [17 Cal. Rptr. 3d 66] ["'[I]llegality of contracts constitutes a vast, confusing and rather mysterious area of the law'"].) Generally, when a contract or a provision in a contract is prohibited by a statute, it is void. (*Asdourian v. Araj* (1985) 38 Cal.3d 276, 291 [211 Cal. Rptr. 703, 696 P.2d 95] (*Asdourian*), superseded by statute on other grounds as noted in *Construction Financial v. Perlite Plastering Co.* (1997) 53 Cal.App.4th 170, 175 [61 Cal. Rptr. 2d 574]; *Vitek, Inc. v. Alvarado Ice Palace, Inc.* (1973) 34 Cal.App.3d 586, 591 [110 Cal. Rptr. 86] (*Vitek*); 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 432.)

*Tufeld Corp. v. Beverly Hills Gateway, L.P.*, 86 Cal. App. 5th 12, 27, 302 Cal. Rptr. 3d 203 (2022).

The quotation from the *Yvanova* case cited above continued stating:

> Such a [void] contract has no existence whatever. It has no legal entity for any purpose and neither action nor inaction of a party to it can validate it ... ." (*Colby v. Title Ins. and Trust Co.* (1911) 160 Cal. 632, 644 [117 P. 913].) As we said of a fraudulent real property transfer in *First Nat. Bank of L. A. v. Maxwell* (1899) 123 Cal. 360, 371 [55 P. 980], "'A void thing is as no thing.'"

*Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 929, 199 Cal. Rptr. 3d 66, 74, 365 P.3d 845, 852 (2016).[4]

Here, Debtor's Affiliate Agreements created a stream of accounts receivable payments to Defendant, which Defendant then bundled and re-sold as accounts receivables to LPG pursuant to the ARPA Agreements. SUF ¶¶ 2-7, 15; Mattingly Decl. ¶¶ 3-8, 11; Rapaport Decl. ¶ 3. The Transaction History Report of Debtor's transfers to Defendant indicate weekly payments were made pursuant to the Affiliate Agreements and Defendant admitted to receiving same in their Responses to Trustee's Requests for Admissions. SUF ¶¶ 8, 15; Mattingly Decl. ¶ 12; Rapaport Decl. ¶ 3. As Nancy Rapaport makes clear in her Declaration, the Affiliate Agreement constitutes an illegal capping agreement and is thus void. SUF ¶ 16; Rapaport Decl. ¶¶ 11-12.

As a result of the illegality of the Affiliate Agreement, the account receivables were not an asset Defendant could resell to Debtor as the initial transfer was void as violative of California law because they were the stream of money from Debtor's customers created under the void Affiliate Agreement. SUF ¶¶ 2-7; Mattingly Decl. ¶¶ 3-8, 11; COL ¶ 8. Thus, any sums paid by Debtor to

---

[4] Because a void contract is a legal nullity, courts often refuse to enforce contracts that are either void or illegal under the *in pari delicto* doctrine or due to the fact that there is no agreement that the court should or could enforce. However, *in pari delicto* is wholly inapplicable as a defense to the claims asserted in Plaintiff's Complaint. Chapter 5 of the United States Bankruptcy Code expressly confers standing on the trustee to bring action to recover fraudulent transfers and avoidance actions, both under bankruptcy and state law, and the defense of in *pari delicto* does not apply in seeking such recovery because, (i) by definition, these sections are exceptions to that defense and (ii) as a general rule, plaintiffs in fraudulent conveyance actions are not subject to defenses that could be raised against a debtor. *In re Pearlman*, 472 B.R. 115 (Bankr. M.D. Fla. 2012); *see also* 11 U.S.C. § 544(b) (authorizing trustee to pursue avoidance claims of unsecured creditors under applicable state law).

The avoidance power is expressly available in a situation, as here, where a creditor of the debtor would have a cause of action against the transferee, but the debtor itself would not. 6 Collier on Bankruptcy P 749.02 (16th 2023); 11 U.S.C. § 544(b). For example, this occurs when the debtor is a participant in a fraud which harms its customers. *Id.* Under the *in pari delicto* doctrine, the debtor would not normally have a cause of action against the recipient/accomplice/transferee, but the trustee, standing in the shoes of both the debtor and its creditors, may be permitted to recover from the accomplice because such recovery benefits the creditors. *Id.*; *In re Bernard L. Madoff Inv. Sec. LLC*, 557 B.R. 89, 123 (Bankr. S.D.N.Y. 2016) ("Neither the defense of *in pari delicto* nor the related standing rule of [*Wagoner*] bars the Trustee's fraudulent transfer actions because those claims are specifically conferred on the Trustee by the Bankruptcy Code and SIPA.").

1  Defendant constitute a recoverable transfer for the benefit of the estate because the consideration

2  received was inadequate as no consideration can be provided where the underlying asset is based on

3  a void contract. COL ¶ 11(a)(i)-(ii).

4         **b.**     **Claims**

5            **i.**     **Fraudulent Transfers**

6       A transfer that is fraudulent under 11 U.S.C. § 548 and Cal. Civ. Code §§ 3439.04(a) and

7  3439.07 may be an intentional fraudulent transfer, or a constructive fraudulent transfer. *See*

8  *generally Bay Plastics, Inc. v. BT Commercial Corp. (In re Bay Plastics, Inc.)*, 187 B.R. 315, 322-

9  23 (Bankr. C.D. Cal. 1995).  A transfer is an intentional fraudulent transfer if it is made with the

10  actual intent to hinder, delay or defraud a creditor. *Id.* Actual intent to hinder, delay or defraud a

11  creditor is met when a party establishes badges of fraud. *Sharp Int'l Corp.*, 403 F.3d 43, 56 (2nd Cir.

12  2005). Badges of fraud include, but are not limited to: debtor retained control of the property after

13  the transfer and the consideration received was inadequate. *See Silverman v. Actrade Capital, Inc.*

14  *(In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005); *see also Lovering Tubbs*

15  *Tr. v. Hoffman (In re O'Gorman)*, No. NC-22-1062-BFT, 2022 Bankr. LEXIS 3627, at *14 (B.A.P.

16  9th Cir. Dec. 21, 2022) (finding intent to hinder or delay where the transfer of the property was for

17  no consideration and without notice to creditors, which are two of the badges of fraud relied upon

18  by Trustee and the court); *Valente v. Nowland (In re Valente)*, No. SC-22-1182-SGB, 2023 Bankr.

19  LEXIS 1206, at *32 (B.A.P. 9th Cir. May 5, 2023) (agreeing with lower court that badges of fraud

20  were present and sufficient to find intent to defraud creditors where transfers were made to benefit

21  an insider, that debtor could not pay its rent or employees and suit was filed against debtor for

22  nonpayment of rent, and debtor received no value for making transfers); *Kasolas v. Nicholson (In*

23  *re Fox Ortega Enters.)*, 631 B.R. 425, 445 (Bankr. N.D. Cal. 2021) (finding intent to defraud based

24  on a transfer made after the threat of litigation); *Origen Capital Invs. II, LLC v. DeMattos*, No. CV

25  20-2384-MWF (SK), 2020 U.S. Dist. LEXIS 196364, at *11 (C.D. Cal. July 29, 2020) (finding

26  plaintiff had sufficiently plead actual intent to defraud by alleging, *inter alia*, debtor retained

27  possession or control of the property after transfer, debtor received little or nothing of value in

28  exchange for the transfers, and debtor became insolvent after the transfers were made).

There is no minimum number of factors that are required to demonstrate fraudulent intent, and only one or two badges of fraud may suffice to find a transfer was made with actual fraudulent intent. *Kasolas,* 631 B.R. at 445. Further, intent may be found even where no badges of fraud are found, when otherwise supported by the evidence. *Id.* If a plaintiff can show sufficient badges of fraud, the requisite intent is inferred from those circumstances. *See HBE Leasing Corp. v. Frank*, 48 F.3d 623, 639 (2d Cir. 1995) (actual fraudulent intent must be shown by clear and convincing evidence, though it may be inferred from the circumstances). The Court must review the badges of fraud together with all other evidence in the record to determine whether  the evidence and appropriate inferences establish an overall impression of fraudulent intent. *Kasolas*, 631 B.R. at 445.

The badges of fraud in this matter include the entry of the Affiliate Agreement between Debtor and Defendant that violated California law as an illegal capping agreement and are thus void. SUF ¶ 16; Rapaport Decl. ¶¶ 11-12. The Affiliate Agreement in turn gave rise to what Defendant characterized as an account receivable, which it then sold back to the Debtor under the ARPA Agreements. SUF ¶¶ 2-7, 15; Mattingly Decl. ¶¶ 3-8, 11; Rapaport Decl. ¶ 3. However, this too is a void agreement because the accounts receivable could not be resold by Defendant as they arose from a void contract. SUF ¶ 16; Rapaport Decl. ¶¶ 11-12. Further, there is lack of consideration for Debtor's payment to Defendant for accounts receivable, which have no value given they arose out of the void Affiliate Agreement. The illegal nature of the Affiliate Agreements that consequentially void the ARPA Agreements that arose by way of the Affiliate Agreements demonstrate an overall impression of fraudulent intent.

### ii.    Constructive fraudulent transfer

A transfer is a constructive fraudulent transfer if the debtor receives less than reasonably equivalent value in exchange for the transfer, and the transfer is made while the debtor is in financial distress. *Kasolas*, 631 B.R. at 445. The California statute defines "value" for fraudulent conveyance purposes as

> Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed

1    promise made otherwise than in the ordinary course of the promisor's
business to furnish support to the debtor or another person.

2

3    Cal. Civ. Code § 3439.03.

4    California holds that unlawful consideration cannot provide reasonable equivalent

5    consideration. *See* Cal. Civ. Code § 1608 and 1667 discussed *supra*. Cases interpreting these

6    provisions find that "if any effect of an agreement is to accomplish an unlawful purpose, the

7    agreement may be declared illegal regardless of the intention of the parties." *Stockton Morris Plan*

8    *Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690, 247 P.2d 90, 93 (1952) (citing *Fewel*

9    *& Dawes, Inc. v. Pratt*, 17 Cal.2d 85, 91 [109 P.2d 650]). Bankruptcy courts in California have

10   likewise held that illegal consideration does not constitute reasonably equivalent value. *See*

11   *Wolkowitz v. Soll, Rowe, Price, Raffel & Browne (In Fink),* 217 B.R. 614, 622 n.7 (Bankr. C.D. Cal.

12   1997). Thus, even if this Court does not find that the Affiliate Agreement and ARPA Agreements

13   are illegal based on their effect being to accomplish an unlawful purposes, the transfers made under

14   the Affiliate Agreement and ARPA Agreements are nonetheless constructively fraudulent because

15   Debtor received less than reasonably equivalent value in exchange for the transfer. SUF ¶¶ 15-19.

16   Defendant cannot legally provide the consumer referrals to LPG unless registered with the State Bar

17   of California, which it is not, and the transfers were made while Debtor was in financial distress.

18   SUF ¶¶ 15-19, 23; Mattingly Decl. ¶ 13; Rapaport Decl. ¶¶ 3, 11-13; Teeple Decl. ¶¶ 6-11.

19   In addition to receiving less than reasonably equivalent value in exchange for the transfer,

20   Plaintiff must establish financial distress**.** 11 U.S.C. § 558(a)(1)(B)(ii); *Kasolas*, 631 B.R. at 445.

21   "There are three kinds of financial distress that make a transaction a fraudulent transfer:  (a) a

22   transfer while a debtor is insolvent or that renders a debtor insolvent ["balance sheet insolvency"];

23   (b) a transfer that leaves a debtor undercapitalized or nearly insolvent (i.e., with insufficient assets

24   to carry on its business) ["inadequate capitalization"]; [or] (c) a transfer when the debtor intends to

25   incur debts beyond its ability to pay ["cash flow or equitable insolvency"]." *Bay Plastics*, 187 B.R.

26   315, 322-23 (citing UFTA §§ 4, 5; UFCA § 4; Bankruptcy Code § 548). Insolvency is defined in

27   California Civil Code § 3439.02(a): "A debtor is insolvent if, at fair valuations, the sum of the

28   debtor's debts is greater than all of the debtor's assets." UFTA § 2(a) is essentially the same. These

1   statutes adopt the balance sheet test for insolvency: a debtor is insolvent if the liabilities exceed the

2   assets. However, for insolvency purposes, the valuation of assets is based on "a fair valuation." *Bay*

3   *Plastics*, 187 B.R. 330. In addition, intangible assets such as goodwill that may have no liquidation

4   or going concern value, must be deleted in evaluating the solvency of an entity. *Id.* Further, a

5   corporation can have a positive balance sheet but be completely unable to pay its debts as they come

6   due, and would therefore be in financial distress. *Sol. Tr. v. 2100 Grand LLC (In re AWTR*

7   *Liquidation Inc.)*, 548 B.R. 300, 331 (Bankr. C.D. Cal. 2016). "Similarly, although a corporation

8   may be currently paying its debts and have assets that exceed present liabilities, nevertheless it can

9   be doomed to fail - e.g., after an improvident leveraged buyout - and therefore be insolvent under

10  the inadequate capital test." *Id.* (citing *Moody v. Security Pacific Business Credit, Inc.*, 971 F.2d

11  1056, 1065-75 & n.22 (3rd Cir. 1992)).

12       The evidence demonstrates that Debtor was insolvent at the time of the transfers made

13  pursuant to the Affiliate Agreement and ARPA Agreements. SUF ¶ 23; Teeple Decl. ¶¶ 6-11.

14  Specifically, the Teeple Declaration establishes that the Debtor was in substantial financial trouble

15  at all relevant times herein. The Teeple Declaration states that the Debtor treated fees collected from

16  consumers as income upon receipt despite the fact that these fees should have been held in trust.

17  SUF ¶ 28; Teeple Decl. ¶ 9. The Teeple Declaration establishes that collected fees were rarely,

18  if ever, placed in trust until earned. SUF ¶ 27; Teeple Decl. ¶ 9. Furthermore, the Teeple

19  Declaration recites the 14 separate UCC-1 statements were of record securing debts of Debtor as of

20  September 1, 2022 and the amounts allegedly owed to certain holders of those UCC-1 statements

21  according to their filed proofs of claim. SUF ¶ 25; Teeple Decl. ¶ 7.

22       Specifically, the 14 separate UCC-1 statements were of record securing debts of Debtor as

23  of September 1, 2022. SUF ¶ 25; Teeple Decl. ¶ 7. These statements remained unreleased as of the

24  Petition Date. SUF ¶ 25; Teeple Decl. ¶ 7. These statements either reflected secured liens against

25  Debtor's assets then owned or thereafter acquired, or provided evidence of the assignment or sale

26  of substantial portions of Debtor's future income. *See id.* When the transfers were made, these prior

27  UCC-1 statements secured the repayment of the following claimed amounts that are currently known

28  to Plaintiff and are allegedly owed by Debtor: (i) $2,374,004.82 owed to Fundura Capital Group as

evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (ii) approximately $15 million dollars owed to MNS Funding, LLC as evidence by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (iii) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 secured by a UCC statement filed on or about May 28, 2021; and (iv) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021 and December 1, 2021 (collectively, "Secured Creditors"). SUF ¶ 25; Teeple Decl. ¶ 7.

The Teeple Declaration also establishes that LPG was borrowing against its assets and future income, often on unfavorable terms, not only to finance operations at LPG, but also to pay the fees owed to the marketing affiliates, including Defendant, for providing LPG with consumer clients. SUF ¶¶ 26-27; Teeple Decl. ¶ 9.

Finally, on Debtor's Schedule E/F, Debtor scheduled 11 unsecured creditors with priority unsecured claims totaling $374,060.04 ("Priority Unsecured Creditors"). Debtor also scheduled 58 nonpriority unsecured creditors on its Schedule E/F with claims totaling $141,439,158.05 ("Nonpriority Unsecured Creditors", and collectively with Priority Unsecured Creditors and Secured Creditors, "Prepetition Creditors"). However, the claims bar date has now passed. There were over 5000 claims filed in this case, totaling approximately $500,000,000 in secured, priority, administrative, and unsecured claims. SUF ¶ 24; Teeple Decl. ¶ 8. Debtor's balance sheets for the 36 months ending December 31, 2021 show only approximately $17,900,000 in total assets (primarily comprised of accounts receivable and merchant loans receivable) at its highest point in November 2021. SUF ¶ 30; Teeple Decl. ¶ 11. This amount is significantly less than the $500,000,000 of claims filed evidencing Debtor's state of insolvency.

As such, the amounts transferred pursuant to the Affiliate Agreement and the ARPA Agreements, totaling $621,090.91, are avoidable as fraudulent under 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.05 and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate under 11 U.S.C. §§ 550 and 551 and Cal Civ. Code § 3439.07.

### iii.    Preference transfers

A trustee is empowered to challenge every transfer made by a debtor to a creditor during the ninety day period immediately prior to the filing of a bankruptcy petition. 11 U.S.C. § 547(b). "This avoidance power enables the trustee to protect the estate of the debtor and to ensure an equitable distribution among the unsecured creditors." *IRFM, INC. v. EVER-FRESH FOOD Co.*, 52 F.3d 228, 230 (9th Cir. 1995). To establish that a pre-bankruptcy payment was a preference, six elements must be satisfied: "(1) a transfer of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt; (4) made while the debtor was insolvent; (5) made on or within 90 days before the date of the filing of the petition; and (6) one that enables the creditor to receive more than such creditor would receive in a Chapter 7 liquidation of the estate." *Hansen v. MacDonald Meat Co. (In re Kemp Pac. Fisheries)*, 16 F.3d 313, 315 n.1 (9th Cir. 1994).

**1.    The Preference Transfers were a Transfer of Interest of Debtor in Property.**

Of the total Transfers made, $417,329.34 of the Transfers from Debtor to Defendant occurred during the 90-day preference period ("Preference Transfers") from December 27, 2022 through March 17, 2023. SUF ¶ 9; Mattingly Decl. ¶¶ 3-4; Teeple Decl. ¶ 5. These Preference Transfers were made to secure the Debtor's obligations under the Affiliate Agreement, ARPA Agreements, and/or Defendant's interests in the identified files. In either scenario, the Preference Transfers effected a transfer of interest in the Debtor's property as a matter of law.

**2.    The Preference Transfers Were For the Benefit of Defendant Done on Account of an Antecedent Debt Owed to Defendant.**

The Debtor became directly indebted to Defendant pursuant to the Affiliate Agreement and ARPA Agreements executed on November 7, 2022, November 17, 2022, January 23, 2023, January 28, 2023, and March 31, 2023. SUF ¶ 2-8; Mattingly Decl. ¶¶ 3-8, 11, 12. Pursuant to these documents, the Debtor promised to pay Defendant $805,245.12 in exchange for portions of its accounts receivable.  SUF ¶ 7; Mattingly Decl. ¶ 11. The Transfers were made on account of the antecedent debt owed under the Affiliate Agreement and ARPA Agreements pursuant to the language contained in the ARPA Agreements themselves and based on the Monthly Payments made

///

14

pursuant to the Affiliate Agreement. SUF ¶¶ 2-8; Mattingly Decl. ¶¶ 3-8, 11, 12. These undisputed facts satisfy the Trustee's burden under 11 U.S.C. § 547(b)(2).

**3.    The Preference Transfers Occurred While Debtor as Insolvent.**

11 U.S.C. § 547(b)(3) requires that a plaintiff prove the Debtor was insolvent when a transfer occurred in order to avoid it as a preferential transfer. 11 U.S.C. § 547(f) creates a rebuttable presumption that the Debtor was insolvent on and during the 90 day period before the Petition Date. Because the Preference Transfers happened within the 90 day period preceding the Petition Date, the Debtor is presumed to be insolvent when the Preference Transfers happened.

Defendant may attempt to challenge this presumption of insolvency.  Both applicable case law and the record in this bankruptcy case, make it clear that this challenge will fail.  The Ninth Circuit Bankruptcy Appellate Panel has stated that the presumption of insolvency

> does not shift the ultimate burden of proof, rather it merely shifts the initial burden of going forward with the evidence. 4 Collier on Bankruptcy para. 547.06 (15th Ed. 1988). Once the transferee comes forward with substantial evidence of solvency, the presumption vanishes and the plaintiff must come forward with sufficient evidence in order to meet its burden of proving insolvency. *See* Russell, *Bankruptcy Evidence Manuel*, § 301.3 (West 1987); *see also In re Candor Diamond Corp.*, 68 B.R. 588, 590-591 (Bankr. S.D.N.Y. 1986); 4 *Collier on Bankruptcy* para. 547.06.

*In re Sierra Steel, Inc.*, 96 B.R. 275, 277 (B.A.P. 9th Cir. 1989).

"Sufficient evidence" to rebut the presumption of insolvency is "non-speculative evidence  that would support a finding that the 'fair' value of [the debtor's] property exceeded [the debtor's] debts[.]" *Good Gateway, LLC v. NRCT, LLC (In re Bay Circle Props., LLC)*, 646 B.R. 348, 371 (Bankr. N.D. Ga. 2022) (quoting *In re The Heritage Org., LLC*, 413 B.R. 438, 500 (Bankr. N.D. Tex. 2009)). The Code defines "Insolvent" as the "financial condition such that the sum of [an] entity's debts is greater than all of [an] entity's property, at a fair valuation, exclusive of . . ." property that may be  exempted and property that has been fraudulently transferred, concealed, or removed. 11 U.S.C. § 101(32)(A). "Thus, under this 'balance sheet' test, a debtor is insolvent when its liabilities exceed its assets." *In re Sierra Steel, Inc.*, 96 B.R. 275, 277 (9th Cir. BAP 1989).

While the Trustee is entitled to the presumption of insolvency, as established above, the Teeple Declaration establishes the Debtor was  in substantial financial trouble  at all relevant

1    times herein. The Teeple Decl. states that the Debtor treated fees collected from consumers as

2    income upon receipt despite the fact that these fees should have been held in trust. SUF ¶ 28; Teeple

3    Decl. ¶ 9. The Teeple Decl. establishes that collected fees were rarely, if ever, placed in trust until

4    earned. SUF ¶ 28; Teeple Decl. ¶ 9. Furthermore, the Teeple Decl. recites the numerous UCC-1

5    statements that were filed against the Debtor before the Petition Date and the amounts allegedly

6    owed to certain holders of those UCC-1 statements according to their filed proofs of claim. SUF ¶

7    25; Teeple Decl. ¶ 7. Finally, the Teeple Decl. notes that claims seeking more than $500,000,000.00

8    from the Debtor have been filed in this case. SUF ¶ 24; Teeple Decl. ¶ 8. As such, the Trustee is

9    entitled to the presumption of insolvency in the 90 day period preceding the Petition Date pursuant

10   to 11 U.S.C. § 547(f) and has satisfied his burden under 11 U.S.C. § 547(b)(3).

11         **4.        The Preference Transfers Occurred Within 90 Days of the Petition Date.**

12         Section 547(e)(2) of the Bankruptcy Code provides that "a transfer is made . . . at the time

13   such transfer takes effect between the transferor and the transferee[.]" 11 U.S.C. § 547(e)(2). *See*

14   *also In re Gulino*, 779 F.2d 546, 549 (9th Cir. 1985) (citations omitted).  Here, the Preference

15   Transfers occurred within the 90 day period before the Petition Date of March 20, 2023

16   because they were made between December 27, 2022 through March 17, 2023. SUF ¶ 13; Mattingly

17   Decl. ¶ 13; Teeple Decl. ¶ 5. The Trustee has satisfied his burden pursuant to 11 U.S.C. § 547(b)(4).

18         **5.        The Preference Transfers Would Permit Defendant to receive More Than It**

19                **Would in a Hypothetical Chapter 7 Case.**

20         The Trustee has the burden to prove that but for the avoidance of the preferential transfer the

21   creditor would have received more than it would have in a hypothetical bankruptcy case pursuant to

22   11 U.S.C. § 547(b)(5).  "[W]hether a particular transfer is preferential should be determined 'not by

23   what the situation would have been if the debtor's assets had been liquidated and distributed among

24   his creditors at the time the alleged preferential payment was made, but by the actual effect of the

25   payment as determined when bankruptcy results.'" *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416,

26   1421 (9th Cir. 1985) (quoting *Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 229 (1936)).

27   Thus, so long as the distribution in bankruptcy is less than one-hundred percent, any transfer that

28   ///

1  would permit an unsecured creditor to receive more than it would have received in liquidation is a

2  subject to avoidance as a preference.  See *Lewis W. Shurtleff, Inc.*, 778 F.2d at 1421.

3      Unless avoided, the Preference Transfers make Defendant's previously unsecured claim into

4  a nominally secured claim.  As a nominally secured creditor, Defendant can assert a claim to

5  proceeds of sale that is not available to general unsecured creditor.  Thus, the Preference Transfers,

6  if not avoided, has improved the position and increased the potential recovery of Defendant.  The

7  Trustee has satisfied his burden pursuant to 11 U.S.C. § 547(b)(5).

8          **6.      The Preference Transfers Were Preferential Transfers**

9      The Trustee has proven that the Preference Transfers were preferential transfers as defined

10  in 11 U.S.C. § 547(b) since the Preference Transfers were made (1) for the benefit of a

11  creditor, (2) on account of an antecedent debt of the Debtor, (3) while Debtor was insolvent, (4)

12  within 90 days before the Petition Date, and (5) such that it enabled Defendant to receive more than

13  it would under a hypothetical chapter 7 liquidation. As such, the Trustee is entitled to recover and

14  preserve for the benefit of the estate pursuant to 11 U.S.C. §§ 550 and 551 $417,329.34 as avoidable

15  pursuant to 11 U.S.C. § 547(b).

16          **c.      Debtor Entitled to Relief on Fraudulent Conveyance Causes of Action.**

17      Because the underlying contracts (i.e., the Affiliate Agreement and ARPA Agreements)

18  were illegal, any payments made pursuant to these illegal contracts are fraudulent conveyances. In

19  *Wolkowitz v. Soll, Rowe, Price, Raffel & Browne (In re Fink)*, 217 B.R. 614 (Bankr. C.D. Cal. 1997),

20  a bankruptcy trustee sued to a recover a $50,000 payment from a third party because it was either a

21  preferential transfer to an insider or a fraudulent conveyance because the underlying contract was

22  illegal. The Court held that the payment was a fraudulent conveyance because there could be no

23  consideration in exchange for the payment because the contract violated Section 10(b) and Rule

24  10b-5 of the Securities Exchange Act of 1934 Act. *Id.* at 623. Citing *Severance v. Knight-Counihan*

25  *Co.*, 29 Cal. 2d 561, 568, 177 P.2d 4, 8 (1947), for the notion that "[a] contract for an illegal purpose

26  is void," the Court found the "violation of section 10(b) and Rule 10b-5 makes the agreement ... an

27  illegal contract." *Id.* at 622. The Court noted that the payment would also be avoidable and

28  recoverable as a preferential transfer if the contract was enforceable. *Id.* Similarly, in *Armstrong v.*

*Collins*, 2010 U.S. Dist. LEXIS 28075, at *89 (S.D.N.Y. Mar. 24, 2010) (the Court found that the debtor's payments to defendant for escorts were illegal payments for prostitutes, and as such, defendant did not provide reasonably equivalent value).

During the applicable reach-back period, Debtor paid Defendant the sum of at least $621,090.91 between March 2022 and March 2023 ("Transfers"). SUF ¶ 12; Mattingly Decl. ¶¶ 13-14; Teeple Decl. ¶ 5. As stated above, Debtor was insolvent or rendered insolvent at the time of these Transfers. SUF ¶ 23; Teeple Decl. ¶¶ 6-11. Further, the underlying obligation of the Affiliate Agreement pursuant to which the Transfers were made was illegal and void because, as Nancy Rapaport makes clear in her Declaration, the Affiliate Agreement constitutes an illegal capping agreement. SUF ¶ 16; Rapaport Decl. ¶¶ 11-12. Thus, Debtor had no obligation to pay the funds to Defendant and the transfers are avoidable as fraudulent transfers. *See* generally *Wolkowitz*, 217 B.R. 614.

### i.      Plaintiff's First Claim for Relief for Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers

As to Plaintiff's First Claim for Relief, the Affiliate Agreement, ARPA Agreements, and all or a portion of the Transfers occurred within two years prior to the Petition Date. SUF ¶ 22; Mattingly Decl. ¶ 13; Teeple Decl. ¶ 5. On or after the date that such agreements were executed and the Transfers were made, Debtor was or became indebted to the Prepetition Creditors (UCC-1 statements filed and thousands of proofs of claims with debts dated prior to September 1, 2022). SUF ¶ 25; Teeple Decl. ¶ 7.  However, despite Debtor's obligations to the Prepetition Creditors, Debtor continued to sell or transfer portions of its accounts receivable to Defendant, which as discussed above, is illegal under federal and state laws. SUF ¶¶ 2-7, 12, 16-19, 25; Mattingly Decl. ¶¶ 3-8, 11, 13-14; Teeple Decl. ¶ 5, 7; Rapaport Decl. ¶¶ 11-13; COL ¶ 8. Because the referrals from Defendant to Debtor are illegal and void, and any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. *See* Cal. Civ. Code § 1608 and 1667 discussed *supra*; *see also Wolkowitz v. Soll, Rowe, Price, Raffel & Browne (In Fink),* 217 B.R. 614, 622 n.7 (Bankr. C.D. Cal. 1997). From August 19, 2022 through March 17, 2023, Debtor transferred $621,090.91 to Defendant pursuant to the ARPA Agreements. SUF ¶ 12; Mattingly Decl.

¶¶ 4, 13-14; Teeple Decl. ¶ 5. The Affiliate Agreement, ARPA Agreements, and Transfers are avoidable as fraudulent under 11 U.S.C. § 548(a)(1)(A), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

ii.     **Plaintiff's Second Claim for Relief for Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers**

As to Plaintiff's Second Claim for Relief, the Affiliate Agreement, ARPA Agreements, and all or a portion of the Transfers occurred within two years prior to the Petition Date (March 20, 2023). SUF ¶ 22; Mattingly Decl. ¶ 13; Teeple Decl. ¶ 5. On or after the date that such agreements were executed and the Transfers were made, Debtor was or became indebted to the Prepetition Creditors. SUF ¶ 25; Teeple Decl. ¶ 7. The Transfers happened while Debtor was insolvent or became insolvent as a result, while Debtor was engaged or was about the engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or while Debtor intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured. SUF ¶¶ 23-27; Teeple Decl. ¶¶ 6-11. Because the referrals from Defendant to Debtor are illegal and void as discussed above, because any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value as discussed above, and because the sale of the accounts receivable from Debtor to Defendant are illegal and void, at the time the agreements were executed and Transfers were made, Debtor received less than reasonably equivalent value. *See* Cal. Civ. Code § 1608 and 1667 discussed *supra*; *see also Wolkowitz v. Soll, Rowe, Price, Raffel & Browne (In Fink),* 217 B.R. 614, 622 n.7 (Bankr. C.D. Cal. 1997). From August 19, 2022 through March 17, 2023, Debtor transferred $621,090.91 to Defendant pursuant to the ARPA Agreements. SUF ¶ 10; Mattingly Decl. ¶ 3-4; Teeple Decl. ¶ 5. The Affiliate Agreement, ARPA Agreements, and Transfers are avoidable as fraudulent under 11 U.S.C. § 548(a)(1)(B), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

///

///

### iii.   Plaintiff's Third Claim for Relief for Avoidance, Recovery, and Actual Fraudulent Transfers

As to Plaintiff's Third Claim for Relief, the Affiliate Agreement, ARPA Agreements, and all or a portion of the Transfers occurred within four years prior to the Petition Date. SUF ¶ 22; Mattingly Decl. ¶ 13; Teeple Decl. ¶ 5. On or after the date that such agreements were executed and the Transfers were made, Debtor was or became indebted to the Prepetition Creditors. SUF ¶ 25; Teeple Decl. ¶ 7. However, despite Debtor's obligations to the Prepetition Creditors, Debtor continued to pay Defendant sums received from consumers under the Affiliate Agreement, which constitutes an illegal capping agreement. SUF ¶¶ 7-13, 15-16, 25; Mattingly Decl. ¶¶ 3-4, 11-14; Teeple Decl. ¶ 5, 7; Rapaport Decl. ¶ 3, 11-12.  Because the referrals from Defendant to Debtor are illegal and void, because any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value, at the time the agreements were executed and Transfers were made, Debtor received less than reasonably equivalent value. SUF ¶¶ 12, 14-19; Mattingly Decl. ¶¶ 4, 13-14; Teeple Decl. ¶ 5; Rapaport Decl. ¶¶ 3-4, 11-13. Further, despite Debtor's obligations to the Prepetition Creditors, Debtor continued to sell its accounts receivable to Defendant, which is illegal under federal and state law as discussed above, and are therefore void and subject to avoidance as fraudulent. SUF ¶¶ 2-7, 12, 16-19, 25; Mattingly Decl. ¶¶ 4-8, 11, 13-14; Teeple Decl. ¶ 5; Rapaport Decl. ¶¶ 11-13; Teeple Decl. ¶ 7; COL ¶ 8. From August 19, 2022 through March 17, 2023, Debtor transferred $621,090.91 to Defendant pursuant to the ARPA Agreements. SUF ¶ 12; Mattingly Decl. ¶¶ 4, 13-14; Teeple Decl. ¶ 5. The Affiliate Agreement, ARPA Agreements, and Transfers are avoidable as fraudulent under 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.04(a) and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate under 11 U.S.C. §§ 550 and 551 and Cal Civ. Code § 3439.07.

### iv.   Plaintiff's Fourth Claim for Relief for Avoidance, Recovery, and Constructive Fraudulent Transfers

As to Plaintiff's Fourth Claim for Relief, the Affiliate Agreement, ARPA Agreements, and all or a portion of the Transfers occurred within four years prior to the Petition Date. SUF ¶ 22;

Mattingly Decl. ¶ 13; Teeple Decl. ¶ 5. The Transfers happened while Debtor was insolvent or became insolvent as a result, while Debtor was engaged or was about the engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or while Debtor intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured. SUF ¶¶ 23-27; Teeple Decl. ¶ 6-11.  Because the referrals from Defendant to Debtor are illegal and void, because any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value, and because the sale of the accounts receivable from Debtor to Defendant are illegal and void, at the time the agreements were executed and Transfers were made, Debtor received less than reasonably equivalent value. SUF ¶¶ 12, 14-19; Mattingly Decl. ¶¶ 4, 13-14; Teeple Decl. ¶ 5; Rapaport Decl. ¶ 3-4, 11-13. From August 19, 2022 through March 17, 2023, Debtor transferred $621,090.91 to Defendant pursuant to the ARPA Agreements. SUF ¶ 12; Mattingly Decl. ¶¶ 4, 13-14; Teeple Decl. ¶ 5. The Affiliate Agreement, ARPA Agreements, and Transfers of Debtor's funds are avoidable as fraudulent under 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.05 and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate under 11 U.S.C. §§ 550 and 551 and Cal Civ. Code § 3439.07.

> **v.      Plaintiff's Fifth Claim for Relief for Avoidance, Recovery, and Preservation of Preferential Transfer**

As to Plaintiff's Fifth Claim for Relief, $417,329.34 of the Transfers from Debtor to Defendant occurred during the 90-day preference period ("Preference Transfers") from December 27, 2022 through March 17, 2023. SUF ¶ 13; Mattingly Decl. ¶ 13; Teeple Decl. ¶ 5. The Preference Transfers were made for, or on account of, an antecedent debt or debts owed by Debtor to Defendant. The Preference Transfers were made while Debtor was insolvent as discussed above. SUF ¶ 23; Teeple Decl. ¶¶ 6-11. Pursuant to 11 U.S.C. § 547(f), Debtor was presumed to have been insolvent on and during the 90 days immediately preceding the filing of the petition (i.e., March 20, 2023). In addition to the Trustee's presumption of insolvency, the undisputed facts satisfy the Trustee's burden under 11 U.S.C. § 547(b).

///

The Preference Transfers were made to secure the Debtor's obligations under the Affiliate Agreement, ARPA Agreements, and/or Defendant's interests in the identified files. SUF ¶¶ 2-6, 7-9; Mattingly Decl. ¶¶ 3-8, 11-12; Teeple Decl. ¶ 5. In either scenario, the Preference Transfers effected a transfer of interest in the Debtor's property as a matter of law. SUF ¶¶ 2-6; Mattingly Decl. ¶¶ 3-8. The Transfers were made on account of the antecedent debt owed under the Affiliate Agreement and ARPA Agreements. SUF ¶¶ 2-6; Mattingly Decl. ¶¶ 3-8. The Teeple Declaration establishes that the Debtor was insolvent at the time of the Preference Transfers and each of the Preference Transfers occurred within the 90 day period before the Petition Date of March 20, 2023. SUF ¶¶ 13, 23; Mattingly Decl. ¶ 13; Teeple Decl. ¶¶ 5-11. Finally, the Preference Transfers, if not avoided, has improved the position and increased the potential recovery of Defendant.

As a result, the Preference Transfers amounting to $417,329.34 are avoidable pursuant to 11 U.S.C. § 547(b), and may be recovered and preserved for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

**vi.    Plaintiff's Sixth Claim for Relief Turnover of Estate Property**

Plaintiff is also entitled to relief under its Sixth Claim for Relief because Defendant has possession or control over property of the Estate in the form of the Transfers made pursuant to illegal and unenforceable agreements, and that the funds that are the subject of the Transfers are paramount to the Debtor's ability to pay creditors. Thus, pursuant to 11 U.S.C. § 542(a), Plaintiff is entitled to recover those funds.

///
///
///
///
///
///
///
///
///

22

## **CONCLUSION**

Wherefore, Plaintiff respectfully moves this Court to enter summary judgment against the Defendant for all claims asserted against it.


Dated: November 20, 2024                    DINSMORE & SHOHL LLP


                                            By: /s/ Sarah S. Mattingly
                                                    Yosina M. Lissebeck
                                                    Sarah S. Mattingly (pro hac vice)
                                                    *Special Counsel to Plaintiff Richard A.
                                                    Marshack, the Chapter 11 Trustee for
                                                    the bankruptcy estate of debtor The
                                                    Litigation Practice Group PC and
                                                    liquidating trustee of the LPG
                                                    Liquidation Trust*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
101 S. Fifth Street, Suite 2500, Louisville, Kentucky 40202

A true and correct copy of the foregoing document entitled (*specify*): **PLAINTIFF RICHARD A. MARSHACK, CHAPTER 11 TRUSTEE FOR THE BANKRUPTCY ESTATE OF THE LITIGATION PRACTICE GROUP P.C. AND LIQUIDATING TRUSTEE OF THE LPG LIQUIDATION TRUST'S NOTICE AND MOTION OF SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT, & STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT FOR SUMMARY JUDGMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>11/20/2024</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Alan W Forsley on behalf of Defendant JGW Solutions, LLC
alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com,andrea@flpllp.com

Marc A Lieberman on behalf of Defendant JGW Solutions, LLC
marc.lieberman@flpllp.com, addy@flpllp.com,andrea@flpllp.com

Marc A Lieberman on behalf of Interested Party Courtesy NEF
marc.lieberman@flpllp.com, addy@flpllp.com,andrea@flpllp.com

Richard A Marshack (TR)
pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com

Sarah S. Mattingly on behalf of Plaintiff Richard A. Marshack
sarah.mattingly@dinsmore.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) <u>11/20/2024</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>11/20/2024</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                  **F 9013-3.1.PROOF.SERVICE**

**JUDGE'S COPY – VIA FEDEX**
The Honorable Scott C. Clarkson
U.S. Bankruptcy Court – Central District of California
Ronald Regan Federal Building and Courthouse
411 West Fourth Street, Suite 5130, Courtroom 5C
Santa Ana, California 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11.20.24 | Jamie Herald | /s/ Jamie Herald |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**