Yosina M. Lissebeck (State Bar No. 201654)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone: 619.400.0500
Facsimile:  619.400.0501
yosina.lissebeck@dinsmore.com

Sarah S. Mattingly (Ky. Bar 94257 – Admitted pro hac vice)
**DINSMORE & SHOHL LLP**
101 S. Fifth Street, Suite 2500
Louisville, KY 40202
Telephone: 859-425-1096
Facsimile: 502-585-2207
Sarah.mattingly@dinsmore.com
*Special Counsel to Richard A. Marshack,*
*former Chapter 11 Trustee for the Bankruptcy Estate*
*of The Litigation Practice Group PC and*
*current liquidating trustee of the LPG Liquidation Trust*

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>    Debtor. | Case No. 8:23-bk-10571-SC<br><br>Chapter 11<br><br>Adv. Proc. No. 8:24-ap-01004-SC |
| RICHARD A. MARSHACK,<br>Chapter 11 Trustee,<br>      Plaintiff,<br><br>v.<br><br>POINT BREAK HOLDINGS LLC,<br>      Defendant. | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently With Statement of Uncontroverted Facts and Conclusion of Law, and Declarations of Joshua R. Teeple, Nancy Rapoport, and Sarah Mattingly]<br><br>Date: March 6, 2025<br>Time: 11:00 a.m.<br>Judge: Hon. Scott C. Clarkson<br>Place: Courtroom 5C<br>   411 West Fourth Street<br>    Santa Ana, California 92701 |

1

1  **TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES**

2  **BANKRUPTCY JUDGE, AND DEFENDANT POINT BREAK HOLDINGS**

3  **LLC, AND ITS COUNSEL OF RECORD:**

4       **NOTICE IS HEREBY GIVEN** that, on March 6, 2025,  in the Courtroom 5C

5  of the above-entitled court, Plaintiff Richard A. Marshack, former Chapter 11 Trustee

6  for the Bankruptcy Estate of The Litigation Practice Group PC and current liquidating

7  trustee of the LPG Liquidation Trust the Chapter 11 Trustee ("Trustee" and/or

8  "Plaintiff") for the bankruptcy estate ("Estate") of debtor The Litigation Practice

9  Group PC ("Debtor" or "LPG") and liquidating trustee of the LPG Liquidation Trust,

10  will and hereby does move ("Motion"), pursuant to Rule 56 of the Federal Rules of

11  Civil Procedure ("Rules"), applicable to this adversary proceeding under Rule 7056

12  of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and Rule 7056-

13  1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central

14  District of California ("Local Rules"), for summary adjudication against Defendant

15  Point Break Holdings LLC ("Defendant") on  All Counts of the Complaint.

16       Specifically, Plaintiff seeks an order that finds and directs as follows:

17       1.    The Motion is granted;

18       2.    Adequate notice of the Motion was given;

19       3.    Judgment is entered in favor of Plaintiff and against Defendant on all

20  Counts of the Complaint;

21       4.    The Affiliate Agreement and Transfers are avoided as fraudulent under

22  11 U.S.C. § 548(a)(1)(A), and such transferred property, or the value thereof, should

23  be recovered and preserved for the benefit of the Estate  pursuant to 11 U.S.C. §§ 550

24  and 551;

25       5.    The Affiliate Agreement and the Transfers are avoided as fraudulent

26  under 11 U.S.C. § 548(a)(1)(B), and such transferred property, or the value thereof,

27  should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C.

28  §§ 550 and 551;

6.    The Affiliate Agreement and the Transfers are avoided as fraudulent under 11 U.S.C. §§ 544(b) and Cal. Civ. Code §§ 3439.04(a) and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and Cal. Civ. Code § 3439.07;

7.    The Affiliate Agreement and the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and Cal. Civ. Code §§ 3439.05 and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and Cal. Civ. Code § 3439.07;

8.    The Preference Transfers are avoidable pursuant to 11 U.S.C. § 547(b), and may be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551;

9.    Trustee is entitled to a judgment for turnover of the Transfers   pursuant to 11 U.S.C. § 542;

10.    Defendant has no defense to the Trustee's claims under applicable law; and

11.    For such other and further relief as the Court deems just and proper.

**NOTICE IS FURTHER GIVEN** that the Motion is made pursuant to Rule 56, applicable to this adversary proceeding under Bankruptcy Rule, and Local Rule 7056-1 on the grounds that the Transfers  should  be  avoided  under 11 U.S.C. § 548(a)(1)(A),  548(a)(1)(B), 544(b), 547(b), and Cal. Civ. Code §§ 3439.04(a), and 3439.07, recovered  and preserved for the benefit of the Estate under  11  U.S.C.  §§ 550, 551 and Cal. Civ. Code § 3439.07.

**NOTICE IS FURTHER GIVEN** that the Motion is supported by (a) this Notice of Motion and Motion, (b) the attached Memorandum of Points and Authorities, (c) the concurrently filed and lodged Statement of Uncontroverted Facts and Conclusions of Law in Support of Plaintiff's Motion for Summary Judgment, (d)

1  the arguments of counsel, if any, in support of the Motion at the hearing thereon, (e)

2  the entire record in Debtor's bankruptcy case and this adversary proceeding, (f) any

3  other matters of which the Court may take judicial notice, and (g) any other evidence

4  properly presented to the Court in support of the Motion.

5      **NOTICE IS FURTHER GIVEN** that, pursuant to Local Rule 7056-1(c)(1)

6  and (2), any party who opposes the Motion must, no later than 21 days before the date

7  of the hearing on the Motion, file and serve a response and a separate "concise

8  statement of genuine issues" identifying each material fact that is disputed and

9  citing the particular portions of any pleading, affidavit, deposition, interrogatory,

10  answer, admission, or other document relied on to establish the dispute and the

11  existence of a genuine issue precluding summary judgment.

12      **NOTICE IS FURTHER GIVEN** that, pursuant to Local Rule 7056-1(c)(3),

13  the opposing party is responsible for filing with the Court all necessary

14  evidentiary documents cited in the responding papers according to Local Rule

15  9013-1(i).

16      **NOTICE IS FURTHER GIVEN** that, pursuant to Local Rule 7056-1(c)(1)

17  and (2), any party who opposes the Motion must, no later than 21 days before the date

18  of the hearing on the Motion, file and serve a response and a separate "concise

19  statement of genuine issues" identifying each material fact that is disputed and

20  citing the particular portions of any pleading, affidavit, deposition, interrogatory,

21  answer, admission, or other document relied on to establish the dispute and the

22  existence of a genuine issue precluding summary judgment.

23      **NOTICE IS FURTHER GIVEN** that, pursuant to Local Rule 7056-1(c)(3),

24  the opposing party is responsible for filing with the Court all necessary

25  evidentiary documents cited in the responding papers according to Local Rule

26  9013-1(i).

27

28

Dated: January 23, 2025

DINSMORE & SHOHL LLP

By: /s/ Sarah S. Mattingly
            Yosina M. Lissebeck
            Sarah S. Mattingly (pro hac vice)
            *Special Counsel to Richard A. Marshack, former Chapter 11 Trustee for the Bankruptcy Estate of The Litigation Practice Group PC and current liquidating trustee of the LPG Liquidation Trust*

1
2

# **<u>TABLE OF CONTENTS</u>**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BACKGROUND ON DEBTOR AND CONTRACTS ............................................. 11

LEGAL STANDARD ...................................................................... 12

ARGUMENT .......................................................................... 13

   a.  Affiliate Agreement and ARPA Agreements are Illegal Under California Law 13

     i.  California Law on Recruitment of Clients and Handling of Fees ............... 13

     ii.  Affiliate Agreement and ARPA Agreements are Illegal and Void ............. 16

   b.  Claims ........................................................................ 20

     i.  Fraudulent Transfers ....................................................... 20

     ii.  Constructive Fraudulent Transfer ......................................... 22

     iii.  Preference Transfers ....................................................... 25

       1. The Preference Transfers were a Transfer of Interest of Debtor in Property 26

       2. The Preference Transfers Were for the Benefit of Defendant Done on Account of an Antecedent Debt Owed to Defendant ................................. 26

       3. The Preference Transfers Occurred While Debtor was Insolvent ........... 27

       4. The Preference Transfers Occurred Within 90 Days of the Petition Date ... 28

       5. The Preference Transfers Would Permit Defendant to Receive More than it Would in a Hypothetical Chapter 7 Case ......................................... 29

       6. The Preference Transfers Were Preferential Transfers ......................... 30

   c.  Debtor Entitled to Relief on Fraudulent Conveyance Causes of Action ......... 30

     i.  Plaintiff's First Claim for Relief for Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers ................................................... 31

     ii.  Plaintiff's Second Claim for Relief for Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers ................................. 32

     iii.  Plaintiff's Third Claim for Relief for Avoidance, Recovery, and Actual Fraudulent Transfers ............................................................ 33

     iv.  Plaintiff's Fourth Claim for Relief for Avoidance, Recovery, and Constructive Fraudulent Transfers ................................................ 34

1

    v.  Plaintiff's Fifth Claim for Relief for Avoidance, Recovery, and Preservation of Preferential Transfer ........................................................................................34

    vi.  Plaintiff's Sixth Claim for Relief Turnover of Estate Property ...................35

CONCLUSION...........................................................................................................36

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## Cases

*Alpers v. Hunt*, 86 Cal. 78, 24 P. 846 (1890) ...............................................................15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .............................................12

*Armstrong v. Collins*, 2010 U.S. Dist. LEXIS 28075 (S.D.N.Y. Mar. 24, 2010).....29

*Bay Plastics, Inc. v. BT Commercial Corp. (In re Bay Plastics, Inc.)*, 187 B.R. 315 (Bankr. C.D. Cal. 1995)...........................................................................................19, 22

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..........................................................12

*Fewel & Dawes, Inc. v. Pratt*, 17 Cal.2d 85 [109 P.2d 650].......................................22

*Firpo v. Murphy*, 72 Cal. App. 249 (1925) ...............................................................16

*Good Gateway, LLC v. NRCT, LLC (In re Bay Circle Props., LLC)*, 646 B.R. 348 (Bankr. N.D. Ga. 2022) ..........................................................................................27

*Hansen v. MacDonald Meat Co. (In re Kemp Pac. Fisheries)*, 16 F.3d 313 (9th Cir. 1994)...................................................................................................................25

*HBE Leasing Corp. v. Frank*, 48 F.3d 623 (2d Cir. 1995)........................................20

*In re Bernard L. Madoff Inv. Sec. LLC*, 557 B.R. 89 (Bankr. S.D.N.Y. 2016) ........18

*In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416 (9th Cir. 1985)....................................28

*In re Montgomery Drilling Co.*, 121 Bankr. 32 (Bankr. E.D.Cal. 1990) ..................13

*In re Sierra Steel, Inc.*, 96 B.R. 275 (9th Cir. BAP 1989) ........................................27

*In re The Heritage Org., LLC*, 413 B.R. 438 (Bankr. N.D. Tex. 2009)....................27

*IRFM, INC. v. EVER-FRESH FOOD Co.*, 52 F.3d 228 (9th Cir. 1995)...................25

*Jackson v. LegalMatch.com*, 42 Cal. App. 5th 760, 255 Cal. Rptr. 3d 741 (2019) ..15

*Kasolas v. Nicholson (In re Fox Ortega Enters.)*, 631 B.R. 425 (Bankr. N.D. Cal. 2021) .........................................................................................................20, 21, 22

*Lovering Tubbs Tr. v. Hoffman (In re O'Gorman)*, No. NC-22-1062-BFT, 2022 Bankr. LEXIS 3627 (B.A.P. 9th Cir. Dec. 21, 2022)...........................................19

*Moody v. Security Pacific Business Credit, Inc.*, 971 F.2d 1056 (3rd Cir. 1992).....23

*Ng v. US Bank, NA*, 2016 U.S. Dist. LEXIS 166054 (N.D. Cal. Nov. 30, 2016) .....12

*Origen Capital Invs. II, LLC v. DeMattos*, No. CV 20-2384-MWF (SK), 2020 U.S. Dist. LEXIS 196364 (C.D. Cal. July 29, 2020) ...................................................20

*Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 229 (1936) ...............................28

*Severance v. Knight-Counihan Co.*, 29 Cal. 2d 561, 177 P.2d 4 (1947)...................29

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43
    (2nd Cir. 2005) ...................................................................................................19

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791
    (Bankr. S.D.N.Y. 2005) ......................................................................................19

*Sol. Tr. v. 2100 Grand LLC (In re AWTR Liquidation Inc.)*, 548 B.R. 300 (Bankr.
    C.D. Cal. 2016) ...................................................................................................23

*Speier v. Argent Mgmt., LLC (In re Palmdale Hills Prop.)*, 2017 Bankr. LEXIS
    2163 (Cal. C.D. Bankr. Aug. 2, 2017) ................................................................12

*Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479 (1931)...................................16

*Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684
    (1952)............................................................................................................16, 22

*T & R Foods, Inc. v. Rose*, 47 Cal. App. 4th Supp. 1, 56 Cal. Rptr. 2d 41 (1996) ...13

*Tufeld Corp. v. Beverly Hills Gateway, L.P.*, 86 Cal. App. 5th 12, 302 Cal. Rptr. 3d
    203 (2022)............................................................................................................17

*Valente v. Nowland (In re Valente)*, No. SC-22-1182-SGB, 2023 Bankr. LEXIS
    1206 (B.A.P. 9th Cir. May 5, 2023) ....................................................................20

*Wolkowitz v. Soll, Rowe, Price, Raffel & Browne (In Fink),* 217 B.R. 614 (Bankr.
    C.D. Cal. 1997) ..............................................................................22, 29, 30, 31

*Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 199 Cal. Rptr. 3d 66,  365
    P.3d 845 (2016) ...........................................................................................16, 17

**<u>Statutes</u>**

11 U.S.C. § 101.............................................................................................................27
11 U.S.C. § 542.............................................................................................................34
11 U.S.C. § 544.......................................................................................18, 24, 32, 33
11 U.S.C. § 547.......................................................................25, 26, 27, 28, 29, 34
11 U.S.C. § 548.......................................................................................19, 22, 31, 32
11 U.S.C. § 558.............................................................................................................22
11 U.S.C. §§ 550 and 551.....................................................25, 29, 31, 32, 33, 34

Cal. Civ. Code § 3439.04 ................................................................. 19, 32

Cal Civ. Code § 3439.07 ........................................................ 19, 25, 32, 33

Cal. Civ. Code § 1608 and 1667 .......................................... 16, 21, 30, 31

Cal. Civ. Code § 3439.03 ............................................................................. 21

California Civil Code § 3439.02 .................................................................. 22

Civ. Code § 3439.05 ...................................................................... 25, 33

UFCA § 4 .......................................................................................... 22

UFTA § 2 .......................................................................................... 22

UFTA § 4 .......................................................................................... 22

UFTA § 5 .......................................................................................... 22

**Miscellaneous**

Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 Act ............. 29

**Rules**

Rule 1.15 ............................................................................... 13, 14

Rule 1.15(a) of the California Rules of Professional Conduct .................................. 12

Rule 1.15(c) ............................................................................................. 13

Rule 1.15(c)(2) ......................................................................................... 13

Rule 1.15(d)(7) ......................................................................................... 14

Section 6151 of the California Business and Professional Code ..................... 11, 15

Section 6155 of the California Business and Professional Code ..................... 11, 15

Section 6154(a) of the California Business and Professional Code ...................... 15

## BACKGROUND ON DEBTOR AND CONTRACTS[1]

LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify. [Bankr. Dk. 1545, ¶ 4; 3-5]. Consumers would pay LPG via monthly debits from their bank accounts to cover all legal services LPG provided to the consumers. [Bankr. Dk. 1545, ¶ 5; 6-10]. To obtain consumer clients, LPG contracted with marketing companies, including Defendant, who would obtain clients for LPG via telemarketing services, and in exchange, LPG agreed to pay the marketing affiliates a percentage of the monthly payments collected by LPG from the consumers. [Adv. 24-01011, Dk. 104-1, Declaration of Nancy Rapoport ("Rapoport Decl."), ¶ 4].

Prime Logix, LLC entered into an "Affiliate Agreement" with Defendant, which provides Defendant owns and operates a system of generating leads consisting of consumers interested in the legal services offered by LPG. Trustee's Statement of Uncontroverted Facts in Support of Motion for Summary Judgment ("SUF") ¶¶ 5, 9; Declaration of Joshua Teeple ("Teeple Decl.") ¶ 6; Rapoport Decl. ¶ 3. Prime Logix LLC is an entity that LPG established solely to hold its money and maintained no other money of its own. Teeple Decl. ¶ 6. Pursuant to the Affiliate Agreement, LPG agreed to pay, and in fact paid, Defendant a portion of the monthly payments received from consumers referred by Defendant. [Dk. 1, Exhibit 1.] SUF ¶¶ 1-7. As discussed below, the Affiliate Agreement violates Sections 6151 and 6155 of the California Business Professional Code, which prohibit referrals of potential clients to attorneys unless registered with the State Bar of California. The effect is that the Affiliate Agreement lacks consideration and is void as a matter of law. Because the Affiliate Agreement violates federal and state laws, it is void, unenforceable, and subject to avoidance as fraudulent. Plaintiff therefore filed suit against Defendant to recover the

---

[1] Courts make take judicial notice of the dockets for bankruptcy proceedings and filings made in the bankruptcy proceedings, as judicial notice may be taken of court records. *Ng v. US Bank, NA*, 2016 U.S. Dist. LEXIS 166054 at *3 (N.D. Cal. Nov. 30, 2016) (citations omitted), *aff'd*, 712 F. App'x 665 (9th Cir. 2018).

1  payments made pursuant to the Affiliate Agreement as fraudulent conveyances

2  pursuant to the Bankruptcy Code and applicable state law. [Dk. 1]. Plaintiff included

3  preference claims as an additional form of relief to the fraudulent conveyance counts,

4  as well a turnover. [*Id.*]

5  **LEGAL STANDARD**

6      Bankruptcy Rule 7056 provides that Federal Rule of Civil Procedure 56 applies

7  in adversary proceedings. Summary judgment is appropriate if the party moving for

8  summary judgment shows that there is no dispute as to any material fact and that it is

9  entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.

10  The moving party has the burden of establishing the absence of a genuine issue of

11  material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are

12  those that affect the outcome of the proceedings. *Speier v. Argent Mgmt., LLC (In re*

13  *Palmdale Hills Prop.)*, 2017 Bankr. LEXIS 2163, at * 30 (Cal. C.D. Bankr. Aug. 2,

14  2017) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual

15  dispute is genuine where the evidence is such that a reasonable jury could return a

16  verdict for the non-moving party. *Anderson*, 477 U.S. at 248.

17  **ARGUMENT**

18      Summary judgment is proper because: (1) the Affiliate Agreement is illegal

19  under California law; (2) Debtor did not receive reasonably equivalent value; and (3)

20  because Debtor was insolvent at the time of the Transfers.

21      **a.**    **Affiliate Agreement and Transfers Made Pursuant to the Affiliate**

22          **Agreement are Illegal Under California Law**

23          **i.**    **California Law on Recruitment of Clients and Handling of**

24              **Fees**

25      Debtor entered into a legal services agreement with its consumers whereby

26  consumers would make monthly payments to Debtor for all legal services to be

27  provided to the consumers via monthly debits from their bank accounts. *See* SUF ¶ 9;

28  Mattingly Decl. ¶ 4; Rapaport Decl. ¶¶ 4-5. Rule 1.15(a) of the California Rules of

1    Professional Conduct, formerly Rule 8-101 and 4-100, requires the deposit of funds

2    received "for the benefit of a client or other person to whom the lawyer owes a

3    contractual, statutory, or other legal duty, including advances for fees, costs, and

4    expenses" into a trust account. *See* Conclusion of Law ("COL") ¶ 4.

5         In addition, Rule 1.15 governs when trust funds are earned. In California,

6

7    > Essentially, three types of retainers exist, being (1) Classic
     > or True Retainers, (2) Security Retainers, and (3) Advance

8    > Payment Retainers. [Citation.] Classic Retainers refer to the
     > payment of a sum of money to secure availability over a

9    > period of time. Entitlement to the fee exists whether or not

10   > services are ever rendered. . . . [P] . . . The Security Retainer
     > is typified by the fact that the retainer will be held by the

11   > attorneys to secure payment of fees for future services that

12   > the attorneys are expected to render. In such an agreement,
     > the money given as a retainer is not present payment for

13   > future services. Rather, it remains property of the [client]

14   > until the attorney applies it to charges for services actually
     > rendered, and any unearned funds are returned to the

15   > [client]. [P] The third type of retainer, the Advance Payment

16   > Retainer, is an agreement whereby the [client] pays, in
     > advance, for some or all of the services that the attorney is

17   > expected to perform on the [client]'s behalf. … In reviewing

18   > former California Rules of Professional Conduct 8-101, this
     > Court views the language contained therein as indicating an

19   > intent by the State Bar that funds retain an ownership

20   > identity with the client until earned.

21

22   *T & R Foods, Inc. v. Rose*, 47 Cal. App. 4th Supp. 1, 7, 56 Cal. Rptr. 2d 41, 44 (1996)

23   (quoting *In re Montgomery Drilling Co.*, 121 Bankr. 32 (Bankr. E.D.Cal. 1990)).

24         Further, Rule 1.15(c) provides that a lawyer is obligated to exercise control

25   over client trust accounts. COL ¶ 6. In particular, if there are funds belonging to the

26   lawyer in the client trust account, that portion belonging to the lawyer or law firm

27   must be withdrawn at the earliest reasonable time after the lawyer or law firm's

28   interest in that portion becomes fixed. Rule 1.15(c)(2); COL ¶ 6. A lawyer must also

13

1   promptly distribute, as requested by the client or other person, any undisputed funds

2   or property in the possession of the lawyer or law firm that the client or other person

3   is entitled to receive. Rule 1.15(d)(7); *see also* COL ¶ 6.

4       Here, the payments made by the consumers were either Security Retainers or

5   Advance Payment Retainers (collectively "Retainers") until earned. Teeple Decl. ¶ 5.

6   Once earned, they should have been withdrawn and placed in Debtor's operating

7   accounts. SUF ¶¶ 14, 21, 26; Rapaport Decl. ¶ 9; Teeple Decl. ¶ 10. But, instead, prior

8   to being "earned", payments were paid to Defendant, an illegal marketer, totaling

9   $3,557,704.32 ("Monthly Payments"). SUF ¶¶ 14, 21, 26; Rapaport Decl. ¶ 9; Teeple

10  Decl. ¶ 10.

11      The Transaction History Report, attached as Exhibit 1 to the Complaint and

12  highlighted in Joshua Teeple's Declaration, and Defendant's own admissions

13  establishes that each of the payments were, in fact, made. SUF ¶¶ 1-7; Mattingly Decl.

14  ¶ 3; Teeple Decl. ¶ 5. Defendant has admitted in their Responses to Trustee's Requests

15  for Admissions that it received payments totaling $3,220,486.80 from LPG between

16  October 7, 2021 and March 17, 2023. *Id.* The Transaction History Detail reflects an

17  additional payment that Defendant received from LPG of $36,168.72 on March 24,

18  2022.[2] SUF ¶ 2; Teeple Decl. ¶ 5. Defendant further admitted that it received payment

19  totaling $100,000.00 from Prime Logix LLC on March 1, 2023 and $182,072.09 from

20  Maverick Management Group LLC on March 17, 2023.[3] SUF ¶¶ 3-4; Mattingly Decl.

21  ¶ 3.

22      Based on the provisions of Rule 1.15, the Affiliate Agreement, and the

23  Transfers made pursuant to same, violate the Rules of Professional Responsibility and

24  applicable California statutes. SUF ¶ 10; Rapaport Decl. ¶¶ 10-11; COL ¶¶ 8-9.

---

25  [2] Defendant denies receiving this Transfer. Defendant admits to receiving all other payments.

26  [3] Maverick Management Group, LLC is an affiliate of LPG. Teeple Decl ¶ 7. Prime Logix LLC was
    an alter ego entity established by the Debtor to holds its funds. *Id.* ¶ 6. The transfers made on March

27  1, 2023 and March 17, 2023 of $100,000.00 and $182,072.09, respectively, were made using LPG's
    funds going through Prime Logix LLC and Maverick Management Group, LLC. SUF ¶¶ 3-6; Teeple

28  Decl. ¶¶ 6-7.

### ii.    Affiliate Agreement is Illegal and Void

In addition to violating the Rules of Professional Responsibility and related statutes, the Affiliate Agreement that channeled clients to Debtor in exchange for a percentage of the fees paid also violate other provisions of the California Business and Professional Code. SUF ¶ 10; Rapaport Decl. ¶ 4. Section 6151 of the California Business and Professional Code, defines a "runner," "capper," and "agent" as "any person, firm, association or corporation acting for consideration in any manner or in any capacity as an agent for an attorney at law or law firm, … in the solicitation or procurement of business for the attorney at law or law firm as provided in this article," and "one who represents another in dealings with one or more third persons." COL ¶ 9; Rapaport Decl. ¶ 9. Pursuant to Section 6154(a) of the California Business and Professional Code, an agreement for legal professional services secured through a runner or capper is void. The Supreme Court of California has stated that this section also voids the corresponding agreement between the attorney and the runner/capper. *See Alpers v. Hunt*, 86 Cal. 78, 90, 24 P. 846, 850 (1890) ("It is clear that the right of the plaintiff to recover herein is the same as that of his assignor, Bolte. If the latter cannot recover, neither can the plaintiff, his assignee.").

"The Legislature has created an exception to the prohibition on client solicitation through runners and cappers by allowing lawyer referral services to operate as long as they are registered with the State Bar and comply with standards set by the State Bar or Supreme Court." *Jackson v. LegalMatch.com*, 42 Cal. App. 5th 760, 773, 255 Cal. Rptr. 3d 741, 750 (2019) (citing § 6155(a)). Here, Defendant was and is not registered with the California State Bar. SUF ¶ 12; Rapaport Decl. ¶ 13. Thus, based on California law, the Affiliate Agreement remains void as a matter of law.

Other provisions of California law support Plaintiff's position that the Affiliate Agreement is void as a matter of law. In particular, Section 1667, California Civil Code, provides that unlawful consideration is that which is "(1) [c]ontrary to an

express provision of law; (2) [c]ontrary to the policy of express law, though not expressly prohibited; or, (3) [o]therwise contrary to good morals." Furthermore, Section 1608, California Civil Code, states that "[i]f any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." There are also numerous decisions finding that an entire agreement may be declared illegal if part of the effect of the agreement is to accomplish an illegal purpose. *See Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690 (1952); *see also Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479, 483 (1931) (holding that a contract by a corporation to purchase its own stock has the effect of illegally withdrawing and paying to a stockholder a part of the capital stock of the corporation and is illegal and void, regardless of the fact that the contract is fully performed by the sellers and partially performed by the corporation); *Firpo v. Murphy*, 72 Cal. App. 249, 252 (1925) (holding that a contract to pay commissions to a real estate broker is illegal and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business).

As the Second Division Court of Appeals recently reviewed California law on void and voidable contracts stating:

> A void contract is without legal effect. (Rest.2d Contracts, § 7, com. a, p. 20.) 'It binds no one and is a mere nullity.'" (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 929 [199 Cal. Rptr. 3d 66, 365 P.3d 845] (Yvanova).) "A voidable transaction, in contrast, 'is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance.' (Rest.2d Contracts, § 7, p. 20.)" (*Yvanova*, at p. 930.) Thus, if a contract is void and not merely voidable, the equitable defenses of estoppel, laches, and waiver do not apply. (*Colby v. Title Ins. and Trust Co.* (1911) 160 Cal. 632, 644 [117 P. 913] (*Colby*); *Tatterson v. Kehrlein* (1927) 88 Cal.App. 34, 49 [263 P. 285] (*Tatterson*).)

16

The law regarding the illegality of contracts is sometimes confusing and difficult to understand. (*McIntosh v. Mills* (2004) 121 Cal.App.4th 333, 344 [17 Cal. Rptr. 3d 66] ['"[I]llegality of contracts constitutes a vast, confusing and rather mysterious area of the law'"].) Generally, when a contract or a provision in a contract is prohibited by a statute, it is void. (*Asdourian v. Araj* (1985) 38 Cal.3d 276, 291 [211 Cal. Rptr. 703, 696 P.2d 95] (*Asdourian*), superseded by statute on other grounds as noted in *Construction Financial v. Perlite Plastering Co.* (1997) 53 Cal.App.4th 170, 175 [61 Cal. Rptr. 2d 574]; *Vitek, Inc. v. Alvarado Ice Palace, Inc.* (1973) 34 Cal.App.3d 586, 591 [110 Cal. Rptr. 86] (*Vitek*); 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 432.)

*Tufeld Corp. v. Beverly Hills Gateway, L.P.*, 86 Cal. App. 5th 12, 27, 302 Cal. Rptr. 3d 203 (2022).

The quotation from the *Yvanova* case cited above continued stating:

Such a [void] contract has no existence whatever. It has no legal entity for any purpose and neither action nor inaction of a party to it can validate it ... ." (*Colby v. Title Ins. and Trust Co.* (1911) 160 Cal. 632, 644 [117 P. 913].) As we said of a fraudulent real property transfer in *First Nat. Bank of L. A. v. Maxwell* (1899) 123 Cal. 360, 371 [55 P. 980], "'A void thing is as no thing.'"

*Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 929, 199 Cal. Rptr. 3d 66, 74, 365 P.3d 845, 852 (2016).[4]

---

[4] Because a void contract is a legal nullity, courts often refuse to enforce contracts that are either void or illegal under the *in pari delicto* doctrine or due to the fact that there is no agreement that the court should or could enforce. However, *in pari delicto* is wholly inapplicable as a defense to the claims asserted in Plaintiff's Complaint. Chapter 5 of the United States Bankruptcy Code expressly confers standing on the Trustee to bring action to recover fraudulent transfers and avoidance actions, both under bankruptcy and state law, and the defense of *in pari delicto* does not apply in seeking such recovery because, (i) by definition, these sections are exceptions to that defense and (ii) as a general rule, plaintiffs in fraudulent conveyance actions are not subject to defenses that could be raised against a debtor. *In re Pearlman*, 472 B.R. 115 (Bankr. M.D. Fla. 2012); *see also* 11 U.S.C.

Here, Debtor's Affiliate Agreement paid Defendant a "commission" based on referrals made to each customer, set forth in the following terms:

> Referral Fee. As consideration for any and all efforts by [Defendant] to promote the Services hereunder, [Debtor] will pay [Defendant] a commission in the following amount: 55% of the service fee charged to the Referral Customer (the "Referral Fee") for each Referral Customer who meets all of the requirements of such offer. The referral fee will change to 60% for all files provided [Defendant] enrolls 1000 or more Referral Customers in a given month. The percentage shall remain effective unless and until [Defendant] should send less than 1000 files in a subsequent month. The Referral Fee is payable within ten (10) days after the service fee paid by the Referral Customer clears and is sent to [Debtor]. [Defendant] shall also be entitled to 50% of the maintenance fee charged by [Debtor], which fee is currently set at $80.00 per file as of the date of this Agreement, but which is subject to change at the sole discretion of [Debtor]. [Defendant] shall remain entitled to 50% of the maintenance fee regardless of the amount set for the fee….

SUF ¶¶ 9; Mattingly Decl. ¶ 4; Rapaport Decl. ¶ 3. The Transaction History Report of Debtor's transfers to Defendant indicate weekly payments were made pursuant to the Affiliate Agreement and Defendant admitted to receiving same in their Responses to Trustee's Requests for Admissions. SUF ¶¶ 1-7; Mattingly Decl. ¶¶ 3; Rapaport Decl. ¶ 3. As Nancy Rapaport makes clear in her Declaration, the Affiliate Agreement

///

///

_____

§ 544(b) (authorizing trustee to pursue avoidance claims of unsecured creditors under applicable state law). The avoidance power is expressly available in a situation, as here, where a creditor of the debtor would have a cause of action against the transferee, but the debtor itself would not. 6 Collier on Bankruptcy P 749.02 (16th 2023); 11 U.S.C. § 544(b). For example, this occurs when the debtor is a participant in a fraud which harms its customers. *Id.* Under the *in pari delicto* doctrine, the debtor would not normally have a cause of action against the recipient/accomplice/transferee, but the trustee, standing in the shoes of both the debtor and its creditors, may be permitted to recover from the accomplice because such recovery benefits the creditors. *Id.*; *In re Bernard L. Madoff Inv. Sec. LLC*, 557 B.R. 89, 123 (Bankr. S.D.N.Y. 2016) ("Neither the defense of *in pari delicto* nor the related standing rule of [*Wagoner*] bars the Trustee's fraudulent transfer actions because those claims are specifically conferred on the Trustee by the Bankruptcy Code and SIPA.").

constitutes an illegal capping agreement and is thus void. SUF ¶ 10; Rapaport Decl. ¶¶ 10-11.

Alternatively, even if the Affiliate Agreement did not govern the relationship between Debtor and Defendant, which it did, the undisputed material facts demonstrate that there is no consideration to support the weekly payments totaling $3,557,704.32. Defendant has come forth with no evidence to establish any services that were provided in exchange for the Transfers. Rather, the weekly payments are consistent with the Debtor's business model that is anticipated in the Affiliate Agreement, which was improper. Therefore, even if Defendant were to argue that the Affiliate Agreement is invalid or inapplicable for purposes of this motion, the transfers would still be recoverable due to the lack of consideration to support them.

Thus, any sums paid by Debtor to Defendant pursuant to the Affiliate Agreement constitute a recoverable transfer for the benefit of the Estate because the consideration received was inadequate as no consideration can be provided where the underlying asset is based on a void contract. COL ¶ 11(a)(i)-(ii).

**b.    Claims**

**i.    Fraudulent Transfers**

A transfer that is fraudulent under 11 U.S.C. § 548 and Cal. Civ. Code §§ 3439.04(a) and 3439.07 may be an intentional fraudulent transfer, or a constructive fraudulent transfer. *See* generally *Bay Plastics, Inc. v. BT Commercial Corp. (In re Bay Plastics, Inc.)*, 187 B.R. 315, 322-23 (Bankr. C.D. Cal. 1995). A transfer is an intentional fraudulent transfer if it is made with the actual intent to hinder, delay or defraud a creditor. *Id.* Actual intent to hinder, delay or defraud a creditor is met when a party establishes badges of fraud. *Sharp Int'l Corp.*, 403 F.3d 43, 56 (2nd Cir. 2005). Badges of fraud include, but are not limited to: debtor retained control of the property after the transfer and the consideration received was inadequate. *See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005); *see also Lovering Tubbs Tr. v. Hoffman (In re O'Gorman)*, No. NC-

22-1062-BFT, 2022 Bankr. LEXIS 3627, at *14 (B.A.P. 9th Cir. Dec. 21, 2022) (finding intent to hinder or delay where the transfer of the property was for no consideration and without notice to creditors, which are two of the badges of fraud relied upon by Trustee and the court); *Valente v. Nowland (In re Valente)*, No. SC-22-1182-SGB, 2023 Bankr. LEXIS 1206, at *32 (B.A.P. 9th Cir. May 5, 2023) (agreeing with lower court that badges of fraud were present and sufficient to find intent to defraud creditors where transfers were made to benefit an insider, that debtor could not pay its rent or employees and suit was filed against debtor for nonpayment of rent, and debtor received no value for making transfers); *Kasolas v. Nicholson (In re Fox Ortega Enters.)*, 631 B.R. 425, 445 (Bankr. N.D. Cal. 2021) (finding intent to defraud based on a transfer made after the threat of litigation); *Origen Capital Invs. II, LLC v. DeMattos*, No. CV 20-2384-MWF (SK), 2020 U.S. Dist. LEXIS 196364, at *11 (C.D. Cal. July 29, 2020) (finding plaintiff had sufficiently plead actual intent to defraud by alleging, *inter alia*, debtor retained possession or control of the property after transfer, debtor received little or nothing of value in exchange for the transfers, and debtor became insolvent after the transfers were made).

There is no minimum number of factors that are required to demonstrate fraudulent intent, and only one or two badges of fraud may suffice to find a transfer was made with actual fraudulent intent. *Kasolas,* 631 B.R. at 445. Further, intent may be found even where no badges of fraud are found, when otherwise supported by the evidence. *Id.* If a plaintiff can show sufficient badges of fraud, the requisite intent is inferred from those circumstances. *See HBE Leasing Corp. v. Frank*, 48 F.3d 623, 639 (2d Cir. 1995) (actual fraudulent intent must be shown by clear and convincing evidence, though it may be inferred from the circumstances). The Court must review the badges of fraud together with all other evidence in the record to determine whether the evidence and appropriate inferences establish an overall impression of fraudulent intent. *Kasolas*, 631 B.R. at 445.

///

The badges of fraud in this matter include the entry of the Affiliate Agreement between Debtor and Defendant that violated California law as an illegal capping agreement and is thus void. SUF ¶ 10; Rapaport Decl. ¶¶ 10-11. Section 1.1 of the Affiliate Agreement grants Defendant the right to promote and market Debtor's services to prospective customers, yet Section 1.2 states that Defendant "shall not represent itself as an agent of [Debtor] for any purpose." *See* Mattingly Decl. ¶ 4. The Agreement specifically provides for Debtor's collection of fees associated with client referrals, which demonstrates a collection of trust money in direct violation of California law. *Id.* Section 4 of the Agreement, which outlines the illegal referral fee process, charges a "service fee" and "maintenance fee" to the customer. *Id.* The illegal nature of the Affiliate Agreements demonstrate an overall impression of fraudulent intent and the specific terms contained therein further support this conclusion.

### ii.    Constructive fraudulent transfer

A transfer is a constructive fraudulent transfer if the debtor receives less than reasonably equivalent value in exchange for the transfer, and the transfer is made while the debtor is in financial distress. *Kasolas*, 631 B.R. at 445. The California statute defines "value" for fraudulent conveyance purposes as

> Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

Cal. Civ. Code § 3439.03.

California holds that unlawful consideration cannot provide reasonable equivalent consideration. *See* Cal. Civ. Code § 1608 and 1667 discussed *supra*. Cases interpreting these provisions find that "if any effect of an agreement is to accomplish an unlawful purpose, the agreement may be declared illegal regardless of the intention

of the parties." *Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690, 247 P.2d 90, 93 (1952) (citing *Fewel & Dawes, Inc. v. Pratt*, 17 Cal.2d 85, 91 [109 P.2d 650]). Bankruptcy courts in California have likewise held that illegal consideration does not constitute reasonably equivalent value. *See Wolkowitz v. Soll, Rowe, Price, Raffel & Browne (In Fink),* 217 B.R. 614, 622 n.7 (Bankr. C.D. Cal. 1997). Thus, even if this Court does not find that the Affiliate Agreement is illegal based on its effect being to accomplish an unlawful purposes, the transfers made under the Affiliate Agreement are nonetheless constructively fraudulent because Debtor received less than reasonably equivalent value in exchange for the transfer. SUF ¶¶ 10-14. Defendant cannot legally provide the consumer referrals to LPG unless registered with the State Bar of California, which it is not, and the transfers were made while Debtor was in financial distress. SUF ¶¶ 11-14, 16; Rapaport Decl. ¶¶ 12-13; Teeple Decl. ¶¶ 8-12.

In addition to receiving less than reasonably equivalent value in exchange for the transfer, Plaintiff must establish financial distress. 11 U.S.C. § 558(a)(1)(B)(ii); *Kasolas*, 631 B.R. at 445. "There are three kinds of financial distress that make a transaction a fraudulent transfer:  (a) a transfer while a debtor is insolvent or that renders a debtor insolvent ["balance sheet insolvency"]; (b) a transfer that leaves a debtor undercapitalized or nearly insolvent (i.e., with insufficient assets to carry on its business) ["inadequate capitalization"]; [or] (c) a transfer when the debtor intends to incur debts beyond its ability to pay ["cash flow or equitable insolvency"]." *Bay Plastics*, 187 B.R. 315, 322-23 (citing UFTA §§ 4, 5; UFCA § 4; Bankruptcy Code § 548). Insolvency is defined in California Civil Code § 3439.02(a): "A debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets." UFTA § 2(a) is essentially the same. These statutes adopt the balance sheet test for insolvency: a debtor is insolvent if the liabilities exceed the assets. However, for insolvency purposes, the valuation of assets is based on "a fair valuation." *Bay Plastics*, 187 B.R. 330. In addition, intangible assets such as goodwill

1   that may have no liquidation or going concern value, must be deleted in evaluating

2   the solvency of an entity. *Id.* Further, a corporation can have a positive balance sheet

3   but be completely unable to pay its debts as they come due, and would therefore be in

4   financial distress. *Sol. Tr. v. 2100 Grand LLC (In re AWTR Liquidation Inc.)*, 548

5   B.R. 300, 331 (Bankr. C.D. Cal. 2016). "Similarly, although a corporation may be

6   currently paying its debts and have assets that exceed present liabilities, nevertheless

7   it can be doomed to fail - e.g., after an improvident leveraged buyout - and therefore

8   be insolvent under the inadequate capital test." *Id.* (citing *Moody v. Security Pacific*

9   *Business Credit, Inc.*, 971 F.2d 1056, 1065-75 & n.22 (3rd Cir. 1992)).

10      The evidence demonstrates that Debtor was insolvent at the time of the transfers

11   made pursuant to the Affiliate Agreement. SUF ¶ 16; Teeple Decl. ¶¶ 8-12.

12   Specifically, the Teeple Declaration establishes that the Debtor was in substantial

13   financial trouble at all relevant times herein. The Teeple Declaration states that the

14   Debtor treated fees collected from consumers as income upon receipt despite the fact

15   that these fees should have been held in trust. SUF ¶ 20-21; Teeple Decl. ¶ 10.  The

16   Teeple Declaration establishes that collected fees were rarely, if ever, placed

17   in  trust  until earned. *Id.* Furthermore, the Teeple Declaration recites the 14 separate

18   UCC-1 statements were of record securing debts of Debtor as of September 1, 2022

19   and the amounts allegedly owed to certain holders of those UCC-1 statements

20   according to their filed proofs of claim.  SUF ¶ 18; Teeple Decl. ¶ 9.

21      Specifically, the 14 separate UCC-1 statements were of record securing debts

22   of Debtor as of September 1, 2022. SUF ¶ 18; Teeple Decl. ¶ 9. These statements

23   remained unreleased as of the Petition Date. *Id.* These statements either reflected

24   secured liens against Debtor's assets then owned or thereafter acquired, or provided

25   evidence of the assignment or sale of substantial portions of Debtor's future income.

26   *See id.* When the transfers were made, these prior UCC-1 statements secured the

27   repayment of the following claimed amounts that are currently known to Plaintiff and

28   are allegedly owed by Debtor: (i) $2,374,004.82 owed to Fundura Capital Group as

1    evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed

2    on or about May 19, 2021; (ii) approximately $15 million dollars owed to MNS

3    Funding, LLC as evidence by Proof of Claim No. 1060 purportedly secured by a UCC

4    statement filed on or about May 28, 2021; (iii) approximately $5,000,000 owed to

5    Azzure Capital, LLC as evidenced by Proof of Claim No. 127 secured by a UCC

6    statement filed on or about May 28, 2021; and (iv) approximately $1.5 million dollars

7    owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or

8    about September 15, 2021 and December 1, 2021 (collectively, "Secured Creditors").

9    *Id.*

10        The Teeple Declaration also establishes that LPG was borrowing against its

11    assets and future income, often on unfavorable terms, not only to finance operations

12    at LPG, but also to pay the fees owed to the marketing affiliates, including Defendant,

13    for providing LPG with consumer clients. SUF ¶¶ 18; Teeple Decl. ¶ 9.

14        Finally, on Debtor's Schedule E/F, Debtor scheduled 11 unsecured creditors

15    with priority unsecured claims totaling $374,060.04 ("Priority Unsecured Creditors").

16    Debtor also scheduled 58 nonpriority unsecured creditors on its Schedule E/F with

17    claims   totaling   $141,439,158.05   ("Nonpriority   Unsecured   Creditors",   and

18    collectively with Priority Unsecured Creditors and Secured Creditors, "Prepetition

19    Creditors"). However, the claims bar date has now passed. There were over 5000

20    claims filed in this case, totaling approximately $500,000,000 in secured, priority,

21    administrative, and unsecured claims. SUF ¶ 17; Teeple Decl. ¶ 9. Debtor's balance

22    sheets for the 36 months ending December 31, 2021 show only approximately

23    $17,900,000 in total assets (primarily comprised of accounts receivable and merchant

24    loans receivable) at its highest point in November 2021. SUF ¶ 23; Teeple Decl. ¶ 12.

25    This amount is significantly less than the $500,000,000 of claims filed evidencing

26    Debtor's state of insolvency. Teeple Decl. ¶ 12.

27        As such, the amounts transferred pursuant to the Affiliate Agreement, totaling

28    $3,557,704.32, are avoidable as fraudulent under 11 U.S.C. § 544(b) and Cal. Civ.

Code §§ 3439.05 and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate under 11 U.S.C. §§ 550 and 551 and Cal Civ. Code § 3439.07.

### iii.    Preference transfers

A trustee is empowered to challenge every transfer made by a debtor to a creditor during the ninety day period immediately prior to the filing of a bankruptcy petition. 11 U.S.C. § 547(b). "This avoidance power enables the trustee to protect the estate of the debtor and to ensure an equitable distribution among the unsecured creditors." *IRFM, INC. v. EVER-FRESH FOOD Co.*, 52 F.3d 228, 230 (9th Cir. 1995). To establish that a pre-bankruptcy payment was a preference, six elements must be satisfied: "(1) a transfer of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt; (4) made while the debtor was insolvent; (5) made on or within 90 days before the date of the filing of the petition; and (6) one that enables the creditor to receive more than such creditor would receive in a Chapter 7 liquidation of the estate." *Hansen v. MacDonald Meat Co. (In re Kemp Pac. Fisheries)*, 16 F.3d 313, 315 n.1 (9th Cir. 1994).

### 1.    The Preference Transfers were a Transfer of Interest of Debtor in Property.

Of the total Transfers made, $556,925.14 of the Transfers from Debtor to Defendant occurred during the 90-day preference period ("Preference Transfers") from December 21, 2022 through March 17, 2023.[5] SUF ¶ 7; Teeple Decl. ¶ 5. These Preference Transfers were made to secure the Debtor's obligations under the Affiliate Agreement and effected a transfer of interest in the Debtor's property as a matter of law.

///

---

[5] Two of the transfers made during the 90-day preference period include the $100,000 payment made by Prime Logix on March 1, 2023 and the $182,072.09 made by Maverick Management Group LLC on March 17, 2023. As previously indicated, these transfers were made using LPG's funds going through Prime Logix LLC and Maverick Management Group, LLC. SUF ¶¶ 3-6; Teeple Decl. ¶¶ 6-7.

**2.      The Preference Transfers Were For the Benefit of Defendant Done on Account of an Antecedent Debt Owed to Defendant.**

The Debtor became directly indebted to Defendant pursuant to the Affiliate Agreement executed on September 14, 2022. SUF ¶ 9; Mattingly Decl. ¶ 4. Pursuant to this Agreement, the Debtor promised to pay Defendant 55% of the service fee charged to clients, which increased to 60% should Defendant enroll 1000 or more clients in a given month. *Id.* The Transfers were made on account of the antecedent debt owed under the Affiliate Agreement pursuant to the language contained in the Affiliate Agreement itself and based on the Monthly Payments made pursuant to the Affiliate Agreement. SUF ¶ 9; Mattingly Decl. ¶ 4; Teeple Decl. ¶ 5. These undisputed facts satisfy the Trustee's burden under 11 U.S.C. § 547(b)(2).

**3.      The Preference Transfers Occurred While Debtor as Insolvent.**

11 U.S.C. § 547(b)(3) requires that a plaintiff prove the Debtor was insolvent when a transfer occurred in order to avoid it as a preferential transfer. 11 U.S.C. § 547(f) creates a rebuttable presumption that the Debtor was insolvent on and during the 90 day period before the Petition Date.  Because the Preference Transfers happened within the 90 day period preceding the Petition Date, the Debtor is presumed to be insolvent when the Preference Transfers happened.

Defendant may attempt to challenge this presumption of insolvency.  Both applicable case law and the record in this bankruptcy case, make it clear that this challenge will fail.  The Ninth Circuit Bankruptcy Appellate Panel has stated that the presumption of insolvency

> [D]oes not shift the ultimate burden of proof, rather it merely shifts the initial burden  of going forward with the evidence. 4 Collier on Bankruptcy para. 547.06 (15th Ed. 1988). Once the transferee comes forward with substantial evidence of solvency, the presumption vanishes and the plaintiff must come forward with sufficient evidence in order to meet its burden of proving insolvency. *See* Russell, *Bankruptcy Evidence Manuel*, § 301.3 (West 1987); *see also In re Candor Diamond*

1

*Corp.*, 68 B.R. 588, 590-591 (Bankr. S.D.N.Y. 1986); 4 *Collier on Bankruptcy* para. 547.06.

2

*In re Sierra Steel, Inc.*, 96 B.R. 275, 277 (B.A.P. 9th Cir. 1989).

3

4

"Sufficient evidence" to rebut the presumption of insolvency is "non-speculative evidence that would support a finding that the 'fair' value of [the debtor's]

5

property exceeded [the debtor's] debts[.]" *Good Gateway, LLC v. NRCT, LLC (In re*

6

*Bay Circle Props., LLC)*, 646 B.R. 348, 371 (Bankr. N.D. Ga. 2022) (quoting *In re*

7

*The Heritage Org., LLC*, 413 B.R. 438, 500 (Bankr. N.D. Tex. 2009)). The Code

8

defines "Insolvent" as the "financial condition such that the sum of [an] entity's debts

9

is greater than all of [an] entity's property, at a fair valuation, exclusive of . . ."

10

property that may be exempted and property that has been fraudulently transferred,

11

concealed, or removed. 11 U.S.C. § 101(32)(A). "Thus, under this 'balance sheet'

12

test, a debtor is insolvent when its liabilities exceed its assets." *In re Sierra Steel, Inc.*,

13

96 B.R. 275, 277 (9th Cir. BAP 1989).

14

While the Trustee is entitled to the presumption of insolvency, as established

15

above, the Teeple Declaration establishes the Debtor was in substantial financial

16

trouble at all relevant times herein. The Teeple Decl. states that the Debtor treated

17

fees collected from consumers as income upon receipt despite the fact that these fees

18

should have been held in trust. SUF ¶¶ 18, 21; Teeple Decl. ¶¶ 9-10. The Teeple Decl.

19

establishes that collected fees were rarely, if ever, placed in trust until earned. *Id.*

20

Furthermore, the Teeple Decl. recites the numerous UCC-1 statements that were filed

21

against the Debtor before the Petition Date and the amounts allegedly owed to certain

22

holders of those UCC-1 statements according to their filed proofs of claim. SUF ¶ 18;

23

Teeple Decl. ¶ 9. Finally, the Teeple Decl. notes that claims seeking more than

24

$500,000,000.00 from the Debtor have been filed in this case. SUF ¶ 17; Teeple Decl.

25

¶ 9. As such, the Trustee is entitled to the presumption of insolvency in the 90 day

26

period preceding the Petition Date pursuant to 11 U.S.C. § 547(f) and has otherwise

27

///

28

///

1   satisfied his burden under 11 U.S.C. § 547(b)(3) based on the undisputed material

2   facts.

3       **4.      The Preference Transfers Occurred Within 90 Days of the Petition**

4       **Date.**

5       Section 547(e)(2) of the Bankruptcy Code provides that "a transfer is made . .

6   . at the time such transfer takes effect between the transferor and the transferee[.]" 11

7   U.S.C. § 547(e)(2). *See also In re Gulino*, 779 F.2d 546, 549 (9th Cir. 1985)

8   (citations omitted).   Here, the Preference Transfers occurred within the 90 day

9   period before the Petition Date of March 20, 2023 because they were made

10  between December 21, 2022 through March 17, 2023. SUF ¶ 7; Teeple Decl. ¶ 5. The

11  Trustee has satisfied his burden pursuant to 11 U.S.C. § 547(b)(4).

12      **5.      The Preference Transfers Would Permit Defendant to receive More**

13      **Than It Would in a Hypothetical Chapter 7 Case.**

14      The Trustee has the burden to prove that but for the avoidance of the

15  preferential transfer the  creditor would have received more than it would have in a

16  hypothetical bankruptcy case pursuant to 11 U.S.C. § 547(b)(5).  "[W]hether a

17  particular transfer is preferential should be determined 'not by what the situation

18  would have been if the debtor's assets had been liquidated and distributed among his

19  creditors at the time the alleged preferential payment was made, but by the actual

20  effect of the payment as determined when bankruptcy results.'" *In re Lewis W.*

21  *Shurtleff, Inc.*, 778 F.2d 1416, 1421 (9th Cir. 1985) (quoting *Palmer Clay Products*

22  *Co. v. Brown*, 297 U.S. 227, 229 (1936)).   Thus, so long as the distribution in

23  bankruptcy is less than one-hundred percent, any transfer that would permit an

24  unsecured creditor to receive more than it would have received in liquidation is a

25  subject to avoidance as a preference.  See *Lewis W. Shurtleff, Inc.*, 778 F.2d at 1421.

26      Unless avoided, the Preference Transfers make Defendant's previously

27  unsecured claim into a nominally secured claim.  As a nominally secured creditor,

28  Defendant can assert a claim to proceeds of sale that is not available to general

1  unsecured creditor.  Thus, the Preference Transfers, if not avoided, has improved the

2  position and increased the potential recovery of Defendant.  The Trustee has satisfied

3  his burden pursuant to 11 U.S.C. § 547(b)(5).

4     **6.**  **The Preference Transfers Were Preferential Transfers**

5     The Trustee has proven that the Preference Transfers were preferential transfers

6  as defined in 11 U.S.C. § 547(b) since the Preference Transfers were made (1)

7  for the benefit of a creditor, (2) on account of an antecedent debt of the Debtor,

8  (3) while Debtor was insolvent, (4) within 90 days before the Petition Date, and (5)

9  such that it enabled Defendant to receive more than it would under a hypothetical

10 chapter 7 liquidation. As such, the Trustee is entitled to recover and preserve for the

11 benefit of the estate pursuant to 11 U.S.C. §§ 550 and 551 $556,925.14 as avoidable

12 pursuant to 11 U.S.C. § 547(b).

13    **c.**  **Debtor Entitled to Relief on Fraudulent Conveyance Causes of**

14       **Action.**

15    Because the underlying contract was illegal, any payments made pursuant to

16 this illegal contract are fraudulent conveyances. In *Wolkowitz v. Soll, Rowe, Price,*

17 *Raffel & Browne (In re Fink)*, 217 B.R. 614 (Bankr. C.D. Cal. 1997), a bankruptcy

18 trustee sued to a recover a $50,000 payment from a third party because it was either a

19 preferential transfer to an insider or a fraudulent conveyance because the underlying

20 contract was illegal. The Court held that the payment was a fraudulent conveyance

21 because there could be no consideration in exchange for the payment because the

22 contract violated Section 10(b) and Rule 10b-5 of the Securities Exchange Act of

23 1934 Act. *Id.* at 623. Citing *Severance v. Knight-Counihan Co.*, 29 Cal. 2d 561, 568,

24 177 P.2d 4, 8 (1947), for the notion that "[a] contract for an illegal purpose is void,"

25 the Court found the "violation of section 10(b) and Rule 10b-5 makes the agreement

26 ... an illegal contract." *Id.* at 622. The Court noted that the payment would also be

27 avoidable and recoverable as a preferential transfer if the contract was enforceable.

28 *Id.* Similarly, in *Armstrong v. Collins*, 2010 U.S. Dist. LEXIS 28075, at *89 (S.D.N.Y.

Mar. 24, 2010) (the Court found that the debtor's payments to defendant for escorts were illegal payments for prostitutes, and as such, defendant did not provide reasonably equivalent value).

During the applicable reach-back period, Debtor paid Defendant the sum of at least $3,557,704.32 between September 2021 and March 2023 ("Transfers"). SUF ¶¶ 1-7; Mattingly Decl. ¶¶ 3-9; Teeple Decl. ¶ 5. As stated above, Debtor was insolvent or rendered insolvent at the time of these Transfers. SUF ¶ 16; Teeple Decl. ¶¶ 8-12. Further, the underlying obligation of the Affiliate Agreement pursuant to which the Transfers were made was illegal and void because, as Nancy Rapaport makes clear in her Declaration, the Affiliate Agreement constitutes an illegal capping agreement. SUF ¶ 10; Rapaport Decl. ¶¶ 10-11. Thus, Debtor had no obligation to pay the funds to Defendant and the transfers are avoidable as fraudulent transfers. *See* generally *Wolkowitz*, 217 B.R. 614.

### i.    Plaintiff's First Claim for Relief for Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers

As to Plaintiff's First Claim for Relief, the Affiliate Agreement and all or a portion of the Transfers occurred within two years prior to the Petition Date. SUF ¶ 1; Mattingly Decl. ¶¶ 3-4; Teeple Decl. ¶ 5. On or after the date that such agreements were executed and the Transfers were made, Debtor was or became indebted to the Prepetition Creditors (UCC-1 statements filed and thousands of proofs of claims with debts dated prior to September 1, 2022). SUF ¶ 18; Teeple Decl. ¶ 9.  However, despite Debtor's obligations to the Prepetition Creditors, Debtor continued to make Transfers pursuant to the Affiliate Agreement, which as discussed above, is illegal under federal and state laws. SUF ¶¶ 1-7, 9-10 18; Mattingly Decl. ¶¶ 3-4; Teeple Decl. ¶ 5, 9; Rapaport Decl. ¶¶ 10-13; COL ¶ 8. Because the referrals from Defendant to Debtor are illegal and void, and any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. *See* Cal. Civ. Code § 1608 and 1667 discussed *supra*; *see also Wolkowitz v. Soll, Rowe, Price,*

*Raffel & Browne (In Fink),* 217 B.R. 614, 622 n.7 (Bankr. C.D. Cal. 1997). From September 30, 2021 through March 17, 2023, Debtor transferred $3,557,704.32 to Defendant pursuant to the Affiliate Agreement. SUF ¶¶ 1-7, 9; Mattingly Decl. ¶¶ 3-4; Teeple Decl. ¶ 5. The Affiliate Agreement and Transfers are avoidable as fraudulent under 11 U.S.C. § 548(a)(1)(A), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

**ii.    Plaintiff's Second Claim for Relief for Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers**

As to Plaintiff's Second Claim for Relief, the Affiliate Agreement and all or a portion of the Transfers occurred within two years prior to the Petition Date (March 20, 2023). SUF ¶ 1-2; Mattingly Decl. ¶¶ 3-4; Teeple Decl. ¶ 5. On or after the date that such agreements were executed and the Transfers were made, Debtor was or became indebted to the Prepetition Creditors. SUF ¶ 18; Teeple Decl. ¶ 9. The Transfers happened while Debtor was insolvent or became insolvent as a result, while Debtor was engaged or was about the engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or while Debtor intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured. SUF ¶¶ 16-24; Teeple Decl. ¶¶ 8-12. Because the referrals from Defendant to Debtor are illegal and void as discussed above, because any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value as discussed above, and because the sale of the accounts receivable from Debtor to Defendant are illegal and void, at the time the agreements were executed and Transfers were made, Debtor received less than reasonably equivalent value. *See* Cal. Civ. Code § 1608 and 1667 discussed *supra*; *see also Wolkowitz v. Soll, Rowe, Price, Raffel & Browne (In Fink),* 217 B.R. 614, 622 n.7 (Bankr. C.D. Cal. 1997). From September 30, 2021 through March 17, 2023, Debtor transferred $3,557,704.32 to Defendant pursuant to the Affiliate Agreement. SUF ¶ 1-2; Mattingly Decl. ¶ 3-4;

Teeple Decl. ¶ 5. The Affiliate Agreement and Transfers are avoidable as fraudulent under 11 U.S.C. § 548(a)(1)(B), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

**iii.    Plaintiff's Third Claim for Relief for Avoidance, Recovery, and Actual Fraudulent Transfers.**

As to Plaintiff's Third Claim for Relief, the Affiliate Agreement and all or a portion of the Transfers occurred within four years prior to the Petition Date. SUF ¶¶ 1-2; Mattingly Decl. ¶¶ 3-4; Teeple Decl. ¶ 5. On or after the date that such agreements were executed and the Transfers were made, Debtor was or became indebted to the Prepetition Creditors. SUF ¶ 18; Teeple Decl. ¶ 9. However, despite Debtor's obligations to the Prepetition Creditors, Debtor continued to pay Defendant sums received from consumers under the Affiliate Agreement, which constitutes an illegal capping agreement. SUF ¶¶ 1-7, 9-10 18; Mattingly Decl. ¶¶ 3-4; Teeple Decl. ¶ 5, 9; Rapaport Decl. ¶¶ 10-13; COL ¶ 8.  Because the referrals from Defendant to Debtor are illegal and void, because any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value, at the time the agreements were executed and Transfers were made, Debtor received less than reasonably equivalent value. SUF ¶¶ 10; Mattingly Decl. ¶¶ 3-4; Teeple Decl. ¶ 5; Rapaport Decl. ¶¶ 3, 10-13. From September 30, 2021 through March 17, 2023, Debtor transferred $3,557,704.32 to Defendant pursuant to the Affiliate Agreement. SUF ¶¶ 1-2; Mattingly Decl. ¶¶ 3-4; Teeple Decl. ¶ 5. The Affiliate Agreement and Transfers are avoidable as fraudulent under 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.04(a) and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate under 11 U.S.C. §§ 550 and 551 and Cal Civ. Code § 3439.07.

**iv.    Plaintiff's Fourth Claim for Relief for Avoidance, Recovery, and Constructive Fraudulent Transfers.**

As to Plaintiff's Fourth Claim for Relief, the Affiliate Agreement and all or a portion of the Transfers occurred within four years prior to the Petition Date. SUF ¶ 1-2; Mattingly Decl. ¶¶ 3-4; Teeple Decl. ¶ 5. The Transfers happened while Debtor was insolvent or became insolvent as a result, while Debtor was engaged or was about the engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or while Debtor intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured. SUF ¶¶ 16; Teeple Decl. ¶¶ 8-12.  Because the referrals from Defendant to Debtor are illegal and void, because any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value, and because the sale of the accounts receivable from Debtor to Defendant are illegal and void, at the time the agreements were executed and Transfers were made, Debtor received less than reasonably equivalent value. SUF ¶¶ 12, 14-19; Mattingly Decl. ¶¶ 3-4; Teeple Decl. ¶ 5; Rapaport Decl. ¶ 3-4, 11-13. From September 30, 2021 through March 17, 2023, Debtor transferred $3,557,704.32 to Defendant pursuant to the Affiliate Agreement. SUF ¶ 12; Mattingly Decl. ¶¶ 3-4; Teeple Decl. ¶ 5. The Affiliate Agreement and Transfers of Debtor's funds are avoidable as fraudulent under 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.05 and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate under 11 U.S.C. §§ 550 and 551 and Cal Civ. Code § 3439.07.

> **v.     Plaintiff's Fifth Claim for Relief for Avoidance, Recovery, and Preservation of Preferential Transfer.**

As to Plaintiff's Fifth Claim for Relief, $556,925.14 of the Transfers from Debtor to Defendant occurred during the 90-day preference period ("Preference Transfers") from December 21, 2022 through March 17, 2023. SUF ¶ 13; Mattingly Decl. ¶ 3; Teeple Decl. ¶ 5. The Preference Transfers were made for, or on account of, an antecedent debt or debts owed by Debtor to Defendant. The Preference Transfers were made while Debtor was insolvent as discussed above. SUF ¶ 16;

1  Teeple Decl. ¶¶ 8-12. Pursuant to 11 U.S.C. § 547(f), Debtor was presumed to have

2  been insolvent on and during the 90 days immediately preceding the filing of the

3  petition (i.e., March 20, 2023). In addition to the Trustee's presumption of insolvency,

4  the undisputed facts satisfy the Trustee's burden under 11 U.S.C. § 547(b).

5      The Preference Transfers were made to secure the Debtor's obligations under

6  the Affiliate Agreement and effected a transfer of interest in the Debtor's property as

7  a matter of law. SUF ¶¶ 1-7; Mattingly Decl. ¶ 4. The Transfers were made on account

8  of the antecedent debt owed under the Affiliate Agreement. SUF ¶¶ 1-7; Mattingly

9  Decl. ¶ 4. The Teeple Declaration establishes that the Debtor was insolvent at the time

10 of the Preference Transfers and each of the Preference Transfers occurred within the

11 90 day period before the Petition Date of March 20, 2023. SUF ¶¶ 7, 16; Mattingly

12 Decl. ¶ 3; Teeple Decl. ¶¶ 5-12. Finally, the Preference Transfers, if not avoided, has

13 improved the position and increased the potential recovery of Defendant.

14     As a result, the Preference Transfers amounting to $556,925.14 are avoidable

15 pursuant to 11 U.S.C. § 547(b), and may be recovered and preserved for the benefit

16 of the Estate under 11 U.S.C. §§ 550 and 551.

17         **vi.    Plaintiff's Sixth Claim for Relief Turnover of Estate Property**

18     Plaintiff is also entitled to relief under its Sixth Claim for Relief because

19 Defendant has possession or control over property of the Estate in the form of the

20 Transfers made pursuant to illegal and unenforceable agreements, and that the funds

21 that are the subject of the Transfers are paramount to the Debtor's ability to pay

22 creditors. Thus, pursuant to 11 U.S.C. § 542(a), Plaintiff is entitled to recover those

23 funds.

24 ///

25 ///

26 ///

27 ///

28 ///

## <u>CONCLUSION</u>

Wherefore, Plaintiff respectfully moves this Court to enter summary judgment against the Defendant for all claims asserted against it.

Dated: January 23, 2025               DINSMORE & SHOHL LLP


By: /s/ Sarah S. Mattingly
        Yosina M. Lissebeck
        Sarah S. Mattingly (pro hac vice)
        *Special Counsel to Richard A. Marshack, former Chapter 11 Trustee for the Bankruptcy Estate of The Litigation Practice Group PC and current liquidating trustee of the LPG Liquidation Trust*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
101 S. Fifth Street, Suite 2500, Louisville, Kentucky 40202

A true and correct copy of the foregoing document entitled (*specify*): **PLAINTIFF SPECIAL COUNSEL TO RICHARD A. MARSHACK, FORMER CHAPTER 11 TRUSTEE FOR THE BANKRUPTCY ESTATE OF THE LITIGATION PRACTICE GROUP PC AND CURRENT LIQUIDATING TRUSTEE OF THE LPG LIQUIDATION TRUST'S NOTICE AND MOTION OF SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF,** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 23, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Marc C. Forsythe mforsthe@goeforlaw.com
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

_____

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) January 23, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Marc C. Forsythe
Goe Forsythe & Hodges LLP
17701 Cowan Avenue, Suite 210 (Lobby D)
Irvine, California 92614

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) January 23, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**JUDGE'S COPY – VIA FEDEX**
The Honorable Scott C. Clarkson
U.S. Bankruptcy Court
Central District of California
Ronald Regan Federal Building and Courthouse
411 West Fourth Street, Suite 5130. Courtroom 5C
Santa Ana, California 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1.23.25 | Jamie Herald | /s/ Jamie Herald |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.