Yosina M. Lissebeck (State Bar No. 201654)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone: 619.400.0500
Facsimile:  619.400.0501
yosina.lissebeck@dinsmore.com

Sarah S. Mattingly (Ky. Bar 94257 – Admitted pro hac vice)
**DINSMORE & SHOHL LLP**
101 S. Fifth Street, Suite 2500
Louisville, KY 40202
Telephone: 859-425-1096
Facsimile: 502-585-2207
Sarah.mattingly@dinsmore.com
*Special Counsel to Richard A. Marshack,*
*former Chapter 11 Trustee for the Bankruptcy Estate of*
*The Litigation Practice Group PC and*
*current liquidating trustee of the LPG Liquidation Trust*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>Debtor. | Case No. 8:23-bk-10571-SC<br><br>Chapter 11<br><br>Adv. Proc. No. 8:24-ap-01004-SC |
| RICHARD A. MARSHACK,<br>Chapter 11 Trustee,<br><br>               Plaintiff,<br><br>v.<br><br>POINT BREAK HOLDINGS LLC,<br><br>               Defendant. | **DECLARATION OF SARAH S. MATTINGLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

I, Sarah S. Mattingly, declare as follows:

1.      I am an attorney duly licensed to practice law by the State Bar of Kentucky and admitted to practice before this Court by permission through Pro Hac Vice. I am a partner of the law firm of Dinsmore & Shohl LLP, Special Counsel to Richard A. Marshack, former Chapter 11 Trustee for the Bankruptcy Estate of The Litigation Practice Group PC and current liquidating trustee of the LPG Liquidation Trust ("Trustee") and the plaintiff in the above-captioned adversary proceeding. I make this declaration in support of *Plaintiff's Motion for Summary Judgment*. Unless stated otherwise, I have personal knowledge of the facts contained in this declaration, and if called upon to testify, I could and would testify competently thereto.

2.      On or about January 23, 2025, I reviewed the docket in this adversary proceedings.

3.      A true and accurate copy of Defendant's Responses to Trustee's Requests for Admissions is attached hereto as **Exhibit A** and incorporated herein.

4.      Or about September 14, 2022, Defendant entered into an Affiliate Agreement with Prime Logix LLC. A true and accurate copy of the Affiliate Agreement is attached here as **Exhibit B** and incorporated here.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 23rd day of January 2025 at Louisville, Kentucky.

Dated: January 23, 2025

Sarah S. Mattingly (pro hac vice)

2

**EXHIBIT "A"**

Marc C. Forsythe – State Bar No. 153854
**GOE FORSYTHE & HODGES LLP**
17701 Cowan
Building D, Suite 210
Irvine, CA 92614
mforsythe@goeforlaw.com

Telephone:  (949) 798-2460
Facsimile:  (949) 955-9437

Attorneys for Defendant POINT BREAK HOLDINGS LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>   Debtor. | Case No. 28:23-bk-10571-SC<br><br>Chapter 11 |
| RICHARD A. MARSHACK, CHAPTER 11 TRUSTEE,<br><br>   Plaintiff,<br><br>  vs.<br><br>POINT BREAK HOLDINGS LLC,<br><br>   Defendant. | Adv. Case No. 8:24-ap-01004-SC<br><br>**DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS, SET ONE** |

  Defendant POINT BREAK HOLDINGS LLC ("Defendant" or "Responding Party") hereby submits its objections and responses to the first set of Request for Admissions propounded by Plaintiff RICHARD A. MARSHACK, Chapter 11 Trustee, ("Plaintiff") as follows:

## GENERAL OBJECTIONS

  1. Responding Party makes the following general objections ("General Objections") to each and every individual request for admission and hereby incorporates such objections into each

1

and every individual response herein.  The assertion of the same, similar or additional objections or the provision of partial answers in the individual responses to these requests for admission does not waive any of Responding Party's General Objections.

2.    Responding Party objects to the requests for admission to the extent that they request information which is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

3.    Responding Party objects to the requests for admission to the extent that they request information protected from disclosure by any applicable privilege, including, but not limited to, the attorney-client privilege and/or the attorney work product doctrine.

4.    Responding Party objects to the requests for admission to the extent that they impose an obligation to provide a response for or on behalf of any person or entity other than Responding Party and/or request information or documents other than that in the possession, custody or control of Responding Party.

5.    Responding Party objects to the defined terms incorporated in the requests for admission on the grounds that they are vague, ambiguous and overly broad.

6.    Responding Party objects to the requests for admission to the extent that they seek information and documents equally or more readily available to Plaintiff.

7.    The following responses are based upon the facts, documents and information presently known and available to Responding Party.  Discovery, investigation, research and analysis are ongoing and may disclose the existence of additional facts or documents, add meaning to known facts or documents, or lead to additions, variations, or changes to these responses.

8.    Without obligating itself to do so, Responding Party reserves the right to change or supplement these responses as additional facts or documents are discovered, revealed, recalled or otherwise ascertained, and as further analysis, research and discovery disclose additional facts, documents, contentions or legal theories which may apply. Responding Party specifically reserves the right to utilize subsequently discovered facts, documents or evidence at trial and also specifically reserves the right to object to the disclosure and/or production of any subsequently discovered facts, evidence or documents and, by responding to these requests for admission,

1  expressly does not waive any such objections.

2  Subject to and without waiving such objections or claims of privilege, Responding Party

3  responds to Plaintiff's First Set of Request for Admissions as follows:

4  **REQUEST FOR ADMISSION NO. 1**

5  Admit that Coast Processing LLC paid YOU $512.42 on September 30, 2021.

6  **RESPONSE TO REQUEST FOR ADMISSION NO. 1**

7  Unable to admit or deny due to unavailability of deposit information.

8  **REQUEST FOR ADMISSION NO. 2**

9  Admit that Coast Processing LLC paid YOU $256.52 on October 7, 2021.

10  **RESPONSE TO REQUEST FOR ADMISSION NO. 2**

11  Deny.  LPG paid this amount.

12  **REQUEST FOR ADMISSION NO. 3**

13  Admit that Coast Processing LLC paid YOU $2,470.32 on October 14, 2021.

14  **RESPONSE TO REQUEST FOR ADMISSION NO. 3**

15  Deny.  LPG paid this amount.

16  **REQUEST FOR ADMISSION NO. 4**

17  Admit that Coast Processing LLC paid YOU $3,135.27 on October 21, 2021.

18  **RESPONSE TO REQUEST FOR ADMISSION NO. 4**

19  Deny.  LPG paid this amount.

20  **REQUEST FOR ADMISSION NO. 5**

21  Admit that Coast Processing LLC paid YOU $3,929.36 on November 5, 2021.

22  **RESPONSE TO REQUEST FOR ADMISSION NO. 5**

23  Deny.  LPG paid this amount.

24  **REQUEST FOR ADMISSION NO. 6**

25  Admit that Coast Processing LLC paid YOU $9,380.27 on November 12, 2021.

26  **RESPONSE TO REQUEST FOR ADMISSION NO. 6**

27  Deny.  LPG paid this amount.

28  **REQUEST FOR ADMISSION NO. 7**

1    Admit that Coast Processing LLC paid YOU $5,300.41 on November 18, 2021.

2    **RESPONSE TO REQUEST FOR ADMISSION NO. 7**

3    Deny.  LPG paid this amount.

4    **REQUEST FOR ADMISSION NO. 8**

5    Admit that Coast Processing LLC paid YOU $8,214.35 on November 26, 2021.

6    **RESPONSE TO REQUEST FOR ADMISSION NO. 8**

7    Deny.  LPG paid this amount.

8    **REQUEST FOR ADMISSION NO. 9**

9    Admit that Coast Processing LLC paid YOU $9,211.51 on December 2, 2021.

10    **RESPONSE TO REQUEST FOR ADMISSION NO. 9**

11    Deny.  LPG paid this amount.

12    **REQUEST FOR ADMISSION NO. 10**

13    Admit that DEBTOR paid YOU $13,752.65 on December 9, 2021.

14    **RESPONSE TO REQUEST FOR ADMISSION NO. 10**

15    Admit.

16    **REQUEST FOR ADMISSION NO. 11**

17    Admit that DEBTOR paid YOU $12,529.19 on December 17, 2021.

18    **RESPONSE TO REQUEST FOR ADMISSION NO. 11**

19    Admit.

20    **REQUEST FOR ADMISSION NO. 12**

21    Admit that DEBTOR paid YOU $5,942.60 on December 20, 2021.

22    **RESPONSE TO REQUEST FOR ADMISSION NO. 12**

23    Admit.

24    **REQUEST FOR ADMISSION NO. 13**

25    Admit that DEBTOR paid YOU $11,002.91 on December 23, 2021.

26    **RESPONSE TO REQUEST FOR ADMISSION NO. 13**

27    Admit.

28    **REQUEST FOR ADMISSION NO. 14**

4

Admit that DEBTOR paid YOU $7,103.60 on December 30, 2021.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14**

Admit.

**REQUEST FOR ADMISSION NO. 15**

Admit that DEBTOR paid YOU $19,105.29 on December 31, 2021.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15**

Admit.

**REQUEST FOR ADMISSION NO. 16**

Admit that DEBTOR paid YOU $11,434.19 on January 10, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16**

Admit.

**REQUEST FOR ADMISSION NO. 17**

Admit that DEBTOR paid YOU $18,696.08 on January 13, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17**

Admit.

**REQUEST FOR ADMISSION NO. 18**

Admit that DEBTOR paid YOU $10,948.59 on January 20, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18**

Admit.

**REQUEST FOR ADMISSION NO. 19**

Admit that DEBTOR paid YOU $24,736.26 on January 28, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19**

Admit.

**REQUEST FOR ADMISSION NO. 20**

Admit that DEBTOR paid YOU $6,480.10 on February 1, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20**

Admit.

**REQUEST FOR ADMISSION NO. 21**

Admit that DEBTOR paid YOU $20,234.99 on February 4, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21**

Admit.

**REQUEST FOR ADMISSION NO. 22**

Admit that DEBTOR paid YOU $25,346.82 on February 10, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22**

Admit.

**REQUEST FOR ADMISSION NO. 23**

Admit that DEBTOR paid YOU $7,787.30 on February 11, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23**

Admit.

**REQUEST FOR ADMISSION NO. 24**

Admit that DEBTOR paid YOU $18,983.40 on February 18, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24**

Admit.

**REQUEST FOR ADMISSION NO. 25**

Admit that DEBTOR paid YOU $30,140.55 on February 25, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25**

Admit.

**REQUEST FOR ADMISSION NO. 26**

Admit that DEBTOR paid YOU $27,059.81 on March 4, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26**

Admit.

**REQUEST FOR ADMISSION NO. 27**

Admit that DEBTOR paid YOU $33,840.62 on March 10, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27**

Deny. Payment made on March 11th.

**REQUEST FOR ADMISSION NO. 28**

1    Admit that DEBTOR paid YOU $26,119.05 on March 17, 2022.

2    **RESPONSE TO REQUEST FOR ADMISSION NO. 28**

3    Admit.

4    **REQUEST FOR ADMISSION NO. 29**

5    Admit that DEBTOR paid YOU $36,168.72 on March 24, 2022.

6    **RESPONSE TO REQUEST FOR ADMISSION NO. 29**

7    Deny.

8    **REQUEST FOR ADMISSION NO. 30**

9    Admit that DEBTOR paid YOU $29,404.20 on April 1, 2022.

10    **RESPONSE TO REQUEST FOR ADMISSION NO. 30**

11    Admit.

12    **REQUEST FOR ADMISSION NO. 31**

13    Admit that DEBTOR paid YOU $30,216.12 on April 7, 2022.

14    **RESPONSE TO REQUEST FOR ADMISSION NO. 31**

15    Admit.

16    **REQUEST FOR ADMISSION NO. 32**

17    Admit that DEBTOR paid YOU $7,989.40 on April 12, 2022.

18    **RESPONSE TO REQUEST FOR ADMISSION NO. 32**

19    Admit.

20    **REQUEST FOR ADMISSION NO. 33**

21    Admit that DEBTOR paid YOU $42,272.15 on April 18, 2022.

22    **RESPONSE TO REQUEST FOR ADMISSION NO. 33**

23    Admit.

24    **REQUEST FOR ADMISSION NO. 34**

25    Admit that DEBTOR paid YOU $23,540.99 on April 21, 2022.

26    **RESPONSE TO REQUEST FOR ADMISSION NO. 34**

27    Admit.

28    **REQUEST FOR ADMISSION NO. 35**

1    Admit that DEBTOR paid YOU $6,088.50 on April 22, 2022.

2    **RESPONSE TO REQUEST FOR ADMISSION NO. 35**

3    Admit.

4    **REQUEST FOR ADMISSION NO. 36**

5    Admit that DEBTOR paid YOU $41,975.20 on April 28, 2022.

6    **RESPONSE TO REQUEST FOR ADMISSION NO. 36**

7    Admit.

8    **REQUEST FOR ADMISSION NO. 37**

9    Admit that DEBTOR paid YOU $27,514.93 on May 5, 2022.

10    **RESPONSE TO REQUEST FOR ADMISSION NO. 37**

11    Admit.

12    **REQUEST FOR ADMISSION NO. 38**

13    Admit that DEBTOR paid YOU $1,860.00 on May 6, 2022.

14    **RESPONSE TO REQUEST FOR ADMISSION NO. 38**

15    Admit.

16    **REQUEST FOR ADMISSION NO. 39**

17    Admit that DEBTOR paid YOU $47,239.27 on May 13, 2022.

18    **RESPONSE TO REQUEST FOR ADMISSION NO. 39**

19    Admit.

20    **REQUEST FOR ADMISSION NO. 40**

21    Admit that DEBTOR paid YOU $37,534.59 on May 18, 2022.

22    **RESPONSE TO REQUEST FOR ADMISSION NO. 40**

23    Admit.

24    **REQUEST FOR ADMISSION NO. 41**

25    Admit that DEBTOR paid YOU $8,036.70 on May 20, 2022.

26    **RESPONSE TO REQUEST FOR ADMISSION NO. 41**

27    Admit.

28    **REQUEST FOR ADMISSION NO. 42**

1    Admit that DEBTOR paid YOU $58,928.10 on May 27, 2022.

2    **RESPONSE TO REQUEST FOR ADMISSION NO. 42**

3    Admit.

4    **REQUEST FOR ADMISSION NO. 43**

5    Admit that DEBTOR paid YOU $43,384.96 on June 3, 2022.

6    **RESPONSE TO REQUEST FOR ADMISSION NO. 43**

7    Admit.

8    **REQUEST FOR ADMISSION NO. 44**

9    Admit that DEBTOR paid YOU $54,557.52 on June 10, 2022.

10    **RESPONSE TO REQUEST FOR ADMISSION NO. 44**

11    Admit.

12    **REQUEST FOR ADMISSION NO. 45**

13    Admit that DEBTOR paid YOU $57,617.46 on June 16, 2022.

14    **RESPONSE TO REQUEST FOR ADMISSION NO. 45**

15    Admit.

16    **REQUEST FOR ADMISSION NO. 46**

17    Admit that DEBTOR paid YOU $46,411.57 on June 23, 2022.

18    **RESPONSE TO REQUEST FOR ADMISSION NO. 46**

19    Admit.

20    **REQUEST FOR ADMISSION NO. 47**

21    Admit that DEBTOR paid YOU $87,705.52 on June 29, 2022.

22    **RESPONSE TO REQUEST FOR ADMISSION NO. 47**

23    Admit.

24    **REQUEST FOR ADMISSION NO. 48**

25    Admit that DEBTOR paid YOU $75,905.48 on June 30, 2022.

26    **RESPONSE TO REQUEST FOR ADMISSION NO. 48**

27    Admit.

28    **REQUEST FOR ADMISSION NO. 49**

1    Admit that DEBTOR paid YOU $46,782.58 on July 8, 2022.

2    **RESPONSE TO REQUEST FOR ADMISSION NO. 49**

3    Admit.

4    **REQUEST FOR ADMISSION NO. 50**

5    Admit that DEBTOR paid YOU $87,705.52 on July 8, 2022.

6    **RESPONSE TO REQUEST FOR ADMISSION NO. 50**

7    Admit.

8    **REQUEST FOR ADMISSION NO. 51**

9    Admit that DEBTOR paid YOU $8,896.70 on July 8, 2022.

10    **RESPONSE TO REQUEST FOR ADMISSION NO. 51**

11    Admit.

12    **REQUEST FOR ADMISSION NO. 52**

13    Admit that DEBTOR paid YOU $82,342.99 on July 14, 2022.

14    **RESPONSE TO REQUEST FOR ADMISSION NO. 52**

15    Admit.

16    **REQUEST FOR ADMISSION NO. 53**

17    Admit that DEBTOR paid YOU $8,896.70 on July 28, 2022.

18    **RESPONSE TO REQUEST FOR ADMISSION NO. 53**

19    Admit.

20    **REQUEST FOR ADMISSION NO. 54**

21    Admit that DEBTOR paid YOU $64,485.92 on August 24, 2022.

22    **RESPONSE TO REQUEST FOR ADMISSION NO. 54**

23    Admit.

24    **REQUEST FOR ADMISSION NO. 55**

25    Admit that DEBTOR paid YOU $11,051.00 on August 24, 2022.

26    **RESPONSE TO REQUEST FOR ADMISSION NO. 55**

27    Admit.

28    **REQUEST FOR ADMISSION NO. 56**

1    Admit that DEBTOR paid YOU $93,619.26 on August 26, 2022.

2    **RESPONSE TO REQUEST FOR ADMISSION NO. 56**

3    Admit.

4    **REQUEST FOR ADMISSION NO. 57**

5    Admit that DEBTOR paid YOU $73,710.84 on September 2, 2022.

6    **RESPONSE TO REQUEST FOR ADMISSION NO. 57**

7    Admit.

8    **REQUEST FOR ADMISSION NO. 58**

9    Admit that DEBTOR paid YOU $68,868.96 on September 9, 2022.

10    **RESPONSE TO REQUEST FOR ADMISSION NO. 58**

11    Admit.

12    **REQUEST FOR ADMISSION NO. 59**

13    Admit that DEBTOR paid YOU $90,952.87 on September 16, 2022.

14    **RESPONSE TO REQUEST FOR ADMISSION NO. 59**

15    Admit.

16    **REQUEST FOR ADMISSION NO. 60**

17    Admit that DEBTOR paid YOU $58,967.44 on September 23, 2022.

18    **RESPONSE TO REQUEST FOR ADMISSION NO. 60**

19    Admit.

20    **REQUEST FOR ADMISSION NO. 61**

21    Admit that DEBTOR paid YOU $11,812.10 on September 26, 2022.

22    **RESPONSE TO REQUEST FOR ADMISSION NO. 61**

23    Admit.

24    **REQUEST FOR ADMISSION NO. 62**

25    Admit that DEBTOR paid YOU $131,312.75 on September 30, 2022.

26    **RESPONSE TO REQUEST FOR ADMISSION NO. 62**

27    Admit.

28    **REQUEST FOR ADMISSION NO. 63**

Admit that DEBTOR paid YOU $73,372.64 on October 6, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 63**

Admit.

**REQUEST FOR ADMISSION NO. 64**

Admit that DEBTOR paid YOU $123,746.06 on October 14, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 64**

Admit.

**REQUEST FOR ADMISSION NO. 65**

Admit that DEBTOR paid YOU $70,025.17 on October 26, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 65**

Admit.

**REQUEST FOR ADMISSION NO. 66**

Admit that DEBTOR paid YOU $12,020.00 on October 28, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 66**

Admit.

**REQUEST FOR ADMISSION NO. 67**

Admit that DEBTOR paid YOU $12,927.01 on October 28, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 67**

Admit.

**REQUEST FOR ADMISSION NO. 68**

Admit that DEBTOR paid YOU $103,838.49 on November 2, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 68**

Admit.

**REQUEST FOR ADMISSION NO. 69**

Admit that DEBTOR paid YOU $90,577.69 on November 8, 2022.

**RESPONSE TO REQUEST FOR ADMISSION NO. 69**

Admit.

**REQUEST FOR ADMISSION NO. 70**

1      Admit that DEBTOR paid YOU $70,676.20 on November 15, 2022.

2  **RESPONSE TO REQUEST FOR ADMISSION NO. 70**

3      Admit.

4  **REQUEST FOR ADMISSION NO. 71**

5      Admit that DEBTOR paid YOU $103,638.90 on November 17, 2022.

6  **RESPONSE TO REQUEST FOR ADMISSION NO. 71**

7      Admit.

8  **REQUEST FOR ADMISSION NO. 72**

9      Admit that DEBTOR paid YOU $70,676.20 on November 15, 2022.

10  **RESPONSE TO REQUEST FOR ADMISSION NO. 72**

11      Admit.

12  **REQUEST FOR ADMISSION NO. 73**

13      Admit that DEBTOR paid YOU $172,229.31 on December 2, 2022.

14  **RESPONSE TO REQUEST FOR ADMISSION NO. 73**

15      Admit.

16  **REQUEST FOR ADMISSION NO. 74**

17      Admit that DEBTOR paid YOU $189.17 on December 5, 2022.

18  **RESPONSE TO REQUEST FOR ADMISSION NO. 74**

19      Admit.

20  **REQUEST FOR ADMISSION NO. 75**

21      Admit that DEBTOR paid YOU $100,986.61 on December 9, 2022.

22  **RESPONSE TO REQUEST FOR ADMISSION NO. 75**

23      Admit.

24  **REQUEST FOR ADMISSION NO. 76**

25      Admit that DEBTOR paid YOU $106,784.30 on December 21, 2022.

26  **RESPONSE TO REQUEST FOR ADMISSION NO. 76**

27      Admit.

28  **REQUEST FOR ADMISSION NO. 77**

1      Admit that DEBTOR paid YOU $40,457.10 on December 30, 2022.

2    **RESPONSE TO REQUEST FOR ADMISSION NO. 77**

3      Admit.

4    **REQUEST FOR ADMISSION NO. 78**

5      Admit that DEBTOR paid YOU $127,611.65 on January 27, 2023.

6    **RESPONSE TO REQUEST FOR ADMISSION NO. 78**

7      Admit.

8    **REQUEST FOR ADMISSION NO. 79**

9      Admit that Prime Logix LLC paid YOU $100,000.00 on March 1, 2023.

10   **RESPONSE TO REQUEST FOR ADMISSION NO. 79**

11     Admit.

12   **REQUEST FOR ADMISSION NO. 80**

13     Admit that Maverick Management Group LLC paid YOU $182,072.09 on March 17,

14   2023.

15   **RESPONSE TO REQUEST FOR ADMISSION NO. 80**

16     Admit.

17   **REQUEST FOR ADMISSION NO. 81**

18     Admit that YOU never entered into an Asset Purchase Agreement with DEBTOR.

19   **RESPONSE TO REQUEST FOR ADMISSION NO. 81**

20     Admit.

21   **REQUEST FOR ADMISSION NO. 82**

22     Admit that YOU never entered into an Accounts Receivable Purchase Agreement with

23   DEBTOR.

24   **RESPONSE TO REQUEST FOR ADMISSION NO. 82**

25     Admit.

26   **REQUEST FOR ADMISSION NO. 83**

27     Admit that YOU did not register with the State Bar of California as a LAWYER

28   REFERRAL SERVICE.

1    **RESPONSE TO REQUEST FOR ADMISSION NO. 83**

2        Admit. We referred cases via Maverick Mgt, who is not a law firm

3    **REQUEST FOR ADMISSION NO. 84**

4        Admit that YOU had access to LUNA.

5    **RESPONSE TO REQUEST FOR ADMISSION NO. 84**

6        Admit.

7    / / /

8    **REQUEST FOR ADMISSION NO. 85**

9        Admit that YOU used LUNA.

10    **RESPONSE TO REQUEST FOR ADMISSION NO. 85**

11        Objection, vague and ambiguous as to term "used".  Subject to the foregoing objection,

12    Defendant responds as follows: Deny.

13

14    Dated: June 28, 2024                                    Respectfully submitted by
                                                          **GOE FORSYTHE & HODGES LLP**

15

16                                                        By: /s/Marc C. Forsythe_____
                                                             Marc C. Forsythe

17                                                             Attorneys for Defendant
                                                             Point Break Holdings LLC

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

I, Thom Hipke, declare:

I am the Owner of Point Break Holdings LLC in the adversary proceeding entitled *Richard A. Marshack, Chapter 11 Trustee v. Point Break Holdings LLC*, United States Bankruptcy Court, Adv. Case No. 8:24-ap-01004-SC.

I have read the foregoing **DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS, SET ONE** and know its contents.

The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 26, 2024, at ___Irvine_____, California.


Thom Hipke

1

## PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 17701 Cowan, Suite 210, Building D, Irvine, CA 92614.

On **June 28, 2024**, I served the foregoing documents described as **DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS, SET ONE** on the interested parties in this action by placing a true copy thereof in sealed envelopes addressed as follows:

| | |
|---|---|
| Christopher B. Ghio, Esq.<br>Christopher Celentino, Esq.<br>Yosina M. Lissebeck, Esq.<br>Jamie D. Mottola, Esq.<br>DINSMORE & SHOHL LLP<br>655 West Broadway, Suite 800<br>San Diego, CA 92101 | *Special Counsel to Richard A. Marshack,*<br>*Chapter 11 Trustee*<br>Email: christopher.ghio@dinsmore.com<br>Email: christopher.celentino@dinsmore.com<br>Email: yosina.lissebeck@dinsmore.com<br>Email: jamie.mottola@dinsmore.com |
| Sarah S. Mattingly, Esq.<br>Paige E. Hornback, Esq.<br>DINSMORE & SHOHL LLP<br>101 S. Fifth Street, Suite 2500<br>Louisville, KY 40202 | Email: Sarah.mattingly@dinsmore.com<br>Email: Paige.Hornback@Dinsmore.com |

____  (by Mail) As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U. S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid of postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.  I caused the above-referenced document(s) to be transmitted to the parties indicated above.

**XXX** (By Electronic Mail) As follows:  I caused the above-referenced document(s) to be transmitted via electronic mail to the parties indicated above.

____  (By Overnight Mail) As follows:  I caused the above-referenced document(s) to be transmitted via Express Mail/Federal Express to the office of the parties indicated above.

____  (By Personal Service) As follows:  I caused the above-referenced document(s) to be delivered via First Legal Support Services to the parties indicated above.

Executed on **June 28, 2024** at Irvine, California.

**XXX** (State) I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

/s/ *Danielle Cyrankowski*
Danielle Cyrankowski

**EXHIBIT "B"**

DocuSign Envelope ID: F54686C0-1E7C-48F5-8E06-BBC94295340F

## MARKETING AFFILIATE AGREEMENT

This Marketing Affiliate Agreement ("*Agreement*") is effective as of the Effective Date by and between Prime Logix LLC, ("Prime") and Point Break Holdings LLC, as the entity executing or otherwise accepting this Agreement as a marketing affiliate of Prime ("***Marketing Affiliate***"). Capitalized terms used but not otherwise defined herein shall have the meaning provided in the definitions set forth in Section 13 below.

1.  Authorization; Marketing and Promotion.

    1.1.  Authorization. Subject to Marketing Affiliate's compliance with this Agreement, Prime hereby grants to Marketing Affiliate a non-exclusive, non-transferable, and non-assignable right to promote and market the Services to prospective customers.

    1.2.  Marketing and Promotion. Marketing Affiliate will use commercially reasonable efforts to market and promote the Services to prospective customers during the Term. Any advertising materials to be used by Marketing Affiliate (other than the materials provided by Prime) shall be at its own cost and expense. Marketing Affiliate agrees to assist in Prime's marketing efforts to a prospective customer referred by Marketing Affiliate and will provide commercially reasonable cooperation if so requested. Marketing Affiliate shall clearly and conspicuously disclose that it is being compensated by Prime for its promotion of the Services. In connection with its performance under this Agreement, Marketing Affiliate shall not represent itself as an agent of Prime for any purpose.

    1.3.  Prime Marks. All use by Marketing Affiliate of the trademarks, service marks, and trade names associated with Prime and/or the Services, whether registered or unregistered (the "*Prime Marks*"), including any goodwill associated therewith, shall inure to the benefit of, conform to the standards set by, and be under the control of, Prime. Similarly, all use by Marketing Affiliate of the trademarks, service marks, and trade names associated with Marketing Affiliate, whether registered or unregistered (the "*Affiliate Marks*"), including any goodwill associated therewith, shall inure to the benefit of, conform to the standards set by, and be under the control of, Marketing Affiliate. Marketing Affiliate's use of any of the Prime Marks must comply with this Agreement and any trademark usage guidelines provided by Prime from time to time. Marketing Affiliate shall not use any of the Prime Marks in connection with any product or service or in any manner that is likely to cause confusion, and shall not copy, imitate, or use any such marks, in whole or in part, without the prior written permission of Prime. As between the parties, Prime will have the sole right and discretion to determine whether any use of the Prime Marks in connection with the promotional activities hereunder complies with the requirements of this Agreement. Prime shall not use any of the Affiliate Marks with prior, written consent of Marketing Affiliate.

    1.4.  Customer Terms. Marketing Affiliate will notify each prospective customer that its access to the Services will be subject to the TOS and such customer must accept the TOS prior to using the Services. Marketing Affiliate will not accept the TOS on behalf of its Referral Customers.

2.  Referral Process. A prospective customer may become a Referral Customer through Marketing Affiliate's submission and Prime's acceptance of a Referral Notice per Section 2.1 below.

    2.1.  Referral Notice. Marketing Affiliate may submit a Referral Notice to Prime for each prospective customer referred by Marketing Affiliate to Prime. If Prime accepts the Referral Notice, the prospective customer referred thereby will be considered a Referral Customer. Prime may reject any Referral Notice if the prospective customer set forth in such Referral Notice is (a) a current customer of Prime, or (b) a prospective customer of Prime who, at the time the Referral Notice is submitted to Prime concerning such customer: (i) is being actively recruited by Prime or another partner of Prime, or (ii) has been actively recruited by Prime or another partner of Prime in the one hundred eighty (180) day period immediately preceding submission of such Referral

Notice. If Prime fails to provide Marketing Affiliate with a written acceptance or rejection within thirty (30) days after submission of the Referral Notice, the Referral Notice will be considered rejected by Prime and Marketing Affiliate must resubmit a Referral Notice for such prospective customer to be reconsidered as a Referral Customer hereunder.

3.  Pricing and Payment. Prime is responsible for all account-related activities with the Referral Customers, including billing and collecting fees from all Referral Customers, and may communicate directly with the Referral Customers at any time. Prime is also free to assign the servicing of Referral Customers to any other service provider at its sole discretion.  Prime is free to determine the prices that it will charge Referral Customers for the Services and will have the right to alter the Services, alter any prices for the Services, or reject or discontinue sales of the Services or any part thereof, with respect to any Referral Customer at any time or from time to time in its sole discretion.

4.  Referral Fee. As consideration for any and all efforts by Marketing Affiliate to promote the Services hereunder, Prime will pay Marketing Affiliate a commission in the following amount: 55% of the service fee charged to the Referral Customer (the "*Referral Fee*") for each Referral Customer who meets all of the requirements of such offer. The referral fee will change to 60% for all files provided Marketing Affiliate enrolls 1000 or more Referral Customers in a given month.  That percentage shall remain effective unless and until Marketing Affiliate should send less than 1000 files in a subsequent month.  The Referral Fee is payable within ten (10) days after the service fee paid by the Referral Customer clears and is sent to Prime. Marketing Affiliate shall also be entitled to 50% of the maintenance fee charged by Prime, which fee is currently set at $80.00 per file as of the date of this Agreement, but which is subject to change at the sole discretion of Prime.  Point Break shall remain entitled to 50% of the maintenance fee regardless of the amount set for the fee.  No fee will be charged to the Referral Customer other than the service fee and maintenance fee, and all costs associated with credit pulls originated from within Debt Drive shall be borne by Prime. Should Marketing Affiliate incur any charge associated with pulling credit through any other platform, such cost shall be reimbursed by Prime. In addition, no fee will be charged to Marketing Affiliate for the use of Debt Drive, regardless of the number of users requested.  Marketing Affiliate will provide Prime with all appropriate tax identification information that Prime requires to ensure Prime's compliance with applicable tax regulations.

5.  Intellectual Property Rights. Except for the rights to use the Prime Marks and promote the Services as expressly granted herein, neither party will acquire any rights, title or interest in any of the Intellectual Property Rights belonging to the other party or the other party's licensors. Nothing in this Agreement is intended to constitute a sale of any software or documentation associated with the Services or any derivations thereof. The Services constitute valuable proprietary and trade secret information and property of Prime. Title, ownership, and intellectual property rights, including without limitation all copyright rights, in and to the Services, and all derivatives thereof, shall remain with Prime and its licensors. Marketing Affiliate acknowledges the ownership and intellectual property rights of Prime in the Services, and will not take any action to jeopardize, limit or interfere in any manner with such ownership or other rights. The parties hereby grant one-another a non-exclusive, royalty-free, fully paid up, perpetual, irrevocable, transferable, unlimited, worldwide right to use and otherwise commercially exploit any feedback, ideas or other suggestions communicated by Marketing Affiliate to Prime.

6.  Confidentiality. Each party will: (a) protect the other party's Confidential Information with the same standard of care it uses to protect its own Confidential Information, but in no event less than reasonable care; and (b) not disclose the Confidential Information, except to affiliates, employees, agents and professional advisors who need to know it and who have agreed in writing (or in the case of professional advisors are otherwise bound) to keep it confidential. Each party (and any affiliates, employees and agents to whom it has disclosed Confidential Information) may use Confidential Information only to exercise rights and fulfill obligations under this Agreement, while using reasonable care to protect it. Each party is responsible for any actions of its affiliates, employees and agents in violation of this Section. Notwithstanding the foregoing, each party may disclose the other party's Confidential Information when required by law, but only after it, if legally permissible: (a) uses commercially reasonable efforts to notify the other party; and (b) gives the other party the chance to challenge the disclosure.

7.  Publicity. Neither Prime nor Marketing Affiliate may issue any press release, public announcement, or public statement regarding the existence or content of this Agreement or issue any materials containing

DocuSign Envelope ID: F54686C0-1E7C-4EF5-BE06-BBC9428634DF

Prime or Marketing Affiliate's name, trade names, trademarks, service marks, logos, domain names, or other distinctive brand features of Prime or Marketing Affiliate.

8. **Agreement Term; Termination.**

8.1.  Initial Term; Auto-Renewal. This Agreement will commence on the Effective Date and will continue for an initial term of twelve (12) months (the "*Initial Term*"). Upon expiration of the Initial Term, and on each anniversary of such date, this Agreement will auto-renew for a renewal term of twelve (12) months (each a "*Renewal Term*") unless either party notifies the other in writing of its intent to not renew the Agreement at least thirty (30) days prior to the end of the then-current Term.

8.2.  Termination for Breach. Notwithstanding anything to the contrary elsewhere in the Agreement, either party may suspend performance or terminate this Agreement if: (i) the other party is in material breach of the Agreement and fails to cure that breach within fifteen (15) days after receipt of written notice; (ii) the other party ceases its business operations or becomes subject to insolvency proceedings and the proceedings are not dismissed within ninety (90) days; (iii) the other party is in material breach of this Agreement more than two (2) times notwithstanding any cure of such breaches.

8.3.  Termination for Convenience. Notwithstanding anything to the contrary elsewhere in the Agreement, either party may terminate this Agreement for convenience upon sixty (60) days prior written notice to the other party.

8.4.  Effect of Termination. Upon any termination or expiration of this Agreement: (i) all rights and licenses granted by one party to the other will immediately cease; (ii) each party will promptly return to the other party, or destroy and certify the destruction of, all of the other party's Confidential Information; (iii) Marketing Affiliate shall no longer market or promote the Services and will remove all references to Prime and/or the Services from is website; and (iv) Marketing Affiliate will, if Prime so requests, inform Referral Customers that its relationship with Prime has terminated. Termination or expiration of this Agreement, in part or in whole, will not limit either party from pursuing other remedies available to it. In the event of non-renewal or termination of this Agreement, the Referral Fee for Referral Customers who have met the applicable offer requirement(s) prior to the effective date of termination or expiration will be paid as set forth herein.

8.5.  Acknowledgement. Marketing Affiliate hereby waives any right, either express or implied by applicable law or otherwise, to renewal of this Agreement or to any damages or compensation for any expiration or termination of this Agreement as provided herein.

9. Representations. Marketing Affiliate and Prime represent and warrant that:

9.1.  Marketing Affiliate and Prime will comply with the terms and conditions of this Agreement, all applicable laws and regulations (including, without limitation, Export Laws), and any policies related to the Services, as such policies may be modified from time to time, in the marketing and promotion of the Services;

9.2.  Marketing Affiliate and Prime will not make any unauthorized, false, misleading, or illegal statements in connection with this Agreement or regarding the Services and will not make any representation or warranty that is inconsistent with this Agreement or Prime's written materials regarding the Services as provided by one party to the other, or otherwise made publicly available by either. Marketing Affiliate and Prime will indemnify, defend, and hold harmless the other party from and against all liabilities, damages, and costs (including settlement costs and reasonable attorneys' fees) arising out of or related to any

representations or warranties made by either regarding the Services that are inconsistent with this Agreement or the written materials regarding the Services provided by Prime;

9.3.  Marketing Affiliate and Prime have obtained and will maintain all licenses, permits and approvals and will be responsible for satisfying all formalities as may be required to: (a) enter into this Agreement; (b) perform its obligations in accordance with this Agreement; and (c) comply with applicable laws, rules and regulations;

9.4.  The execution and delivery of this Agreement, and the performance by Marketing Affiliate or Prime of their respective obligations hereunder, will not constitute a breach or default of or otherwise violate any agreement to which Marketing Affiliate or any of its affiliates are a party, or violate any rights of any third parties arising from those agreements, including without limitation any rights related to exclusivity; and

9.5.  Marketing Affiliate and Prime, and their respective directors, officers, employees and agents have not, and will not offer, pay, promise or authorize the payment, directly or indirectly through any other person or entity, of any monies or anything of value for the purpose of inducing or rewarding any favorable action or influencing any act or decision in connection with Prime's business to a candidate for public office, or to any of the following for the purpose of inducing or rewarding any favorable action or influencing any act or decision of such person or entity in connection with Prime's business: (a) any governmental official or employee of a government; (b) any official or employee of any government-controlled entity, public international organization or any political party; or (c) any candidate for political office.

10. Disclaimer. TO THE FULLEST EXTENT PERMITTED BY LAW, PRIME, ITS LICENSORS AND SUPPLIERS MAKE NO WARRANTY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION WITH RESPECT TO THE SERVICES, AND EXPRESSLY DISCLAIM THE WARRANTIES OR CONDITIONS OF NONINFRINGEMENT, SATISFACTORY QUALITY, MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE. MARKETING AFFILIATE HEREBY WAIVES ANY RIGHTS THAT IT MIGHT OTHERWISE HAVE IN CONNECTION WITH THIS SECTION. PRIME WILL NOT BE OBLIGATED UNDER THIS AGREEMENT TO TAKE ANY ACTION OR REFRAIN FROM TAKING ANY ACTION THAT IT BELIEVES, IN GOOD FAITH, WOULD CAUSE IT TO BE IN VIOLATION OF ANY LAWS OF THE TERRITORY OR ANY OTHER APPLICABLE JURISDICTION, INCLUDING, WITHOUT LIMITATION, THE UNITED STATES.

10. Disclaimer. TO THE FULLEST EXTENT PERMITTED BY LAW, MARKETING AFFILIATE, ITS LICENSORS AND SUPPLIERS MAKE NO WARRANTY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION WITH RESPECT TO THE SERVICES, AND EXPRESSLY DISCLAIM THE WARRANTIES OR CONDITIONS OF NONINFRINGEMENT, SATISFACTORY QUALITY, MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE. MARKETING AFFILIATE HEREBY WAIVES ANY RIGHTS THAT IT MIGHT OTHERWISE HAVE IN CONNECTION WITH THIS SECTION. MARKETING AFFILIATE WILL NOT BE OBLIGATED UNDER THIS AGREEMENT TO TAKE ANY ACTION OR REFRAIN FROM TAKING ANY ACTION THAT IT BELIEVES, IN GOOD FAITH, WOULD CAUSE IT TO BE IN VIOLATION OF ANY LAWS OF THE TERRITORY OR ANY OTHER APPLICABLE JURISDICTION, INCLUDING, WITHOUT LIMITATION, THE UNITED STATES.

11. Limitation of Liability. IN NO EVENT WILL EITHER PARTY HAVE ANY LIABILITY TO THE OTHER WITH RESPECT TO ANY SUBJECT MATTER OF THIS AGREEMENT OR TERMS AND CONDITIONS RELATED HERETO FOR ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, HOWEVER CAUSED AND WHETHER IN CONTRACT, TORT OR UNDER ANY OTHER THEORY OF LIABILITY, WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LIABILITY AND EVEN IF DIRECT DAMAGES DO NOT SATISFY A REMEDY. IN NO EVENT WILL EITHER PARTY'S AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THE SUBJECT MATTER OF THIS AGREEMENT, WHETHER IN CONTRACT, TORT OR UNDER ANY OTHER THEORY OF LIABILITY, EXCEED THE AMOUNTS PAID BY PRIME TO MARKETING AFFILIATE HEREUNDER IN THE 12 MONTHS PRIOR TO THE ACT THAT GAVE RISE TO THE LIABILITY. THESE LIMITATIONS OF

DocuSign Envelope ID: F53686C0-1E7C-45F5-8E06-BBC9428534DF

LIABILITY APPLY TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW BUT DO NOT APPLY TO A PARTY'S INDEMNIFICATION OBLIGATIONS, VIOLATIONS OF THE OTHER PARTY'S INTELLECTUAL PROPERTY RIGHTS, OR BREACHES OF CONFIDENTIALITY OBLIGATIONS.

12. Miscellaneous.

12.1.   Non-Exclusivity. Prime expressly reserves the right (on a worldwide basis) to promote, advertise, market, sell, license and distribute the Services either directly or indirectly through other partners, managed service providers, dealers, distributors, or other third parties, and reserves the right (on a worldwide basis) to promote, advertise, market, sell, license, and distribute the Services to any customer of Marketing Affiliate, subject to the confidentiality provisions of this Agreement. Nothing in this Agreement shall be deemed to preclude Prime from contacting Referral Customers directly.  Similarly, Marketing Affiliate expressly reserves the right (on a worldwide basis) to promote, advertise, market, sell, license and distribute the Services either directly or indirectly through other partners, managed service providers, dealers, distributors, or other third parties, and reserves the right (on a worldwide basis) to promote, advertise, market, sell, license, and distribute the Services to any customer of Prime, subject to the confidentiality provisions of this Agreement.

12.2.   Non-Disparagement. Each party agrees and covenants that it will not at any time make, publish, or communicate to any person or entity or in any public forum, including, without limitation, on any digital or online review sites or forums, any defamatory, discrediting or disparaging remarks, comments or statements concerning the other party or its businesses, or any of its employees or officers, now or in the future. For purposes of this paragraph, a disparaging or discrediting statement or representation is any communication which, if publicized to another, would cause or tend to cause the recipient of the communication to question the business condition, integrity, competence, good character, or product quality of the person or entity to whom the communication relates, but will not include any disclosure required to be made to any governmental or quasi-governmental agency, or any disclosure made in the course of any pending or threatened litigation, mediation, arbitration or agency action.

12.3.   Notices. All notices must be in writing and addressed to the attention of the other party at the address first set forth above or on the signature page hereto, or at such other address as provided by a party from time to time by like notice. Notice will be deemed given: (a) when delivered by personal courier, (b) one (1) business day after sending via a nationally-recognized overnight courier, (c) three (3) business days after sending via certified mail, or (d) when verified by automated receipt or electronic logs if sent by facsimile or email.

12.4.   Beneficiaries; No Agency; Assignment. There are no third-party beneficiaries to this Agreement. The parties are independent contractors, and this Agreement does not create an agency, partnership or joint venture. Marketing Affiliate may not assign or transfer any part of this Agreement, including without limitation, by change of control or an assignment by operation of law, without Prime's prior written consent. Any attempt by Marketing Affiliate to transfer or assign this Agreement in violation of this Section is void.

12.5.   Force Majeure. Neither party will be liable for inadequate performance to the extent caused by a condition (for example, natural disaster, epidemic or pandemic, act of war or terrorism, riot, labor condition, governmental action, and Internet disturbance) that was beyond the party's reasonable control.

12.6.   No Waiver; Severability. Failure to enforce any provision of this Agreement will not constitute a waiver. If any provision of this Agreement is found unenforceable, it and any related provisions will be interpreted to best accomplish the unenforceable provision's essential purpose.

12.7.   Governing Law; Jurisdiction. This Agreement is governed by the laws of the State of California, excluding its choice of law rules. FOR ANY DISPUTE RELATING TO THIS AGREEMENT, THE

PARTIES CONSENT TO PERSONAL JURISDICTION IN ORANGE COUNTY, CALIFORNIA AND THE EXCLUSIVE VENUE OF, THE COURTS IN ORANGE COUNTY, CALIFORNIA.

12.8.  Waiver of Jury Trial. EACH PARTY HEREBY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE SUBJECT MATTER HEREOF. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS (INCLUDING NEGLIGENCE), BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. THIS SECTION HAS BEEN FULLY DISCUSSED BY EACH OF THE PARTIES HERETO AND THESE PROVISIONS WILL NOT BE SUBJECT TO ANY EXCEPTIONS. EACH PARTY HERETO HEREBY FURTHER WARRANTS AND REPRESENTS THAT SUCH PARTY HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT SUCH PARTY KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.

12.9.  Equitable Relief; Survival. Nothing in this Agreement will limit either party's ability to seek equitable relief. Upon expiration or termination of this Agreement, the rights and obligations of the parties will cease, except for the rights and obligations in all provisions of this Agreement which by their nature contemplate performance or applicability after the expiration or termination hereof, which will survive termination or expiration of this Agreement.

12.10.  Entire Agreement; Amendments; Counterparts. This Agreement constitutes the parties' entire agreement relating to its subject and supersedes any prior or contemporaneous agreements on that subject. Any amendments to this Agreement must be agreed upon in writing and signed by both parties hereto. The parties may execute this Agreement electronically (including, without limitation, via Marketing Affiliate's acceptance of this Agreement via electronic signature) and the parties may exchange executed signature pages in counterparts, including by facsimile, PDF or other electronic method, which taken together will constitute one instrument.

13. Definitions.

For purposes of this Agreement, the following terms will have the meanings set forth below:

"Confidential Information" means information disclosed by a party to the other party under this agreement that is marked as confidential or would normally be considered confidential under the circumstances. Without limiting the foregoing, the Referral Fee and any information obtained through the Services are Confidential Information of Prime. Notwithstanding the foregoing, Confidential Information does not include information that: (a) the recipient of the Confidential Information already knew; (b) becomes public through no fault of the recipient; (c) was independently developed by the recipient; or (d) was rightfully given to the recipient by another party.

"Effective Date" means the date on which both Prime and Marketing Affiliate execute this Agreement below. If this Agreement is executed by Marketing Affiliate and Prime on different dates, the Effective Date will be the date the last party signs this Agreement.

"Export Laws" means all applicable export and re-export control laws and regulations, and specifically includes the Export Administration Regulations maintained by the U.S. Department of Commerce, the trade and economic sanctions maintained by the Treasury Department's Office of Foreign Assets Control, and the International Traffic in Arms Regulations maintained by the Department of State.

"Intellectual Property Rights" means current and future worldwide rights under patent law, copyright law, trade secret law, trademark law, moral rights law, and other similar rights.

DocuSign Envelope ID: F51686C0-1E7C-4EF5-8E06-BBC9428634DF

"Referral Customers" means those prospective customers referred by Marketing Affiliate to Prime and accepted by Prime in accordance with Section 2 above.

"Referral Notice" means Marketing Affiliate's submission of written notice to Prime regarding a prospective customer's interest in purchasing the Services, in the form designated by Prime from time to time, which shall include all information about the prospective customer and opportunity as reasonably requested by Prime.

"Services" means the products and services offered by Prime to Referral Customers as more particularly described at www.Prime.com, as may be updated or modified by Prime from time to time.

"Taxes" means any and all taxes, charges, fees, levies, imposts, duties, tariffs or other assessments imposed by or payable to any federal, state, local or foreign tax or governmental authority, including, without limitation, sales, use, goods, services, value-added, transfer, customs, personal property, stamp duty, excise, withholding and other obligations of the same or similar nature.

"Term" means the Initial Term together with all Renewal Terms, as such terms are defined in Section 8.1 above.

"TOS" means the Terms of Service presented by Prime to Referral Customers upon login to the Services, as Prime may modify from time to time, which must be accepted by each Referral Customer prior to its use of the Services. A copy of the then-current TOS for the applicable Services will be made available by Prime for review upon request.

The parties have caused this Agreement to be executed as of the Effective Date.

Prime Logix LLC

By: _Bianca Loli_
    231EFC7A33214B4
    Bianca Loli, Executive Director
Date: 9/13/2022


Marketing Affiliate: Point Break Holdings LLC

By: _Thom Hipke_
    69T0C5B8CBF5B4B
    Thom Hipke, President
Date: 9/14/2022

7

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
101 S. Fifth Street, Suite 2500, Louisville, Kentucky 40202

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF SARAH S. MATTINGLY IN SUPPORT OF TRUSTEE'S MOTION FOR SUMMARY JUDGMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 23, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Marc C. Forsythe mforsthe@goeforlaw.com
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

☐   Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) January 23, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Marc C. Forsythe
Goe Forsythe & Hodges LLP
17701 Cowan Avenue, Suite 210 (Lobby D)
Irvine, California 92614

☐   Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) January 23, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**JUDGE'S COPY – VIA FEDEX**
The Honorable Scott C. Clarkson
U.S. Bankruptcy Court
Central District of California
Ronald Regan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 . Courtroom 5C
Santa Ana, California 92701-4593

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**