CHRISTOPHER CELENTINO (131688)
christopher.celentino@dinsmore.com
YOSINA M. LISSEBECK (201654)
yosina.lissebeck@dinsmore.com
CHRISTOPHER B. GHIO (259094)
christopher.ghio@dinsmore.com
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone: 619.400.0500
Facsimile: 619.400.0501

Sarah S. Mattingly (Ky. Bar 94257 – Admitted pro hac vice)
**DINSMORE & SHOHL LLP**
101 S. Fifth Street, Suite 2500
Louisville, KY 40202
Telephone: 859-425-1096
Facsimile: 502-585-2207
Sarah.mattingly@dinsmore.com

*Special Counsel to Richard A. Marshack, Plaintiff
and Trustee of the LPG Liquidation Trust*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>Debtor.<br><br>---<br><br>RICHARD A. MARSHACK,<br>Chapter 11 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>JGW SOLUTIONS LLC,<br><br>Defendant. | Case No. 8:23-bk-10571-SC<br><br>Chapter 11<br><br>Adv. Proc. No. 8:23-ap-01148-SC<br><br>**DECLARATION OF JOSHUA R. TEEPLE IN SUPPORT OF PLAINTIFF RICHARD A. MARSHACK, LIQUIDATING TRUSTEE'S SUPPLEMENTAL BRIEF**<br><br>Judge: Hon. Scott C. Clarkson |

I, Joshua R. Teeple, declare:

1. I am a Certified Public Accountant, Certified Fraud Examiner and a Certified in Financial Forensics. I am a co-founder of the public accounting firm Grobstein Teeple, LLP ("GT"),

Accountants for Richard A. Marshack, the former Chapter 11 Trustee for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") and current liquidating trustee of the LPG Liquidation Trust (collectively, "Trustee" or "Plaintiff"). As such, except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

2. I submit this Declaration in support of Trustee's Supplemental Brief in support of his Motion for Summary Judgment ("Brief"), which I have reviewed.

3. The facts set forth below are true based on (a) my personal knowledge or (b) Debtor's books and records[1] ("Financial Records"). Neither I nor GT have audited, reviewed, or otherwise examined, as defined by the American Institute of Certified Public Accountants, Debtor's books and records and disclaim any opinion as to their accuracy or completeness.

4. I have also reviewed the Declaration of Brad Lee ("Lee") filed in support of this Brief ("Lee Declaration"). Finally, I have reviewed the Declaration of Tony Diab ("Diab") filed in support of this Brief ("Diab Declaration").

5. Based on GT's analysis of Debtor's Financial Records and explanations as detailed in the Lee Declaration and Diab Declaration, the ACH debits Debtor collected from consumers were either deposited directly into Debtor's operating accounts or diverted to non-debtor entities from ACH processing or other companies, including, but not limited to, Validation Partners, LLC ("Validation Partners"), Coast Processing ("Coast Processing"), BAT d/b/a Coast Processing (also "Coast Processing"), Vulcan Consulting Group ("Vulcan"), Maverick Management Group LLC ("Maverick"), CLG Processing ("CLG"), World Global Fund LLC's ("World"), Oakstone Legal Group, PC ("Oakstone"), Phoenix Law, PC ("Phoenix"), Prime Logix, LLC ("Prime Logix"), LGS Holdco, LLC ("LGS"), EPPS, PECC, EquiPay, Merit Fund, Authorize.net, World Global, Optimum Bank ("Optimum"), BankUnited, Marich Bein, Revolv3, FIS, BCB Bank, and Guardian to be later deposited into Debtor's bank accounts or paid out to Debtor's marketing affiliates or for other business expenses or non-business personal expenses.

/ / /

---

[1] Which are inclusive of non-debtor bank statements and enclosures.

2

6. As explained in the Lee Declaration and Diab Declaration, Lee and Diab also instructed the above referenced ACH processing or other companies, investors, file purchasers and other individuals involved with the Debtor's business operations to divert Debtor's proceeds into the other ACH processing or other companies accounts instead of directly into Debtor's accounts. Thereafter, the above referenced ACH processors or other companies, investors, file purchasers and other individuals involved with the Debtor's business operations would be instructed to either deposit a portion of those funds into Debtor's bank accounts or to directly pay Debtor's other business expenses or non-business personal expenses.

7. As further explained in the Lee Declaration and Diab Declaration, the above mentioned companies used the incoming proceeds interchangeably between the companies for Debtor's purposes at Diab's direction because these were all Debtor's proceeds despite which account they were diverted to or from.

8. The above explanations by Lee and Diab, and as further detailed in the Lee Declaration and Diab Declaration, regarding the treatment and transfer of Debtor's funds appear to be corroborated by the transactions reflected in Debtor's Financial Records.

9. GT was instructed to trace the source of funds related to thirty-two (32) specific banking transactions to identify and/or determine the source of those funds and whether those transactions were funded with money originating from the Debtor's bank accounts and/or Debtor's business activities.

10. Of these thirty-two (32) transactions ("Transactions"), six (6) were ultimately determined by GT to be duplicative, resulting in twenty-six (26) unique transactions to be traced by GT. Attached hereto as <u>Exhibit 1</u> is the Transaction Summary List ("Summary") which details the Transactions.

11. The following is an explanation of the Summary detailing each of the Transactions:

    a. Transaction #1: payment to JGW Solutions LLC ("JGW") in the amount of $179,229.82. On March 17, 2023, JGW received $179,229.82 from Maverick bank account ending in 0496 ("Maverick 0496") held at Optimum. Debtor's Financial Records show that Maverick 0496 was funded primarily with two deposits originating from CLG on March 15,

1  2023 and March 17, 2023 in the amounts of $100,000.00 and $450,000.00 respectively. Attached hereto as <u>Exhibit 2</u> is the JGW tracing analysis prepared by GT. As explained in the Diab Declaration, Diab transferred or sold approximately 15,000 LPG client files to Oakstone, 12,000 LPG files to CLG, and the remaining LPG files, approximated at slightly less than 40,000, to Phoenix. Pursuant to the asset purchase agreement between LPG and CLG, Diab instructed CLG to deposit a portion of the funds generated by these sales into Maverick 0496.

   b.   Transaction #2: payment to JGW in the amount of $179,229.82. This transaction appears to be duplicative of Transaction #1.

   c.   Transaction #3: payment to Clear Vision Financial LLC ("Clear Vision") in the amount of $80,099.69. On March 17, 2023, Clear Vision received $80,099.69 from Maverick 0496 which appears to be primarily funded with Debtor assets as previously noted. Attached hereto as <u>Exhibit 3</u> is the Clear Vision tracing analysis prepared by GT.

   d.   Transaction #4: payment to Clear Vision in the amount of $294.82. On March 17, 2023, Clear Vision received $294.82 from Maverick 0496 which appears to be primarily funded with Debtor assets as previously noted. See <u>Exhibit 3</u>.

   e.   Transaction #5: payment to Leucadia Enterprises, Inc. ("Leucadia") in the amount of $875.43. On March 17, 2023, Leucadia received $875.43 from Maverick 0496 which appears to be primarily funded with Debtor assets as previously noted. Attached hereto as <u>Exhibit 4</u> is the Leucadia tracing analysis prepared by GT.

   f.   Transaction #6: payment to Leucadia in the amount of $22,052.86. On December 2, 2021, Leucadia received $22,052.86 from Coast Processing bank account ending in 6738 ("Coast 6738") held at Optimum. Debtor's Financial Records provided to GT show that Coast 6738 was funded primarily with a deposit originating from World's bank account ending in 6134 ("World 6134") held at Optimum on December 2, 2021 in the amount of $540,000.00. Based on GT's analysis of World 6134, it appears that most of the incoming funds originated with the Debtor. For example, during the period November 26, 2021 to December 2, 2021, 100% of the funds deposited into World 6134 totaling

$2,544,174.26 originated from Debtor bank accounts. Attached hereto as <u>Exhibit 5</u> and <u>Exhibit 5a</u> are the Leucadia tracing analyses prepared by GT.

  g. Transaction #7: payment to Leucadia in the amount of $21,400.82. On November 26, 2021, Leucadia received $21,400.82 from Coast 6738. On that day, Coast 6738 was funded primarily with a deposit originating from World 6134 in the amount of $500,000.00. On November 26, 2021, 100% of the funds deposited into World 6134 originated from Debtor bank accounts. Attached hereto as <u>Exhibit 6</u> and <u>Exhibit 6a</u> are the Leucadia tracing analyses prepared by GT.

  h. Transaction #8: payment to Leucadia in the amount of $20,153.63. On November 18, 2021, Leucadia received $20,153.63 from Coast 6738. During the relevant time period, Coast 6738 was funded primarily with two deposits originating from World 6134 on November 17, 2021 and November 18, 2021 in the amounts of $150,000.00 and $300,000.00, respectively. During the period November 17, 2021 to November 18, 2021, approximately 86% of the funds deposited into World 6134 originated from Debtor bank accounts. Attached hereto as <u>Exhibit 7</u> and <u>Exhibit 7a</u> are the Leucadia tracing analyses prepared by GT.

  i. Transaction #9: payment to Leucadia in the amount of $14,810.80. On November 12, 2021, Leucadia received $14,810.80 from Coast 6738. On that day, Coast 6738 was funded primarily with a deposit originating from World 6134 in the amount of $900,000.00. On November 12, 2021, approximately 55% of funds deposited into World 6134 originated from Debtor bank accounts. Attached hereto as <u>Exhibit 8</u> and <u>Exhibit 8a</u> are the Leucadia tracing analyses prepared by GT.

  j. Transaction #10: payment to Leucadia in the amount of $22,385.90. On November 5, 2021, Leucadia received $22,385.90 from Coast 6738. On that day, Coast 6738 was funded primarily with a deposit originating from World 6134 in the amount of $700,000.00 and with a deposit originating from Validation Partners in the amount of $244,950.00. During the period November 1, 2021 to November 5, 2021, approximately 97% of funds deposited into World 6134 originated from Debtor bank accounts. Attached

hereto as Exhibit 9 and Exhibit 9a are the Leucadia tracing analyses prepared by GT. Based on the Diab Declaration, pursuant to an asset purchase agreement between the Debtor and Validation Partners, funds generated by Validation partners that were related to the Debtor's client files sold to Validation Partners would be diverted at the direction of Diab to Coast Processing.

      k.      Transaction #11: payment to Leucadia in the amount of $15,866.79. On October 26, 2021, Leucadia received $15,866.79 from Coast 6738. On that day, Coast 6738 was funded primarily with a deposit originating from World 6134 in the amount of $380,000.00. During the period October 15, 2021 to October 26, 2021, approximately 96% of funds deposited into World 6134 originated from Debtor bank accounts. Attached hereto as Exhibit 10 and Exhibit 10a are the Leucadia tracing analyses prepared by GT.

      l.      Transaction #12: payment to Leucadia in the amount of $23,411.86. On October 14, 2021, Leucadia received $23,411.86 from Coast 6738. During the relevant time period, Coast 6738 was funded primarily with two deposits originating from World 6134 on October 13, 2021 and October 14, 2021, in the amounts of $800,000.00 and $345,000.00, respectively. During the period October 8, 2021 to October 14, 2021, approximately 77% of funds deposited into World 6134 originated from Debtor bank accounts. Attached hereto as Exhibit 11 and Exhibit 11a are the Leucadia tracing analyses prepared by GT.

      m.      Transaction #13: payment to Leucadia in the amount of $19,912.16. On October 7, 2021, Leucadia received $19,912.16 from Coast 6738. On that day, Coast 6738 was funded primarily with a deposit originating from World 6134 in the amount of $600,000.00. During the period September 3, 2021 to October 7, 2021, approximately 91% of funds deposited into World 6134 originated from Debtor bank accounts. Attached hereto as Exhibit 12 and Exhibit 12a are the Leucadia tracing analyses prepared by GT.

      n.      Transaction #14: payment to Leucadia in the amount of $28,575.37. On October 1, 2021, Leucadia received $28,575.37 from Coast 6738. On that day, Coast 6738 was funded primarily with deposits from Coast's bank account ending in 6712 ("Coast 6712") held at Optimum, World 6134, and a Debtor bank account in the amounts of

$250,000.00, $250,000.00, and $12,708.71 respectively. Also on October 1, 2021, 100% of the funds deposited into Coast 6712 originated from World 6134. During the period September 3, 2021 to October 1, 2021, approximately 90% of funds deposited into World 6134 originated from Debtor bank accounts. Attached hereto as Exhibit 13, 13a, Exhibit 13b, and Exhibit 13c are the Leucadia tracing analyses prepared by GT.

  o. Transaction #15: payment to Leucadia in the amount of $875.43. This transaction appears to be duplicative of Transaction #5.

  p. Transaction #16: payment to Perfect Financial LLC ("Perfect") in the amount of $42,057.46. On March 20, 2023, Perfect received $42,057.46 from Maverick 0496 which appears to be primarily funded with Debtor assets as previously noted. Attached hereto as Exhibit 14 is the Perfect tracing analysis prepared by GT.

  q. Transaction #17: payment to Perfect in the amount of $778.86. On March 17, 2023, Perfect received $778.86 from Maverick 0496 which appears to be primarily funded with Debtor assets as previously noted. Attached hereto as Exhibit 15 is the Perfect tracing analysis prepared by GT.

  r. Transaction #18: payment to Perfect in the amount of $42,057.46. This transaction appears to be duplicative of Transaction #16.

  s. Transaction #19: payment to Perfect in the amount of $778.86. This transaction appears to be duplicative of Transaction #17.

  t. Transaction #20: payment to Point Break Holdings LLC ("Point Break") in the amount of $182,072.09. On March 17, 2023, Point Break received $182,072.09 from Maverick 0496 which appears to be primarily funded with Debtor assets as previously noted. Attached hereto as Exhibit 16 is the Point Break tracing analysis prepared by GT.

  u. Transaction #21: payment to Point Break in the amount of $100,000.00. On March 1, 2023, Point Break received $100,000.00 from Prime Logix's bank account ending in 9201 ("Prime Logix 9201") held at Bank of America. Debtor's Financial Records provided to GT show that Logix 9201 was funded primarily with a deposit originating from LGS on February 28, 2023 in the amount of $500,000.00. Attached hereto as Exhibit 17 is

the Point Break tracing analysis prepared by GT. Based on the Diab Declaration, LPGs receivables "were the primary, if not exclusive source of funds" for LGS and that such funds were diverted at the direction of Diab from the Debtor to Prime Logix.

  v. Transaction #22: payment to Point Break in the amount of $9,211.51. On December 2, 2021, Point Break received $9,211.51 from Coast 6738. On that day, Coast 6738 was funded primarily with a deposit originating from World 6134 in the amount of $540,000.00. During the period November 26, 2021 to December 2, 2021, 100% of funds deposited into World 6134 originated from Debtor bank accounts. Attached hereto as Exhibit 18 and Exhibit 18a are the Point Break tracing analyses prepared by GT.

  w. Transaction #23: payment to Point Break in the amount of $8,214.35. On November 26, 2021, Point Break received $8,214.35 from Coast 6738. On that day, Coast 6738 was funded primarily with a deposit originating from World 6134 in the amount of $500,000.00. On November 26, 2021, 100% of funds deposited into World 6134 originated from Debtor bank accounts. Attached hereto as Exhibit 19 and Exhibit 19a are the Point Break tracing analyses prepared by GT.

  x. Transaction #24: payment to Point Break in the amount of $5,300.41. On November 18, 2021, Point Break received $5,300.41 from Coast 6738. During the relevant time period, Coast 6738 was funded primarily with deposits originating from World 6134 on November 17, 2021 and November 18, 2021 in the amounts of $150,000.00 and $300,000.00, respectively. During the period November 17, 2021 to November 18, 2021, approximately 86% of funds deposited into World 6134 originated from Debtor bank accounts. Attached hereto as Exhibit 20 and Exhibit 20a are the Point Break tracing analyses prepared by GT.

  y. Transaction #25: payment to Point Break in the amount of $9,380.27. On November 12, 2021, Point Break received $9,380.27 from Coast 6738. On that day, Coast 6738 was funded primarily with a deposit originating from World 6134 in the amount of $900,000.00. On November 12, 2021, approximately 55% of funds deposited into World

6134 originated from Debtor bank accounts. Attached hereto as Exhibit 21 and Exhibit 21a are the Point Break tracing analyses prepared by GT.

z.  Transaction #26: payment to Point Break in the amount of $3,929.36. On November 5, 2021, Point Break received $3,929.36 from Coast 6738. On that day, Coast 6738 was funded primarily with a deposit originating from World 6134 in the amount of $700,000.00 and with a deposit originating from Validation Partners in the amount of $244,950.00, which is funded by Debtor assets as previously stated. During the period November 1, 2021 to November 5, 2021, approximately 97% of funds deposited into World 6134 originated from Debtor bank accounts. Attached hereto as Exhibit 22 and Exhibit 22a are the Point Break tracing analyses prepared by GT.

aa.  Transaction #27: payment to Point Break in the amount of $3,135.27. On October 21, 2021, Point Break received $3,135.27 from Coast 6738. On that day, Coast 6738 was funded primarily with a deposit originating from World 6134 in the amount of $375,000.00. During the period October 15, 2021 to October 21, 2021, approximately 94% of funds deposited into World 6134 originated from Debtor bank accounts. Attached hereto as Exhibit 23 and Exhibit 23a are the Point Break tracing analyses prepared by GT.

bb.  Transaction #28: payment to Point Break in the amount of $2,470.32. On October 14, 2021, Point Break received $2,470.32 from Coast 6738. During the relevant time period, Coast 6738 was funded primarily with deposits originating from World 6134 on October 13, 2021 and October 14, 2021 in the amounts of $800,000.00 and $345,000.00 respectively. During the period October 8, 2021 to October 14, 2021, approximately 77% of funds deposited into World 6134 originated from Debtor bank accounts. Attached hereto as Exhibit 24 and Exhibit 24a are the Point Break tracing analyses prepared by GT.

cc.  Transaction #29: payment to Point Break in the amount of $256.52. On October 7, 2021, Point Break received $256.52 from Coast 6738. On that day, Coast 6738 was funded primarily with a deposit originating from World 6134 in the amount of $600,000.00. During the period September 3, 2021 to October 7, 2021, approximately 91%

of funds deposited into World 6134 originated from Debtor bank accounts. Attached hereto as Exhibit 25 and Exhibit 25a are the Point Break tracing analyses prepared by GT.

dd.    Transaction #30: payment to Point Break in the amount of $512.42. On September 30, 2021, Point Break received $512.42 from Coast 6738. During the relevant time period, Coast 6738 was funded primarily with deposits originating from Coast 6712 on September 29, 2021 and World 6134 on September 30, 2021 in the amounts of $500,000.00 and $250,000.00 respectively. On September 29, 2021, 100% of the funds deposited into Coast 6712 originated from World 6134. During the period September 3, 2021 to September 30, 2021, approximately 89% of funds deposited into World 6134 originated from Debtor bank accounts. Attached hereto as Exhibit 26, Exhibit 26a, and Exhibit 26b are the Point Break tracing analyses prepared by GT.

ee.    Transaction #31: payment to Point Break in the amount of $182,072.09. This transaction appears to be duplicative of Transaction #20.

ff.    Transaction #32: payment to Point Break in the amount of $100,000.00. This transaction appears to be duplicative of Transaction #21.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Joshua Teeple

Dated: March 3, 2025

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
101 S. Fifth Street, Suite 2500, Louisville, Kentucky 40202

A true and correct copy of the foregoing document entitled (*specify*):

**DECLARATION OF JOSH TEEPLE IN SUPPORT OF SUPPLEMENT BRIEF**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 3, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Sarah S. Mattingly on behalf of Plaintiff Richard A. Marshack sarah.mattingly@dinsmore.com
Richard A Marshack (TR) pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) March 3, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

JGW Solutions, LLC
Jonathan Jenkins
2600 Michelson Dr., #16000
Irvine, CA 92612

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) March 3, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**JUDGE'S COPY – VIA FEDEX**
The Honorable Scott C. Clarkson
U.S. Bankruptcy Court – Central District of California
Ronald Regan Federal Building and Courthouse
411 West Fourth Street, Suite 5130, Courtroom 5C
Santa Ana, California 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 3, 2025 | Jamie Herald | /s/ Jamie Herald |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    **F 9013-3.1.PROOF.SERVICE**